# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTICT OF COLUMBIA

_____

**JOHN TOM SMITH**                                    )
                                                     )
310 Ellsworth Drive                                  )
Silver Spring, MD 20910                              )
                                                     ) **Civil Action. No**. 07-1045 (RMU)
                                                     )
**Plaintiff,**                                        )
                                                     )
      v.                                                  )
                                                     )
                                                     )
**MICHAEL CHERTOFF, SECRETARY,**                      )
**U.S. DEPARTMENT OF HOMELAND**                       )
**SECURITY**                                          )
                                                     )
                                                     )
425 Murray Lane, Building 410                        )
Washington, DC  20528                                )
                                                     )
                                                     )
**Defendant.**                                        )
                                                     )

_____

### PLAINTIFF'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS; OR, IN THE ALTERNATIVE, TO SEEK AN ADVERSE INVERSE BASED UPON DEFENDANT'S FAILURE TO PRODUCE DOCUMENTS PERTAINING TO TWO NON-SELECTIONS

      Now comes John Tom Smith ("Plaintiff) by and through his undersigned

representatives from the Law Offices of Snider & Associates, LLC, moves to compel the

production of documents; or, in the alternative, to seek an adverse inference based upon

the failure of the Federal Emergency Management Agency ("FEMA" or the "Agency")to

produce documents pertaining to two non-selections.  Although the Agency became

obligated to preserve the records

## **<u>INTRODUCTION</u>**

On June 7, 2006, mere 13 days after the first non-selection at issue in this

age discrimination case, An EEO official put the Agency on notice of an informal

complaint with respect to that position.  By law, the Agency became obligated to preserve

the file with respect to that selection, particularly so on July 12, 2006, when the Plaintiff

filed his Individual Claim of Discrimination.

Yet, despite, or because of, the short amount of time that had elapsed between the

non-selection and the Agency's notice of a complaint, the records pertaining to that non-

selection have mysteriously disappeared.  Although, as shall be discussed below, Plaintiff

and his counsel have pressed the Agency and its counsel for the production of those

documents, the file remains lost—seven days before the close of discovery.  Inexplicably,

and stubbornly, the Agency refuses to concede that the documents have been lost, and

suggests that it may produce them at some undisclosed point.  There has been no

explanation for the Agency's failure to find and/or produce the documents thus far.

One month after Plaintiff had filed his Individual Claim of Discrimination, the

Plaintiff learned that he had not been selected for a second position.  The selection

official was the same as that of the first non-selection, Al Fluman, who was also

Plaintiff's supervisor.  Documents pertaining to that selection are missing as well.

Although two candidates were apparently interviewed, the interview notes pertaining to

one of the candidates are missing.  With respect to the interview notes for the other

candidate, who was in fact the selectee, two of the three interviewers' notes are missing.

Nor is it clear whether other documents are missing from that file.  Again, the Agency somehow misplaced these notes *one month* after Plaintiff had filed his Individual Claim of Discrimination.  Plaintiff therefore requests that this Court grant an Order compelling the Agency to produce the missing documents; or, in the alternative, to grant an adverse inference based upon the Agency's failure to preserve said documents.

## PROCEDURAL HISTORY

The instant case is an action based upon alleged age discrimination.  The alleged discrimination is based upon the Plaintiff's non-selection for two supervisory positions announced on April 28, 2006.  The first position is Job Announcement Number RB06221AJS for the position of Branch Chief of Standards ("RB06221").  The second position is Job Announcement Number RB 06228AJS ("RB06228") for the position of Branch Chief of Metrics.  The file that is completely missing still pertains to RB06221.

On May 24, 2006, Plaintiff learned that he had made the CERT list for RB06221, but that he had not been selected.  Plaintiff then made contact with the Agency's EEO Office on May 24, 2006, and the date of his initial interview was May 30, 2006.  On June 7, 2006, the EEO counselor contacted the selection official for both RB06221 and RB06228, Al Fluman, to advise him of an informal complaint.

Plaintiff received his Notice of Final Interview and Right to File Formal Complaint of Discrimination on July 7, 2008, and Plaintiff filed his Individual Claim of Discrimination on July 12, 2008.  One day later, on July 13, 2006, Plaintiff learned through office comments that he had not been selected for RB06228.

Plaintiff filed his Federal Complaint on June 6, 2007.  Plaintiff then sought this Court's permission, by Motion, on January 2, 2008, to amend his Complaint in order to

name as the Defendant Michael Chertoff, who is the Secretary of the Department of

Homeland Security.  This Court so granted permission, and on January 18, 2008, Plaintiff

filed his Amended Complaint.  Plaintiff filed discovery on March 12, 2008.

## THE DISCOVERY DISPUTES PERTAINING TO MISSING KSAS AND OTHER MISSING DOCUMENTS

On March 12, 2008, Plaintiff made his first discovery requests, including

Requests for Documents.  Thus, Plaintiff's request for one file that is still missing, and

another file that is still incomplete, dates back to March 12, 2008.  The missing file is the

entire file for one of the non-selections, the non selection for RB06221.  The other

missing documents pertain to missing interview notes for the other position, RB06228

(only one of three interviewers' notes was provided, and there were no interview notes

provided pertaining to one of the two interviewees).  Also, because documents for

RB06227 were provided in piecemeal manner, it is not clear if there are other documents

missing from that file.

The missing RB06221 file is apposite to several of Plaintiff's Requests, including

Request No. 17 ("All documents, emails, and/or communications pertaining to the

position description of job GS-0301-14 identified in job announcement RB-06-221-

AJS"), Request No. 20 ("All documents, emails, and/or communications pertaining to the

competition for job GS-0301-14 identified in job announcement RB-06-221-AJS, and the

selection of Millikin, including interview notes, questions, etc."), and Request No. 38

("All documents, emails, and/or communications pertaining to all reasons for the

selection of James Millikin over Plaintiff for the position of Supervisory Program

Specialist, GS-0301014, under Announcement RB-06-221-AJS, including information

pertaining to Millikin's and Plaintiff's prior supervisory experience systems experience,

experience in complex managerial and supervisory work, including, but not limited to, interview notes and interview questions, as identified in response to interrogatory no. 21"). (*See* Complainant's Request for Production of Documents, which is attached hereto as Exhibit 1, pp. 16-19).

The missing documents contained in the RB06228 file are apposite to several of Plaintiff's Requests, including Request No. 18 ("All documents, emails, and/or communications pertaining to the position description of job GS-0301-14/15 identified in job announcement RB-06-228-AJS"), Request No. 21 ("All documents, emails, and/or communications pertaining to the competition for job GS-0301-14/15 identified in job announcement RB-06-221-AJS and selection of Tracy Haynes, including interview notes, questions, etc."), and Request No. 40 ("All documents, emails, and/or communications pertaining to all reasons for the selection of Tracy Haynes over Plaintiff for the position of Supervisory Program Specialist, GS-0301014/15, under Announcement RB-06-228-AJS, including information pertaining to Haynes' and Plaintiff's experience at the Agency, Haynes' and Plaintiff's experience in complex managerial and supervisory experience systems experience, experience in complex managerial and supervisory work, and Haynes' status, at the time of his selection, as an Agency employee, including, but not limited to, interview notes and interview questions, as identified in response to interrogatory no. 24"). (*See* Exhibit 1, pp. 16-19).

When Defendant responded, there were no KSAs for RB-06-221, or any other HR documents, with the exception of the resume of the selectee, James Mullikin. With respect to RB-06-228, there were also, initially, no KSAs, along with no interview notes, rating documents, or other HR documents. (*See* Defendant's the Federal Emergency

Management Agency's Reksponse to Plaintiff's Interrogatories and FEMA's Response to Plaintiff's Request for the Production of Documents, which are attached hereto as Exhibit 2).[1]

On May 7, 2008, Plaintiff, again in search of the missing documents, filed Plaintiff's Second Request for the Production of Documents. This Request included Request 1 ("All documents, emails, and communications submitted by James Millikin with respect to his application for the GS-0301-14 position under Announcement RB-06-221-AJS") and Request 2 ("All documents, emails, and communications submitted by Tracy Haynes with respect to his application for the GS-0301-15 position under Announcement RB-06-228-AJS").. The missing RB-006-221 file is apposite to this Request, and, again, Defendant failed to produce said file. At that point, Defendant had also not produced KSAs for RB-006-229. (*See* Plaintiff's Second Request for the Production of Documents," which is attached hereto as Exhibit 3, p. 5).

On May 19, 2008, Plaintiff outlined to Defendant, by letter, the many deficiencies in Defendant's Responses. Among other deficiencies, Plaintiff noted that "Plaintiff has sought all documents, emails, and/or communications pertaining to the competition for job GS-0314 and GS-0301-14/15." Further, although Plaintiff acknowledged that Defendant had provided some documents, Plaintiff explained that "Defendant has provided no interview notes, email notes, memoranda, or anything else that might shed any light on the actual selection process." (*See* Letter from James L. Fuchs to Claire Whitaker, dated May 19, 2008, which is attached hereto as Exhibit 4). After Defendant failed to respond, Plaintiff wrote a follow-up letter to Defendant, dated May 27, 2008.

---

[1] This Exhibit does not include the actual documents produced by Defendant at that time, most of which are irrelevant. As shall be discussed later, *Defendant does not dispute that it did not produce KSAs or the file for the RB-06-221 position or interview notes for the RB-06-228 position during this production.*

(*See* Letter from James L. Fuchs to Claire Whitaker, dated May 27, 2008, which is attached hereto as Exhibit 5).

Because Defendant had failed, two months after Plaintiff had filed Plaintiff's first discovery requests, to produce the missing file for RB-006-221 and the missing documents pertaining to RB-006-228—including interview notes and other HR documents—Plaintiff filed Plaintiff's Fourth Request for Production of Documents. Those Requests include Request No. 1 ("All KSAs of all applicants with respect to the GS-0301-14 position under Announcement RB-06-221-AJS"), Request No. 2 ("All KSAs of all applicants with respect [to] the GS-0301-15 position under Announcement RB-06-228-AJS"), Request No. 3 ("All HR writings pertaining to all applicants with respect to the GS-0301-14 position under Announcement RB-06-221-AJS"), Request No. 4 ("All HR writings pertaining to all applicants with respect to the GS-0301-15 position under Announcement RB-06-228-AJS"), Request No. 5 ("All interview notes pertaining to all applicants with respect to the GS-0301-14 position under Announcement RB-06-221-AJS"), and Request No. 6 ("All interview notes pertaining to all applicants with respect to the GS-0301-15 position under Announcement RB-06-221-AJS").  All of these Requests, which Plaintiff filed on May 29, 2008, pertain to the missing RB-06-221 file and the missing interview notes and other HR documents relating to RB-06-228).  (*See* Plaintiff's Fourth Request for Production of Documents, which is attached hereto as Exhibit 6, p. 5).

By June 3, 2008, Defendant had still not produced the missing documents.  In a telephone conversation between the parties, however, Defendant agreed that it would attempt to produce all KSAs and HR writings for RB-06-221 and RB-06-228.  (*See* Letter

from James L. Fuchs to Claire Whitaker, dated June 3, 2008, which is attached hereto as Exhibit 7). Defendant then finally produced KSAs for RB-06-228, but no interview notes or other HR documents. Again, Defendant produced no documents pertaining to RB-060221. (*See* Defendant the Federal Emergency Management Agency's Supplemental Response to Plaintiff's Discovery, which is attached hereto as Exhibit 8).

Although Defendant had still, more than three months after Plaintiff had made Plaintiff's initial discovery requests, failed to produce the file pertaining to RB-06-221 and relevant documents pertaining to RB-06-228, Defendant continued to leave open the possibility that Defendant would produce these documents at some point in the future. Defendant offered no explanation as to why these documents were missing in the first place. (*See* Letter from Claire Whitaker to James Fuchs, dated June 27, 2008, which is attached hereto as Exhibit 9). As Plaintiff noted, in response, Defendant's insistence upon having it both ways (failing to produce the documents while claiming that they might ultimately be produced) was "incorrect in fact and in law." (*See* Letter from James Fuchs to Claire Whitaker, dated June 30, 2008, which is attached hereto as Exhibit 10).

Because Defendant continued to leave open the possibility that documents might be disclosed in the future, Plaintiff warned Defendant that Plaintiff might file a Motion to Compel. (*See* Letter from James L. Fuchs to Claire Whitaker, dated July 8, 2hich is attached hereto as Exhibit 11). Defendant offered to produce an affidavit as to why it could not produce documents. (*See* Letter from Claire Whitaker to James Fuchs, dated July 18, which is attached hereto as Exhibit 12). Plaintiff again suggested to Defendant the possibility that, in view of Defendant's recalcitrance, Plaintiff would file a Motion to Compel. Defendant responded that it was still searching for documents, and suggested

that Plaintiff postpone depositions in the meantime (*See* Letter from Claire Whitaker to James Fuchs, dated July 23, 2008, which is attached hereto as Exhibit 13), which Plaintiff refused to do.  Defendant also produced KSAs for the selectee of the RB-06-221 position, albeit for the RB-06-228.  Defendant's position, without any supporting evidence, was that it could extrapolate from one set of KSAs to the other.  As Defendant failed to note, however, there might not have even been KSAs for the selectee in the missing RB-06-221 file.

Defendant also produced an Declaration of Allison Falcone, who stated that "HR Records indicate that case file RB06221AJS is not on file with the FEMA archives department.  HR is continuing to search the files that are still maintained at HQ to locate the case file."   The Declaration by Ms. Falcone, a non-lawyer, was not notarized. (Exhibit 13).

As Plaintiff stated, in response, "the Agency is not in possession of documents that it was obligated to preserve for two years, even in the absence of an EEO complaint, and, *a fortiori*, after such a complaint has been filed."  (*See* Letter from James L. Fuchs to July 24, 2008, which is attached hereto as Exhibit 14).  It is Plaintiff's position that Defendant should have admitted that it has no interview notes, rankings, rating, or other HR documents pertaining to RB06221, in addition to the missing interview notes and other documents with respect to RB06228.  (*See* Letter from James L. Fuchs to Claire Whitaker, which is attached hereto as Exhibit 15).

Further, according to the HR witness that Defendant produced for a deposition, Ms. Falcone was the Agency employee who was responsible for maintaining the RB06221 file, including after an EEO complaint had been filed:

Q. And then what happens if an EEO case is filed involving the selection?

A. We'll retrieve it and place it in the central location.

Q. And is there a record made of the retrieving of the file?

A. The record would be either via e-mail or it would be a memo and it would be maintained with the  HR specialist.

Q. Who in this case would be Ms. Falcone—Ms. Sgro? [Ms. Falcone's married name]

A. Yes.

Q. Did you ever misplace a file, Ms. Edmond?
A. No, sir.

(Deposition of Brenda Elisabeth Edmond, dated August 18, 2001, p. 194, which is

attached hereto as Exhibit 16).

Hence, Ms. Falcone, the HR specialist charged with maintaining this file—which

became identified as an EEOC file less than a month after the selection had been made—

claims to have no idea where it is.  Moreover, to date, no interview notes for RB06228

have been provided, save for one set of interview notes (again, out of three panelists) for

one of the positions interviewed.

Since discovery closes in seven days, Defendant was again asked to produce the

missing documents, or to acknowledge their non-existence and the necessary adverse

inference.  Otherwise, Plaintiff would need, as Plaintiff explained to Defendant, to file a

Motion to Compel or a Motion to Seek an Adverse Inference based upon Defendant's

failure to produce documents.  (*See* Email from James L. Fuchs to Claire Whitaker, dated

September 3, 2008, which is attached hereto as Exhibit 18).  Because Defendant's

counsel filed papers today pertaining to another case, it is clear that Defendant's counsel

was in her office, and received the email.  Defendant nonetheless refused to produce the

documents, offer any explanation for their non-existence, or agree to an adverse inference.

Defendant was warned today, as it has been warned throughout this litigation, of the consequences of its dangerous efforts to have it both ways with respect to these documents. By law, Defendant was obligated to preserve these documents, and, to date, Defendant has failed to provide any reasonable explanation as to why Defendant failed to preserve those documents. Agencies accused of EEO violations are required to preserve records for a reason; Defendant's claim to have unlimited time to search for those documents utterly vitiates that reason.

## THE APPLICABLE LAW

An Adverse Inference is drawn in a non-selection based upon discrimination where the Agency fails to preserve evidence. In *Sewell v. Nicholson*, EEO Appeal 07A300006 (September 27, 2006), the Commission affirmed an EEOC Administrative Judge's summary judgment finding of race discrimination by adverse-inference regarding whether the Agency articulated reasons for non selecting the complainant. As here, the Agency had failed to produce the Merit Promotion file for the vacancy for which the complainant had not been selected. The Agency also failed to produce the Official Personnel File for the selectee. The Commission found that the Administrative Judge did not abuse her discretion because, after complainant had filed his complaint, the Agency failed to preserve all personnel records concerning the selection, as required under the Commission's regulations, *i.e.*, 29 C.F.R. Section 1602.14. The Administrative Judge

awarded the complainant $3,500.00 in pecuniary damages and $11,600.00 in attorneys' fees and costs.  *Id.*[2]

In addition, several courts have held that the destruction of evidence, in violation of a regulation that requires its retention, can give rise to an inference of spoliation. *Byrne v. Town of Cromwell, Board of Education*, 243 F.3d 93, 109 (2nd cir. 2001) (internal citations omitted).  The Second Circuit found spoliation when the records were "relevant to the case." *Id.*

To be sure, where the nature of the alleged breach of a discovery obligation is non-production of evidence, the District Court has broad discretion, in fashioning the appropriate sanction, which can include adverse inference.  *Kyoei Fire & Marine Insurance Co., Ltd. V. M/B Maritime Antalya*, 248 F.R.D. 126, 143 (S.D.N.Y. 2007).

Here, Defendant has entirely failed to justify its failure to produce documents. Hence, Plaintiff's Motion for an Order Compelling Defendant to Produce Documents or Granting an Adverse-Inference in view of Defendant's Failure to Produce Documents should be granted.

WHEREFORE, Plaintiff's Motion for an Order Compelling Defendant to Produce Documents or Granting an Adverse-Inference in view of Defendant's Failure to Produce Documents should be granted.

---

[2] The request to reconsider was denied.  See EEOC Request No. 0520070114 (January 5, 2007).

Respectfully Submitted,


__/s/_____

James L. Fuchs, D.C. Bar # 454514
Ari Taragin
Michael J. Snider

Law Offices of Snider & Associates, LLC
104 Church Lane; Suite 100
Baltimore, Maryland 21208
Phone: (410) 653-9060
Fax: (410) 653-9061
Representatives for Complainant

# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN TOM SMITH,<br>310 Ellsworth Drive<br>Silver Spring MD 20910<br><br>    Plaintiff,<br><br>v.<br><br>J. DAVID PAULISON, ADMINISTRATOR,<br>FEDERAL EMERGENCY MANAGEMENT<br>AGENCY,<br>500 C Street SW<br>Washington, DC 20472<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Civil Action No.** 07-1045 (RMU)

**JURY TRIAL DEMANDED**

## COMPLAINANT'S INTERROGATORIES

Complainant, through her undersigned counsel, requests that the Agency respond to the following Interrogatories. You are required to answer these Interrogatories under oath, separately for each Agency employee, and fully in writing. You are required to respond to these Interrogatories, no later than thirty (30) calendar days after receipt of these interrogatories, and return your sworn responses to the undersigned counsel from Snider & Associates, LLC, located at 104 Church Lane Suite, 100 Baltimore, Maryland 21208.

## INSTRUCTIONS

A.  Each Interrogatory is to be answered fully on the basis of information which is in your possession.

B.    In each of your answers to these Interrogatories, you are requested to provide not only such information as is in your possession, but also information as is reasonably available. In the event that you are able to provide only part of the information called for by any particular Interrogatory, please provide all the information you are able to provide and state the reason for your inability to provide the remainder.

C.    If you object to or otherwise decline to answer any portion of an Interrogatory, please provide all information called for by that portion of the Interrogatory to which you do not object or to which you do not decline to answer. For those portions of an Interrogatory to which you object or to which you do not decline to answer, state the reason for such objection or declination.

D.    Every Interrogatory herein shall be deemed a continuing interrogatory and you are to supplement your answers promptly if any when you obtain relevant information in addition to or in any way inconsistent with your initial answer to such Interrogatory.

E.    If any of the following Interrogatories can be answered fully and completely simply by referring to an exhibit number, page, and paragraph of the investigative file compiled by the Agency and furnished to the Complainant by the Agency in connection with this administrative complaint of discrimination, such references, if adequately identified to inform the Complainant as to your response will serve as a satisfactory response to such Interrogatory.

## DEFINITIONS

A.    "Complainant" means John Tom Smith.

B.    "Agency," "you," "your," or "yourself," means the FEDERAL EMERGENCY MANAGEMENT AGENCY ("FEMA"), the named Agency in this case, and any and all of

its supervisors, managers, agents, representatives, employees, servants, consultants, contractors, subcontractors, investigators, attorneys, and any other persons or entities acting or purporting to act on behalf of the agency.

C.    "Person", "persons," "people", and "individual" means any natural person, together with all federal, state, county, municipal and other government units, agencies or public bodies, as well as firms, companies, corporations, partnerships, proprietorships, joint ventures, organizations, groups of natural persons or other associations or entities separately identifiable whether or not such associations or entities have a separate legal existence in their own right.

D.    "Document," "documents," and "writing" means all records, papers, and books, transcriptions, pictures, drawings or diagrams or every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations by whatever means made, whether in your actual or constructive possession or under your control or not, relating to or pertaining to or in any way to the subject matters in connection which it is used and includes originals, all file copies, all other copies, no matter how prepared and all drafts prepared in connection with such writing, whether used or not, including by way of illustration and not by way of limitation, the following; books; records; reports; contracts; agreements; expense accounts; canceled checks; catalogues; price lists; video, audio and other electronic recordings; memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; correspondence; drafts; bulletins; electronic mail; facsimiles; circulars; forms; pamphlets; notice;

statements; journals; postcards; letters; telegrams; publications; inter- and intra- office communications; photostats; photographs; microfilm; maps; drawings; diagrams; sketches; analyses; electromagnetic records; transcripts; and any other documents within defendant's possession, custody or control from which information can be obtained or translated, if necessary, by detection devices into reasonably usable form, i.e. typed in English prose.

E.      "Communication" or "communications" means any and all inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondence, notes telegrams, facsimiles, electronic mail, memoranda, or other forms of communications, including, but not limited to, both oral and written communications.

F.      "Produce" and "provide" mean to provide either a legible true copy of the original or any document and/or communication.

G.      "Relate to," "relating to," "concerning," "pertain," and "pertaining to," mean consisting of, referring to, reflecting or arising out of, evidencing or in any way legally, logically, or factually connected with the matter discussed, directly or indirectly.

H.      "Explain in detail" refers to any response to these Interrogatories that you may give which will serve to reasonably explain any relevant, genuine, and material factual issues or your understanding of any such evidence in this case, and that will also resolve any need for any further inquiry or determination into the requested factual issue or subject matter inquired about or requested by the Complainant. Your responses should serve to prevent redundant, immaterial, or otherwise irrelevant facts or evidence in this case to be considered as a matter of law.

4

I.      "Identify," "identifying," and "identification" when used in reference to an

Interrogatory means to specify or indicate any person, employee, or individual directly

related to or otherwise responsive to the Interrogatory request. When used in reference

to any writing or document, it means to give a sufficient characterization of such writing

or document to properly identify it in a request to produce and shall include, without

limitation, the following information with respect to each such document:

1.      The date appearing on such document, and if it has no date, the answer shall

so state and shall give the date or approximate date such document was

prepared;

2.      The identity or descriptive code number, file number, title or label

of such document;

3.      The general nature and description of such document, and if it was not

signed, the answer shall so state and shall give the name of the person

or persons who prepared it;

4.      The names of the person(s) to whom such document was addressed

and the name of each person other than such addressee to

whom such document or copies of it, were given or sent;

5.      The name(s) of the person(s) having present possession, custody,

or control of such document(s); and

6.      Whether or not any draft, copy or reproduction of such document contains

any postscripts, notations, changes or addendum not appearing on the

document itself, and if so, the answer shall give the description of each

such draft, copy or reproduction.

In answering these Interrogatories, the agency is requested to furnish not only such information as is available to the agency but also such information as is known to any of the agency's supervisors, managers, agents, representatives, employees, servants, consultants, contractors, subcontractors, investigators, attorneys, and any other person or entity acting or purporting to act on behalf of the agency.

In any matter responsive to any of the Interrogatories the agency shall set forth completely the grounds for the asserted privilege, along with copies of the Privacy Act provisions or other written materials upon which such assertion is made. The agency shall identify as to each privileged communication or document:

1.    its date;

2.    its author(s);

3.    the business title or position of its author(s);

4.    its recipient(s);

5.    the business title or position of its recipient(s);

6.    its number of pages;

7.    its stated subject matter;

8.    the legal basis upon which the agency claims privilege;

9.    the specific portion of the interrogatory or document to which the communication or document is responsive;

J. Subject positions refer to GS-0301-14, Supervisory Program Specialist under vacancy announcement RB-06-221-AJS; and GS-0301-14/15, Supervisory Program Specialist under vacancy announcement RB-06-228-AJS.

Documents are to be labeled to indicate the Interrogatory to which they respond. In order to simplify the issues and resolve as many matters of fact as possible before any dispositive hearing or trial on the merits, if, following a reasonable and thorough investigation using due diligence, you are unable to answer any Interrogatory, or any part thereof in full because sufficient information is not available, answer the Interrogatory to the maximum extent possible, including any knowledge or belief you have concerning the unanswered portion thereof and the facts upon which such knowledge or belief is based. In addition, state what you did to locate the missing information and why that information is not available to you.

When an exact answer to an Interrogatory is not known, state your best estimate or opinion available, state that it is an estimate or opinion, and state the basis for such an estimate or opinion.

If documents once in your possession or under your control are requested or are the subject of an Interrogatory, and such documents are no longer in your possession or under your control, state when such documents were most recently in your possession or under your control, and what disposition was made of them, including identification of the person(s) now in possession of or now exercising control over such documents. If the documents were destroyed, state when and where they were destroyed, and identify the person or persons who directed their destruction.

All of the following Interrogatories shall be continuing in nature until the date of any dispositive hearing or trial on the merits, and you must supplement any of your answers as additional information becomes known or available to you.

If you object to or otherwise decline to answer any portion of an Interrogatory, you are requested to provide all information called for by that portion of the Interrogatory to which you do not object or which you do not decline to answer. If you object to an Interrogatory on the ground that it is too broad (e.g., that it calls in part for information which is not relevant to the subject matter of the action), you are requested to provide such information called for, if any, which is relevant. If you object to an Interrogatory on the ground that to provide an answer would constitute an undue burden, you are requested to provide such requested information as can be supplied without undertaking an undue burden.

For those portions of any Interrogatory to which you object or otherwise decline to answer, you are requested to state the specific reason(s) for such objection or declination.

(1)     If you object to or otherwise decline to answer any portion of any Interrogatory on the ground that the information is privileged, please identify with specificity the nature of the privilege. If the privilege pertains to oral communications, identify the person making the communication, the name(s) of the persons present when the communication was made, the date and place of the communication, and the general subject matter of the communication. If the privilege pertains to documents, please identify the type of document, the general subject matter of the document, and the date of the document.

(2)     Every Interrogatory herein is a continuing Interrogatory, and you are requested to promptly provide such additional information as may hereafter be obtained

by you, or any person on your behalf, which will augment or otherwise modify your initial answer(s) to each Interrogatory.

(3)     You are requested to identify all documents forming the basis of your answer(s) to each Interrogatory herein.

(4)     You are requested to identify each individual answering or supplying information regarding these Interrogatories.

1.     Identify all persons, other than attorneys, by full name, agency address, and agency telephone number who are answering or supplying information used in answering these Interrogatories.

2.     Identify and explain, to the extent that it is known, or whenever it should become known, in detail, all evidence including documents, witnesses being called, affidavits and/or statements not in the Report of Investigation upon which you intend to rely, or submit at any dispositive hearing or at any trial in this case.  Should the Agency contend that this information is privileged, please provide a privilege log that refers to each document in question and that states the basis of the privilege asserted.

3.     If you are rejecting the Complainant's allegations of discrimination on the basis of age, and/or reprisal, state in detail the evidence relied upon, other than contained in the ROI, upon which you rely, or intend to submit at any dispositive hearing or at any trial in this case, to support such rejection.

4.     Explain in detail the safeguards used, employed, and/or put into place by FEMA to protect against possible or potential bias or discriminatory actions against Agency employees as prohibited by law, and how any managerial or supervisory

employees at the Agency were ever trained or otherwise made aware of possible or potential bias or discriminatory actions against agency employees as prohibited by law.

5.     Identify and explain in detail all employees, by their dates of hire and age, who ever received their jobs due to the Agency's Affirmative Programs of Equal Employment Opportunity ("APEEO") policies used by the agency for the past fifteen years.

6.     Identify all individuals who supervised and/or evaluated the Plaintiff, and who had knowledge of Plainitff's prior EEO activity.

7.     List Complainant's work duties since from February 1, 2003 through February 1, 2006. Identify and explain in detail the criteria used for assigning the Complainant any of his work duties since between February 1, 2003 and May 1, 2006.

8.     Identify all individuals who recommended that Plaintiff be promoted, on September 19, 2004, to the position of Acting Chief of the Programs and Standard Branch in the FEMA Preparedness Directorate; and identify all bases for that decision. Please identify all documents, emails, and/or communications pertaining to said promotion of Plaintiff on September 19, 2004; and pertaining to the bases of Said Promotion, including any documents, emails, and/or communications pertaining to any recommendations against Plaintiff's promotion.

9.     Identify all of Plaintiff's work duties as Acting Branch Chief of the Programs and Standard Branch in the FEMA Preparedness Directorate.

10.     Identify all reasons that Plaintiff's temporary promotion, as Acting Branch Chief of the Programs and Standard Branch in the FEMA Preparedness Directorate,

expired. Identify all documents, emails, and/or communications pertaining to the expiration of Plaintiff's temporary promotion as Acting Branch Chief of the Programs and Standard Branch in the FEMA Preparedness Directorate.

11.    Identify the reasons that, although Plaintiff's temporary position expired, Plaintiff was rated against supervisory performance standards, as admitted in Items 23-24 of Defendant's Answer.

12.    Identify all documents pertaining to Defendant's admission that, despite the expiration of Plaintiff's temporary position, Plaintiff continued to perform successfully the supervisory activities of the GS-15 position, as demonstrated by his performance appraisals, as admitted in items 23-24 of Defendant's answer.

13.    Identify all reasons for which Defendant claims not to have appraised Plaintiff at the GS-15 level, even though Defendant admitted, in Items 23-24 of Defendant's answer, that Plaintiff successfully performed the supervisory activities of the GS-15 position, as demonstrated by Plaintiff's performance appraisals.

14.    Identify all individuals who decided Plaintiff's work assignments from January, 2005, though June, 2006, as well as the bases for said assignments, the compensation for said assignments, and the bases for said compensation. Please identify all pertinent documents, emails, and/or communications.

15.    Identify all reasons that, from January, 2005, through March, 2006, on Plaintiff's appraisals, the number 15 was crossed out and replaced by a hand-written number 14, including all reasons that a 14 form was not used.

16.    Identify any Branch Director meetings from which Plaintiff was excluded, on or about February, 2006, as well as the bases for excluding Plaintiff from said staff

meetings.

17.    Identify all individuals who advised Al Fluman to exclude Plaintiff from Branch Director meetings, on or about February, 2006.  Please identify all pertinent documents, emails, and/or communications.

18.    Identify all individuals who participated in a decision, on or around March, 2006, to dissolve CERCLA, a program in which Plaintiff was the Project Officer; and who participated in a corresponding decision to terminate CERCLA's funding. Identify all reasons for dissolving CERCLA and for terminating CERCLA's funding. Please identify all relevant documents, emails, and/or communications.

19.    Identify all duties that Fluman assigned to Plaintiff's subordinates from March, 2006 through March, 2007; Fluman's reasons for assigning said duties; and any and all of Fluman's reasons for not informing Plaintiff, as admitted in items 31-37 of Defendant's answer.  Please provide all documents, emails, and/or communications.

20.    Identify all individuals who were selected for the position of Supervisory Program Specialist, GS-0301-14, under Announcement RB-06-221-AJS.

21.    Identify all reasons for the selection of James Millikin over Plaintiff for the position of Supervisory Program Specialist, GS-0301-14, under Announcement RB-06-221-AJS, including information pertaining to Millikin's  and Plaintiff's prior supervisory experience, systems experience, experience in complex managerial and supervisory work.    Identify all supporting documents, emails, and/or communications, including interview notes and interview questions.

22.    Identify all bases for which Plaintiff was not interviewed and/or selected for the position of Supervisory Program Specialist, GS-0301-14, under Announcement

RB-06-221-AJS.   Identify all backup data including documents, emails, or communications, to corroborate.

23.    Identify all individuals who were selected for the position of Supervisory Program Specialist, GS-0301-14/15, under Announcement RB-06-228-AJS.

24.    Identify all reasons for the selection of Tracey Haynes over Plaintiff for the position of Supervisory Program Specialist, GS-0301-14/15, under Announcement RB-06-228-AJS, including information pertaining to Haynes' and Plaintiff's supervisory experience, Haynes' and Plaintiff's metrics experience, Haynes' and Plaintiff's experience at the Agency, Haynes' and Plaintiff's experience in complex managerial and supervisory work,  and Haynes' status, at the time of his selection, as an Agency employee.  Identify all supporting documents, emails, and/or communications, including interview notes and interview questions.

25.    Identify all bases for which Plaintiff was not interviewed and/or selected for the position of Supervisory Program Specialist, GS-0301-14/15, under Announcement RB-06-228-AJS.   Identify all backup data including documents, emails, and/or communications, to corroborate.

26.    Identify all bases for which Defendant denies that the GS-0301-14 position advertised under announcement RB-06-221 AJS had the same job description and duties as those of the position that Plaintiff had been fulfilling as Acting Branch Chief for over a year-and-a-half.  Identify all supporting documents, emails, and/or communications to corroborate, including the job description for the GS-0301-14 position advertised under announcement RB-06-221-AJS as well as the position description for the position that Plaintiff had been holding for over a year-and-a-half.

27.    Identify in detail all the bases on which Defendant denies that Millikan and Haynes were unable to perform all facets of the supervisory position at the GS-15 level, as denied in Items 51-54 of Defendant's Answer.

28.    Identify all persons who were employed with Defendant during Plaintiff's employment, including but not limited to the name, address, telephone number, job title, division, and current employment status of each.

29.    Identify all persons employed by Defendant who have made complaints and/or allegations regarding age discrimination by Defendant during the last ten years.

30.    Identify any and all witnesses you intend to call at trial.

**COMPLAINANT'S REQUEST FOR PRODUCTION OF DOCUMENTS**

The Plaintiff, through his undersigned counsel from Snider & Associates, LLC, requests that the Agency respond to the following request for production of documents, or make such documents available for inspection by the Complainant's counsel.    You are required to respond to this request no later than thirty (30) calendar days after receipt of this Request for the Production of Documents.    Your response(s) and the documents are to be sent to the undersigned at Snider & Associates, LLC, 100 Church Lane Suite 100, Baltimore, Maryland 21208.

1.    Plaintiff's personnel file.

2.    All documents or files pertaining to Plaintiff or his employment not contained in his "personnel file" regardless of who created or maintained such documents or files.

3.    All documents, emails, and/or communications pertaining to Plaintiff's compensation and employee benefits from January, 2005 to the present.

4.      All documents emails, and/or communications relating to any investigation, audit, or review of Plaintiff during his employment.

5.      All emails sent to, or received by, Plaintiff during his employment.

6.      All documents sent to, or received by, Al Flumen during Plaintiff's employment containing any reference to Plaintiff.

7.      All e-mails sent to, or received by, Al Flumen during Plaintiffs' employment that contain jokes, comments, or references to employees' age.

8.      An electronic copy of Defendant's PeopleSoft or other personnel data that identifies and describes Defendant's workforce for the past three years, including each employee's name, dates of employment, age, job title, job code, department/division, and any other descriptive fields maintained in Defendant's regular course of business.

9.      All documents, emails, and/or communications pertaining to any and all investigations or complaints relating to Al Flumen.

10.     All documents, emails, and/or communications relating to the complaints and/or allegations regarding age discrimination against Defendant, as identified in response to Interrogatory No. 29.

11.     All employee handbooks and other manuals, guidelines, or handbooks containing Defendant's policy and procedures in effect during Plaintiff's employment.

12.     All documents that may be offered into evidence at trial or depositions or may be used to refresh the recollection of a witness at depositions or trial.

13.     All documents identified, or that should have been identified, in Defendant's Rule 26(f) disclosures.

14.     All statements of witnesses or potential witnesses or persons interviewed in
        connection with this case.

15.     All documents relied upon or reviewed by your expert witnesses in forming
        his/her opinions on this matter.

16.     Any and all insurance agreements that may provide coverage for Defendant in
        this matter.

17.     All documents, emails, and/or communications pertaining to the position
        description of job GS-0301-14 identified in job announcement RB-06-221-AJS.

18.     All documents, emails, and/or communications pertaining to the position
        description of job GS-0301-14/15 identified in job announcement RB 06-228-AJS.

19.     All documents, emails, and/or communications pertaining to the Plaintiff's
        position as Acting Chief of the Programs and Standard Branch in the FEMA
        Preparedness Directorate position at all times that Plaintiff held this position.

20.     All documents, emails, and/or communications pertaining to the competition for
        job GS-0301-14 identified in job announcement RB-06-221-AJS, and selection of
        Millikin, including interview notes, questions, etc.

21.     All documents, emails, and/or communications pertaining to the competition for
        job GS-0301-14/15 identified in job announcement RB-06-228-AJS and selection of
        Tracy Haynes, including interview notes, questions, etc.

22.     Any documents, emails, and/or communications containing recommendations
        that Plaintiff not be appointed to Position GS-0301-14 identified in job announcement
        RB-06-221-AJS.

23.     Any documents, emails, and/or communications containing recommendations

that Plaintiff not be appointed to Position GS-0301-14/15 identified in job

announcement RB-06-228-AJS.

24.    Al Flumen's personnel file.

25.    All evaluations of Plaintiff from January 1, 2003 to March 3, 2006.

26.    All documents, emails, and/or communications  pertaining to Plaintiff's temporary

promotion on September 19, 2004, as identified in response to Interrogatory No. 8.

27.    All documents, emails, and/or communications pertaining to recommendations

against Plaintiff's promotion on September 19, 2004, as identified in response to

Interrogatory No. 8.

28.    All documents, emails, and/or communications pertaining to the expiration of

Plaintiff's temporary promotion as Acting Branch Chief of the Programs and

Standards Branch in the FEMA Preparedness Directorate, as identified in response

to Interrogatory No. 10.

29.    Gil Jamison's Personnel File.

30.    All documents, emails, and/or communications pertaining to any and all

investigations or complaints relating to Gil Jamison.

31.    All documents, emails, and/or communications sent to, or received by, Gil

Jamison during Plaintiff's employment containing any reference to Plaintiff.

32.    All documents, emails, and/or communications pertaining to the reasons that,

although Plaintiff's temporary position expired, Plaintiff was rated against

supervisory performance standards, as admitted in items 23-24 of Defendant's

answer.

33.    All documents, emails, and/or communications pertaining to Defendant's

admission that, despite the expiration of Plaintiff's temporary position, Plaintiff

continued to perform successfully the supervisory activities of the GS-15 position, as

demonstrated by his performance appraisals, as admitted in items 23-24 of

Defendant's answer, and as identified in response to Interrogatory No. 12.

34.    All documents, emails, and/or communications pertaining to Plaintiff's work

assignments from January, 2005, though June, 2006, as well as the bases for said

assignments, the compensation for said assignments, and the bases for said

compensation, as identified in response to Interrogatory No. 14.

35.    All documents, emails, and/or communications pertaining to the decision to

exclude Plaintiff from Branch Director meetings, on or about February, 2006, as

identified in response to Interrogatory No. 17.

36.    All documents, emails, and/or communications pertaining to dissolving CERCLA

and pertaining to terminating CERCLA's funding and to the reasons for dissolving

CERCLA and/or terminating CERCLA's funding, as identified in response to

Interrogatory No. 18.

37.    All documents, emails, and/or communicaions pertaining to duties that Fluman

assigned to Plaintiff's subordinates from March, 2006 through March, 2007;

Fluman's reasons for assigning said duties; and any and all of Fluman's reasons for

not informing Plaintiff, as admitted in items 31-37 of Defendant's answer, and as

identified in response to Interrogatory No. 19.

38.    All documents, emails, and/or communications pertaining to all reasons for the

selection of James Millikin over Plaintiff for the position of Supervisory Program

Specialist, GS-0301-14, under Announcement RB-06-221-AJS, including information

pertaining to Millikin's and Plaintiff's prior supervisory experience, systems experience, experience in complex managerial and supervisory work, including, but not limited to, interview notes and interview questions, as identified in response to Interrogatory No. 21.

39.     All documents, emails, and/or communications pertaining to all bases for which Plaintiff was not interviewed and/or selected for the position of Supervisory Program Specialist, GS-0301-14, under Announcement RB-06-221-AJS, as identified in response to Interrogatory No. 22.

40.     All documents, emails, and/or communications pertaining to the reasons for the selection of Tracey Haynes over Plaintiff for the position of Supervisory Program Specialist, GS-0301-14/15, under Announcement RB-06-228-AJS, including information pertaining to Haynes' and Plaintiff's supervisory experience, Haynes' and Plaintiff's metrics experience, Haynes' and Plaintiff's experience at the Agency, Haynes' and Plaintiff's experience in complex managerial and supervisory work, and Haynes' status, at the time of his selection, as an Agency employee, including, but not limited to, interview notes and interview questions, as identified in response to Interrogatory 24.

41.     All documents, emails, and/or communications pertaining to the bases for which Plaintiff was not interviewed and/or selected for the position of Supervisory Program Specialist, GS-0301-14/15, under Announcement RB-06-228-AJS, as identified in response to Interrogatory No. 25.

42.     All documents, emails, and/or communications pertaining to the bases for which Defendant denies that the GS-0301-14 position advertised under announcement

RB-06-221 AJS had the same job description and duties as those of the position that Plaintiff had been fulfilling as Acting Branch Chief for over a year-and-a-half, including, but not limited to, the job description for the GS-0301-14 position advertised under announcement RB-06-221-AJS as well as the position description for the position that Plaintiff had been holding for over a year-and-a-half.

43.    The BQE lists for GS-0301-14 identified in job announcement RB-06-221-AJS and GS-0301-14/15 identified in job announcement RB-06-228-AJS.

## ADMISSIONS

Admit that, from January, 2005, through March, 2006, on Plaintiff's appraisals, the number 15 was crossed out and replaced by a hand-written 14.

## NOTICE OF DEPOSITION

Please take notice that pursuant to 29 C.F.R. Section 1614.109(b), the undersigned attorney for the Plaintiff, will take the deposition, upon oral examination, of the following individuals at a date and time to be mutually arranged in a conference room located at the offices of Snider and Associates, LLC 104 Church Lane Suite 100 Baltimore, MD 21208.  Said deponent is to be then and there prepared to testify concerning all aspects of the above captioned and cited case.  Said deponent is also instructed to bring all relevant documents in his/her possession, or that are being relied upon. The deposition will be recorded by audio and/or video tape.

| Name | Date | Time |
|------|------|------|
| Al Flumen | May 1, 2008 | 9:30 a.m. |
| Kyle Blackman | May 2, 2008 | 9:30 a.m. |
| Bob Stevens | May 5, 2008 | 9:30 a.m. |
| Gil Jamison | May 5, 2008 | 1:30 p.m. |

Plaintiff reserves the right to amend this list.

Respectfully Submitted,

/s/

Michael J. Snider, Esq.
Ari Taragin, Esq.
James L. Fuchs, Esq.
Allan Feldman, Esq.
Law Offices of Snider & Associates, LLC
104 Church Lane Suite 100
Baltimore, Maryland 21208
410-653-9060 Phone
410-653-9061 Fax

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2008, a copy of the foregoing Interrogatories, Request for Documents, Notice to Admit, and Notice of Deposition, were served, by email and U.S. Mail, upon

Claire Whitaker, D.C. Bar # 35453
Assistant United States Attorney
Julia K. Douds, Esq.
Special Ass't. United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-5134

*Attorneys for Defendant*

Date:  March 12, 2008

/s/

James L. Fuchs, Esq.
Law Offices of Snider & Associates, LLC
104 Church Lane Suite 100
Baltimore, Maryland 21208
410-653-9060 Phone
410-653-9061 Fax
thaigler@sniderlaw.com

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN TOM SMITH,<br>310 Ellsworth Drive<br>Silver Spring MD 20910 | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 07-1045 (RMU) |
| v. | ) ) ) | |
| J. DAVID PAULISON, ADMINISTRATOR,<br>FEDERAL EMERGENCY MANAGEMENT<br>AGENCY,<br>500 C Street SW<br>Washington, DC 20472 | ) ) ) ) ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT THE FEDERAL EMERGENCY MANAGEMENT
AGENCY'S RESPONSE TO PLAINTIFF'S INTERROGATORIES**

Defendant the Federal Emergency Management Agency ("FEMA"), by and through

undersigned counsel, propounds its Response to Plaintiff's Interrogatories and says:

1.      Identify all persons, other than attorneys, by full name, agency address and agency

telephone number who are answering or supplying information used in answering these

Interrogatories.

**Response: Albert Fluman, Carol Cameron: c/o Janice Williams-Jones, Trial Attorney,**

**Office of Chief Counsel/FEMA, 500 C Street, S.W. Room 840, Washington, D.C. 20472**

**(202) 646-4168.**

2.      Identify and explain, to the extent that it is known, or whenever it should become known,

in detail, all evidence including documents, witnesses being called, affidavits and/or

statements not in the Report of Investigation upon which you intend to rely, or submit at

any dispositive hearing or at any trial in this case. Should the Agency contend that this

information is privileged, please provide a privilege log that refers to each document in

question and that states the basis of the privilege asserted.

**Response: FEMA has not made any decisions about these matters at this time.**

3. If you are rejecting the Complainant's allegations of discrimination on the basis of age,

and/or reprisal, state in detail the evidence relied upon, other than contained in the ROI,

upon which you rely, or intend to submit at any dispositive hearing or at any trial in this

case, to support such rejection.

**Response: FEMA objects to Interrogatory No. 3 because it is a compound question and to**

**the extent that it seeks a legal conclusion and/or suggests that FEMA has the burden of**

**disproving Plaintiff's claims of alleged discrimination. Subject to and without waiving**

**these objections, FEMA did not discriminate against Plaintiff when it selected individuals**

**who were more qualified than Plaintiff for the two vacancies. The individuals who were**

**selected were over the age of 40 and Albert Fluman ("Mr. Fluman"), the selecting official**

**was also over age 40. In addition, Mr. Fluman has made the decision to hire/select one**

**individual who was over age 50 and an individual who was over 60 years old for vacancies**

**with FEMA.   Finally, Mr. Fluman was not aware that Plaintiff had sought EEO**

**counseling when he selected Tracy Haynes for the second vacancy in NIMS.**

4. Explain in detail the safeguards used, employed, and/or put into place by FEMA to

protect against possible or potential bias or discriminatory actions against Agency

employees as prohibited by law, and how any managerial or supervisory employees at the

2

Agency were ever trained or otherwise made aware of possible or potential bias or

discriminatory actions against agency employees as prohibited by law.

**Response: FEMA objects to interrogatory no. 4 as overly broad to the extent that it seeks**

**information regarding managers or supervisors who were not involved in the decisions give**

**rise to Plaintiff's lawsuit. Subject to and without waiving this objection, FEMA's**

**employment policies promote affirmative employment, a discrimination-free work place,**

**and equal access to FEMA programs and benefits. As such FEMA and the United States**

**Government does not discriminate in employment on the basis of race, color, religion, sex,**

**national origin, political affiliation, sexual orientation, marital status, disability, age,**

**membership in an employee organization, or other non-merit factor.  To ensure**

**compliance with FEMA's non-discrimination policy, Mr. Fluman received equal**

**employment opportunity training on an annual basis in the form of live training, video,**

**and/or on-line training.**

5.  Identify and explain in detail all employees, by their dates of hire and age, who ever

    received their jobs due to the Agency's Affirmative Programs of Equal Employment

    Opportunity ("APEEO") policies used by the agency for the past fifteen years.

**Response: FEMA objects to interrogatory no. 5 on the grounds that it is overly broad,**

**unduly burdensome, confusing and irrelevant.**

6.  Identify all individuals who supervised and/or evaluated the Plaintiff, and who had

    knowledge of Plaintiff's prior EEO activity.

**Response:  FEMA objects to interrogatory no. 6 on the grounds that it is overly broad and**

**unduly burdensome to the extent that it seeks information about Plaintiff's past**

**supervisors or evaluations during his more than 20 years of employment with FEMA,**

3

Family Preparedness Program and the Hazardous Materials Program, coordinated with the National Response Team, and provided coordination for the Emergency Support Function Leadership Group of the Federal Response Plan.

10.    Identify all reasons that Plaintiff's temporary promotion, as Acting Branch Chief of the Programs and Standard Branch in the FEMA Preparedness Directorate, expired. Identify all documents, emails, and/or communications pertaining to the expiration of Plaintiff's temporary promotion as Acting Branch Chief of the Programs and Standard Branch in the FEMA Preparedness Directorate.

Response:   FEMA objects to interrogatory no. 10 on the basis that it mischaracterizes facts in the record because Plaintiff's detail to an acting position was not a promotion and the position did not, expire it was a temporary not to exceed 120 days position. Subject to and without waiving these objections, see ROI F4 at pages 4-9. Plaintiff's detail to the position of Acting Branch Chief of the Programs and Standard Branch position in FEMA's Preparedness Directorate was for a period not to exceed 120 days. The detail began on September 19, 2004 and was scheduled to expire on January 9, 2005. However, Plaintiff continued to receive wages at the GS-15 level after his detail had expired because a SF-52 (Change to Lower Grade form) was not submitted to the Human Resources Division on time. As a result, Plaintiff was paid wages at the GS 15 level for a longer period than the scheduled 120 day detail. See Ex. B attached to FEMA's Response to Plaintiff's Requests to Produce.

11.    Identify the reasons that, although Plaintiff's temporary position expired, Plaintiff was rated against supervisory performance standards, as admitted in Items 23-24 of Defendant's Answer.

**Response: Plaintiff continued to work in the position of Acting Branch Chief on a voluntary basis after his temporary appointment had expired as did Mr. Fluman who served as the Acting Director of the NIMS Integration Center for 26 months without receiving any additional compensation. The Branch Chief position is rated at the GS 14 and the GS 15 level and Plaintiff was rated at the GS 14 level while he was voluntarily acting in the Branch Chief position.**

12.    Identify all documents pertaining to Defendant's admission that, despite the expiration of Plaintiff's temporary position, Plaintiff continued to perform successfully the supervisory activities of the GS-15 position, as demonstrated by his performance appraisals, as admitted in items 23-24 of Defendant's answer.

**Response: See ROI at F4 page 10.**

13.    Identify all reasons for which Defendant claims not to have appraised Plaintiff at the GS-15 level, even though Defendant admitted, in Items 23-24 of Defendant's answer, that Plaintiff successfully performed the supervisory activities of the GS-15 position, as demonstrated by Plaintiff's performance appraisals.

**Response: FEMA objects to interrogatory no. 13 as argumentative, confusing, a mischaracterization of FEMA's answer, irrelevant and not likely to lead to the discovery of admissible evidence. Without waiving these objections, Branch Chiefs work at the GS 14 and G15 grade level. Plaintiff was appraised at the GS 14 level as indicated in his performance appraisal covering the period October 1, 2005 through September 30, 2006.**

14.    Identify all individuals who decided Plaintiff's work assignments from January, 2005, though June, 2006, as well as the bases for said assignments, the compensation for said assignments, and the bases for said compensation.  Please identify all pertinent documents,

emails, and/or communications.

Response: FEMA objects to interrogatory no. 14 to the extent that it seeks information that is neither relevant, nor likely to lead to the discovery of admissible evidence. Subject to and without waiving this objection, see responses to interrogatories no. 8 – 10.   Plaintiff was supervised by Gilbert Jamison, Kyle Blackman, Albert Fluman and Carol Cameron for the relevant time periods. However, Plaintiff continued to work on Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and Hazardous Materials matters while he was under Mr. Fluman's supervision and Mr. Fluman did not give Plaintiff additional work assignments.  Plaintiff's detail to the position of Acting Branch Chief of the Programs and Standard Branch position in FEMA's Preparedness Directorate was for a period not to exceed 120 days. The detail began on September 19, 2004 and was scheduled to expire on January 9, 2005.  However, Plaintiff continued to receive wages at the GS-15 level after his detail had expired because a SF-52 (Change to Lower Grade form) was not submitted to the Human Resources Division on time. As a result, Plaintiff was paid wages at the GS 15 level for a longer period than the scheduled 120 day detail. See Ex. B attached to FEMA's Response to Plaintiff's Requests to Produce.

15.     Identify all reasons that, from January, 2005, through March, 2006, on Plaintiff's appraisals, the number 15 was crossed out and replaced by a hand-written number 14, including all reasons that a 14 form was not used.

Response:  FEMA objects to interrogatory no. 15 on the basis that it seeks information that is neither relevant not likely to lead to the discovery of admissible evidence and is confusing and vague since there is not separate GS 15 and GS 14 appraisal form. Subject to and without waiving these objections, on information and belief a FEMA Human Resource

person crossed out the number 15 and replaced it with a handwritten 14 and then forwarded the document to Mr. Fluman so he could complete Plaintiff's performance evaluation. Mr. Fluman then used the form that had been sent to him by FEMA's Human Resource department to evaluate Plaintiff's performance.

16.    Identify any Branch Director meetings from which Plaintiff was excluded, on or about February, 2006, as well as the bases for excluding Plaintiff from said staff meetings.

**Response:** FEMA objects to interrogatory no. 16 on the grounds that it is vague, assumes facts that are not in evidence and seeks information that is neither relevant, not likely to lead to the discovery of admissible evidence. Subject to and without waving these objections, Plaintiff was not excluded from Branch Chief meetings.

17.    Identify all individuals who advised Al Fluman to exclude Plaintiff from Branch Director meetings, on or about February, 2006.  Please identify all pertinent documents, emails, and/or communications.

**Response:**  Objects to interrogatory no. 17 on the grounds r. Fluman was not advised by anyone to exclude Plaintiff from Branch Director meetings.

18.    Identify all individuals who participated in a decision, on or around March, 2006, to dissolve CERCLA, a program in which Plaintiff was the Project Officer; and who participated in a corresponding decision to terminate CERCLA's funding.  Identify all reasons for dissolving CERCLA and for terminating CERCLA's funding.  Please identify all relevant documents, emails, and/or communications.

**Response:** FEMA objects to interrogatory no. 18 on the grounds that it alleges erroneous facts, assumes facts not in evidence and seeks information that is neither relevant, not likely to lead to the discovery of admissible evidence. Subject to and without waving these

objections, the CERCLA program is still in existence at FEMA and FEMA has no knowledge of any individual who participated in the decision to dissolve CERCLA funding.

19.    Identify all duties that Fluman assigned to Plaintiff's subordinates from March, 2006 through March, 2007; Fluman's reasons for assigning said duties; and any and all of Fluman's reasons for not informing Plaintiff, as admitted in items 31-37 of Defendant's answer.  Please provide all documents, emails, and/or communications.

Response:  FEMA objects to interrogatory no. 16 on the grounds that it,  assumes facts not in evidence, is vague and seeks information that is neither relevant, not likely to lead to the discovery of admissible evidence. Subject to and without waving these objections, as Acting Director of the National Incident Management System, Mr. Fluman managed the Deputy Director of the National Incident Management System, the Branch Chiefs, including Plaintiff, and any employees under the supervision of the Branch Chiefs and Mr. Fluman was authorized to make work assignment to any of them as needed. However, Mr. Fluman does not recall the names of any employee (s) who were under Plaintiff's supervision or any specific duties assigned to some in Plaintiff's branch.

20.    Identify all individuals who were selected for the position of Supervisory Program Specialist, GS-0301-14, under Announcement RB-06-221-AJS.

Response: James Mullikin.

21.    Identify all reasons for the selection of James Mullikin over Plaintiff for the position of Supervisory Program Specialist, GS-0301-14, under Announcement RB-06-221-AJS, including information pertaining to Mullikin's and Plaintiff's prior supervisory experience, systems experience, experience in complex managerial and supervisory work.   Identify all supporting documents, emails, and/or communications, including interview notes and interview questions.

**Response: Mr. Mullikin was selected for the Supervisory Program Specialist position because he possessed the technical expertise to perform the duties of the position relative to grants and training and compliance and Plaintiff did not have such experience and expertise. See also, ROI.**

22.     Identify all bases for which Plaintiff was not interviewed and/or selected for the position of Supervisory Program Specialist, GS-0301-14, under Announcement RB-06-221-AJS. Identify all backup data including documents, emails, or communications, to corroborate.

**Response:  See response to interrogatory no. 21. Mr. Fluman selected Mr. Mullikin for the Supervisory Program Specialist, GS-0301-14, under Announcement RB-06-221-AJS without conducting any interviews. Mr. Fluman he did not believe interviews were warranted given Mr. Mullikin's demonstrated technical expertise in compliance and metrics during his detail from DHS to FEMA.  In addition, Plaintiff was not interviewed for the position because he could not perform the duties of the position which had become increasing more  scientific and technical following a reorganization in NIMS which transferred FEMA's  Capability Assessment Branch and preparedness functions to the Department of Homeland Security.**

23.     Identify all individuals who were selected for the position of Supervisory Program Specialist, GS-0301-14/15, under Announcement RB-06-228-AJS.

**Response: Trac y Haynes.**

24.     Identify all reasons for the selection of Tracey Haynes over Plaintiff for the position of Supervisory Program Specialist, GS-0301-14/15, under Announcement RB-06-228-AJS, including information pertaining to Haynes' and Plaintiff's supervisory experience, Haynes' and Plaintiff's metrics experience, Haynes' and Plaintiff's  experience at the Agency, Haynes' and

Plaintiff's experience in complex managerial and supervisory work, and Haynes' status, at the time of his selection, as an Agency employee. Identify all supporting documents, emails, and/or communications, including interview notes and interview questions.

**Response: Mr. Fluman selected Mr. Haynes for the Supervisory Program Specialist, GS-0301-14/15, under Announcement RB-06-228-AJS because Mr. Haynes was better qualified because he has had broad based experience with FEMA and an extensive background in recovery operations acquired while he was working in long term recovery operation during Hurricane Katrina. In addition, Mr. Haynes was qualified to perform the technical duties which were required in NIMS following a reorganization which transferred many of FEMA's preparedness functions to DHS and created an increased focus on the scientific and technical responsibilities in NIMS. See also, ROI.**

25.     Identify all bases for which Plaintiff was not interviewed and/or selected for the position of Supervisory Program Specialist, GS-0301-14/15, under Announcement RB-06-228-AJS. Identify all backup data including documents, emails, and/or communications, to corroborate.

**Response: See response to interrogatory no. 24. Ex. F and G.**

26.     Identify all bases for which Defendant denies that the GS-0301-14 position advertised under announcement RB-06-221 AJS had the same job description and duties as those of the position that Plaintiff had been fulfilling as Acting Branch Chief for over a year-and-a-half. Identify all supporting documents, emails, and/or communications to corroborate, including the job description for the GS-0301-14 position advertised under announcement RB-06-221-AJS as well as the position description for the position that Plaintiff had been holding for over a year-and-a-half.

**Response: See response to interrogatories nos. 21-24. See Ex. B.**

27. Identify in detail all the bases on which Defendant denies that Millikan and Haynes were unable to perform all facets of the supervisory position at the GS-15 level, as denied in Items 51-54 of Defendant's Answer.

**Response: FEMA objects to interrogatory no. 27 on the grounds that it is vague an ambiguous. Subject to and without waiving these objections, Mr. Mullikin and Mr. Haynes both had prior supervisory experience and were able to perform all facets of their positions.**

28. Identify all persons who were employed with Defendant during Plaintiff's employment, including but not limited to the name, address, telephone number, job title, division, and current employment status of each.

**Response: FEMA objects to interrogatory no. 28 on the grounds that it is overly broad, unduly burdensome and calls for information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, during the time period giving rise to the allegations set forth in Plaintiff's complaint, Plaintiff's co-workers or supervisors in the office included Gilbert Jameson- the Director of Preparedness-Gulf Coast Recovery Director (not currently employed by FEMA); Stanley Wentz (retired); Shep Willner (Program Specialist), Mr. Fluman, Carol Cameron( the Director of International Affairs), Kyle Blackman, Robinson Stevens, Michelle McQueenie (the Chief of Staff for the Gulf Coast Recovery Office), David Laraimer (Acting Branch Chief for Science and Technology); Trac y Haynes, James Mullikin and Ralph Swisher(an 80 year old who still works for FEMA in community preparedness).**

29. Identify all persons employed by Defendant who have made complaints and/or

allegations regarding age discrimination by Defendant during the last ten years.

**Response: FEMA objects to interrogatory no. 29 on the grounds that it is overly broad, unduly burdensome and seeks information that protected by the Privacy Act and is not relevant or likely to lead to the discovery of admissible evidence. Subject to and without waiving this objection, no age discrimination complaints have been filed against Mr. Fluman.**

30.    Identify any and all witnesses you intend to call at trial.

**Response: FEMA has not made any decision about witnesses who will be called at trial. FEMA plans to make such decisions at the appropriate time.**

**FEMA'S RESPONSE TO PLAINTIFF'S**
**REQUEST FOR PRODUCTION OF DOCUMENTS**

1.    Plaintiff's personnel file.

**Response: See Ex. A.**

2.    All documents or files pertaining to Plaintiff or his employment not contained in his "personnel file" regardless of who created or maintained such documents or files.

**Response: See Ex. B.**

3.    All documents, emails, and/or communications pertaining to Plaintiff's compensation and employee benefits from January, 2005 to the present.

**Response: See Exs. A-B.**

4.    All documents emails, and/or communications relating to any investigation, audit, or review of Plaintiff during his employment.

**Response: See Exs. A-B. See also, ROI.**

5.    All emails sent to, or received by, Plaintiff during his employment.

**Response: FEMA objects to request to no. 5 on the grounds that it is overly broad and**

unduly burdensome and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence since Plaintiff has been employed by FEMA for more than 20 years. Answering further, see Ex. A.

6.    All documents sent to, or received by, Al Fluman during Plaintiff's employment containing any reference to Plaintiff.

**Response: FEMA objects to request to no. 6 on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Mr. Fluman does not have any e-mails about Plaintiff in his possession.**

7.    All e-mails sent to, or received by, Al Fluman during Plaintiffs' employment that contain jokes, comments, or references to employees' age.

**FEMA objects to request to no. 7 on the grounds that it is vague and ambiguous, overly broad and unduly burdensome and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. Subject to and without waiving these objections, none.**

8.    An electronic copy of Defendant's PeopleSoft or other personnel data that identifies and describes Defendant's workforce for the past three years, including each employee's name, dates of employment, age, job title, job code, department/division, and any other descriptive fields maintained in Defendant's regular course of business.

**FEMA objects to interrogatory no. 8 on the grounds that seeks information which is privileged and/or protected by the Privacy Act is overly broad and unduly burdensome and is neither relevant nor likely to lead to the discovery of admissible evidence.**

9.    All documents, emails, and/or communications pertaining to any and all investigations or

14

complaints relating to Al Fluman.

**FEMA objects to interrogatory no. 9 on the grounds that it is overly broad, unduly burdensome and seeks information which is not relevant or likely to lead to the discovery of admissible evidence.**

10.    All documents, emails, and/or communications relating to the complaints and/or allegations regarding age discrimination against Defendant, as identified in response to Interrogatory No. 29.

**Response: None.**

11.    All employee handbooks and other manuals, guidelines, or handbooks containing Defendant's policy and procedures in effect during Plaintiff's employment.

**Response: FEMA objects to interrogatory no. 8 on the grounds that it is overly broad, unduly burdensome and seeks information that is not relevant and not likely to lead to the discovery of admissible evidence. Subject to and without waiving these objections, see Ex. C.**

12.    All documents that may be offered into evidence at trial or depositions or may be used to refresh the recollection of a witness at depositions or trial.

**Response: FEMA has not made any decisions regarding documents that will be offered into evidence or trial or deposition.**

13.    All documents identified, or that should have been identified, in Defendant's Rule 26(f) disclosures.

**Response: See Ex. A-C.**

14.    All statements of witnesses or potential witnesses or persons interviewed in connection with this case.

**Response: FEMA objects to request no. 14 to the extent that it seeks attorney work product and/or privileged or Privacy Act information. Subject to and without waiving these objections, none.**

15.    All documents relied upon or reviewed by your expert witnesses in forming his/her opinions on this matter.

**Response: FEMA has not retained an expert in this case.**

16.    Any and all insurance agreements that may provide coverage for Defendant in this matter.

**Response: None.**

17.    All documents, emails, and/or communications pertaining to the position description of job GS-0301-14 identified in job announcement RB-06-221-AJS.

**Response: See ROI and Ex. D.**

18.    All documents, emails, and/or communications pertaining to the position description of job GS-0301-14/15 identified in job announcement RB 06-228-AJS.

**Response: See ROI and Ex. E.**

19.    All documents, emails, and/or communications pertaining to the Plaintiff's position as Acting Chief of the Programs and Standard Branch in the FEMA Preparedness Directorate position at all times that Plaintiff held this position.

**Response: FEMA objects to request to no. 19 on the grounds that it is vague and ambiguous. Subject to and without waving these objections, see ROI and Exs. A-C.**

20.    All documents, emails, and/or communications pertaining to the competition for job GS-0301-14 identified in job announcement RB-06-221-AJS, and selection of Mullikin, including interview notes, questions, etc.

**Response: See ROI and Ex. D.**

21.     All documents, emails, and/or communications pertaining to the competition for job GS-0301-14/15 identified in job announcement RB-06-228-AJS and selection of Tracy Haynes, including interview notes, questions, etc.

**Response: See ROI and Ex. E.**

22.     Any documents, emails, and/or communications containing recommendations that Plaintiff not be appointed to Position GS-0301-14 identified in job announcement RB-06-221-AJS.

**Response: None.**

23.     Any documents, emails, and/or communications containing recommendations that Plaintiff not be appointed to Position GS-0301-14/15 identified in job announcement RB-06-228-AJS.

**Response: None.**

24.     Al Fluman's personnel file.

**Response: FEMA objects to request no. 24 on the grounds that it seeks information that is privileged and/or protected by the Privacy Act and which is neither relevant nor likely to lead to the discovery of admissible evidence.**

25.     All evaluations of Plaintiff from January 1, 2003 to March 3, 2006.

**Response: See ROI and Ex. A-C.**

26.     All documents, emails, and/or communications pertaining to Plaintiff's temporary promotion on September 19, 2004, as identified in response to Interrogatory No. 8.

**Response: See Ex. B.**

27.     All documents, emails, and/or communications pertaining to recommendations against

Plaintiff's promotion on September 19, 2004, as identified in response to Interrogatory No. 8.

**Response: None.**

28.    All documents, emails, and/or communications pertaining to the expiration of Plaintiff's temporary promotion as Acting Branch Chief of the Programs and Standards Branch in the FEMA Preparedness Directorate, as identified in response to Interrogatory No. 10.

**Response: See ROI and Ex. B.**

29.    Gil Jamison's Personnel File.

**Response: FEMA objects to request no. 29 on the grounds that it seeks information that is privileged and/or protected by the Privacy Act and which is neither relevant nor likely to lead to the discovery of admissible evidence.**

30.    All documents, emails, and/or communications pertaining to any and all investigations or complaints relating to Gil Jamison.

**Response: FEMA objects to request no. 30 on the grounds that it seeks information that is privileged and/or protected by the Privacy Act, is overly broad and unduly burdensome and seeks information that is not relevant or likely to lead to the discovery of admissible evidence.**

31.    All documents, emails, and/or communications sent to, or received by, Gil Jamison during Plaintiff's employment containing any reference to Plaintiff.

**Response: FEMA objects to request no. 31 on the grounds that it seeks information which is privileged and/or protected by the Privacy Act, is overly broad and unduly burdensome and seeks information that is not relevant or likely to lead to the discovery of admissible evidence.**

32.    All documents, emails, and/or communications pertaining to the reasons that, although

Plaintiff's temporary position expired, Plaintiff was rated against supervisory performance

standards, as admitted in items 23-24 of Defendant's answer.

**Response:  See, ROI.**

33.    All documents, emails, and/or communications pertaining to Defendant's admission that,

despite the expiration of Plaintiff's temporary position, Plaintiff continued to perform

successfully the supervisory activities of the GS-15 position, as demonstrated by his performance

appraisals, as admitted in items 23-24 of Defendant's answer, and as identified in response to

Interrogatory No. 12.

**Response: See response to request no. 32.**

34.    All documents, emails, and/or communications pertaining to Plaintiff's work assignments

from January, 2005, though June, 2006, as well as the bases for said assignments, the

compensation for said assignments, and the bases for said compensation, as identified in

response to Interrogatory No. 14.

**Response: Exs. A -B.**

35.    All documents, emails, and/or communications pertaining to the decision to exclude

Plaintiff from Branch Director meetings, on or about February, 2006, as identified in response to

Interrogatory No. 17.

**Response:  Plaintiff was not excluded from Branch Director's meetings.**

36.    All documents, emails, and/or communications pertaining to dissolving CERCLA and

pertaining to terminating CERCLA's funding and to the reasons for dissolving  CERCLA and/or

terminating CERCLA's funding, as identified in response to Interrogatory No. 18.

**Response:  Funding determinations for CERCLA  are not determined by FEMA and, in**

**any event, CERCLA is still in existence at FEMA. Accordingly, FEMA has no documents**

which relate, refer or concern the alleged dissolution or termination of the CERCLA.

37.    All documents, emails, and/or communications pertaining to duties that Fluman assigned to Plaintiff's subordinates from March, 2006 through March, 2007; Fluman's reasons for assigning said duties; and any and all of Fluman's reasons for not informing Plaintiff, as admitted in items 31-37 of Defendant's answer, and as identified in response to Interrogatory No. 19.

**Response: None**

38.    All documents, emails, and/or communications pertaining to all reasons for the selection of James Mullikin over Plaintiff for the position of Supervisory Program Specialist, GS-0301-14, under Announcement RB-06-221-AJS, including information pertaining to Mullikin's and Plaintiff's prior supervisory experience, systems experience, experience in complex managerial and supervisory work, including, but not limited to, interview notes and interview questions, as identified in response to Interrogatory No. 21.

**Response: Ex. F.**

39.    All documents, emails, and/or communications pertaining to all bases for which Plaintiff was not interviewed and/or selected for the position of Supervisory Program Specialist, GS-0301-14, under Announcement RB-06-221-AJS, as identified in response to Interrogatory No. 22.

**Response: Ex. F.**

40.    All documents, emails, and/or communications pertaining to the reasons for the selection of Tracey Haynes over Plaintiff for the position of Supervisory Program Specialist, GS-0301-14/15, under Announcement RB-06-228-AJS, including information pertaining to Haynes' and Plaintiff's supervisory experience, Haynes' and Plaintiff's metrics experience, Haynes' and

Plaintiff's experience at the Agency, Haynes' and Plaintiff's experience in complex managerial and supervisory work, and Haynes' status, at the time of his selection, as an Agency employee, including, but not limited to, interview notes and interview questions, as identified in response to Interrogatory 24.

**Response: Ex. G.**

41.    All documents, emails, and/or communications pertaining to the bases for which Plaintiff was not interviewed and/or selected for the position of Supervisory Program Specialist, GS-0301-14/15, under Announcement RB-06-228-AJS, as identified in response to Interrogatory No. 25.

**Response: Ex. G.**

42.    All documents, emails, and/or communications pertaining to the bases for which Defendant denies that the GS-0301-14 position advertised under announcement RB-06-221 AJS had the same job description and duties as those of the position that Plaintiff had been fulfilling as Acting Branch Chief for over a year-and-a-half, including, but not limited to, the job description for the GS-0301-14 position advertised under announcement RB-06-221-AJS as well as the position description for the position that Plaintiff had been holding for over a year-and-a-half.

**Response: Exs. F and G.**

43.    The BQE lists for GS-0301-14 identified in job announcement RB-06-221-AJS and GS-0301-14/15 identified in job announcement RB-06-228-AJS.

**Response: See Ex. H.**

## ADMISSIONS

Admit that, from January, 2005, through March, 2006, on Plaintiff's appraisals, the number 15 was crossed out and replaced by a hand-written 14.

**Response: Denied.**

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 15th day of April 2008

Albert Fluman

31.

22

As to Objections,

_____ /s/ _____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_____ /s/ _____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____ /s/ _____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

CERTIFICATE OF SERVICE

I hereby certify that the foregoing Defendant the Federal Emergency Management

Agency's Responses to Plaintiff's Discovery have been served on plaintiff by mailing a copy

thereof, by first class mail, postage prepaid, to:

        James L. Fuchs, Esq.
        SNIDER & ASSOCIATES LLC
        104 Church Lane, suite 201
        Baltimore, MD 21208

this 15th day of April 2008.

                              CLAIRE WHITAKER
                              Assistant U.S. Attorney
                              555 4th St., N.W. E-4204
                              Washington, D.C. 20530

# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN TOM SMITH,<br>310 Ellsworth Drive<br>Silver Spring MD 20910<br><br>       Plaintiff,<br><br>v.<br><br>J. DAVID PAULISON, ADMINISTRATOR,<br>FEDERAL EMERGENCY MANAGEMENT<br>AGENCY,<br>500 C Street SW<br>Washington, DC 20472<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Civil Action No.** 07-1045 (RMU)

**JURY TRIAL DEMANDED**

**PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS**

The Plaintiff, through his undersigned counsel from Snider & Associates, LLC, requests that the Agency respond to the following request for production of documents, or make such documents available for inspection by the Complainant's counsel.  You are required to respond to this request no later than thirty (30) calendar days after receipt of this Request for the Production of Documents.  Your response(s) and the documents are to be sent to the undersigned at Snider & Associates, LLC, 100 Church Lane Suite 100, Baltimore, Maryland 21208.

**DEFINITIONS**

A.    "Complainant" means John Tom Smith.

B.    "Agency," "you," "your," or "yourself," means the FEDERAL EMERGENCY

MANAGEMENT AGENCY ("FEMA"), the named Agency in this case, and any and all of

its supervisors, managers, agents, representatives, employees, servants, consultants,

contractors, subcontractors, investigators, attorneys, and any other persons or entities

acting or purporting to act on behalf of the agency.

C.    "Person", "persons," "people", and "individual" means any natural person,

together with all federal, state, county, municipal and other government units, agencies

or public bodies, as well as firms, companies, corporations, partnerships,

proprietorships, joint ventures, organizations, groups of natural persons or other

associations or entities separately identifiable whether or not such associations or

entities have a separate legal existence in their own right.

D.    "Document," "documents," and "writing" means all records, papers, and books,

transcriptions, pictures, drawings or diagrams or every nature, whether transcribed by

hand or by some mechanical, electronic, photographic or other means, as well as sound

reproductions of oral statements or conversations by whatever means made, whether in

your actual or constructive possession or under your control or not, relating to or

pertaining to or in any way to the subject matters in connection which it is used and

includes originals, all file copies, all other copies, no matter how prepared and all drafts

prepared in connection with such writing, whether used or not, including by way of

illustration and not by way of limitation, the following; books; records; reports; contracts;

agreements; expense accounts; canceled checks; catalogues; price lists; video, audio

and other electronic recordings; memoranda (including written memoranda of telephone

conversations, other conversations, discussions, agreements, acts and activities);

minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; correspondence; drafts; bulletins; electronic mail; facsimiles; circulars; forms; pamphlets; notice; statements; journals; postcards; letters; telegrams; publications; inter- and intra- office communications; photostats; photographs; microfilm; maps; drawings; diagrams; sketches; analyses; electromagnetic records; transcripts; and any other documents within defendant's possession, custody or control from which information can be obtained or translated, if necessary, by detection devices into reasonably usable form, i.e. typed in English prose.

E.    "Communication" or "communications" means any and all inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondence, notes telegrams, facsimiles, electronic mail, memoranda, or other forms of communications, including, but not limited to, both oral and written communications.

F.    "Produce" and "provide" mean to provide either a legible true copy of the original or any document and/or communication.

G.    "Relate to," "relating to," "concerning," "pertain," and "pertaining to," mean consisting of, referring to, reflecting or arising out of, evidencing or in any way legally, logically, or factually connected with the matter discussed, directly or indirectly.

H.    "Explain in detail" refers to any response to these Interrogatories that you may give which will serve to reasonably explain any relevant, genuine, and material factual issues or your understanding of any such evidence in this case, and that will also resolve any need for any further inquiry or determination into the requested factual issue or subject matter inquired about or requested by the Complainant. Your responses

should serve to prevent redundant, immaterial, or otherwise irrelevant facts or evidence in this case to be considered as a matter of law.

I.        "Identify," "identifying," and "identification" when used in reference to an Interrogatory means to specify or indicate any person, employee, or individual directly related to or otherwise responsive to the Interrogatory request. When used in reference to any writing or document, it means to give a sufficient characterization of such writing or document to properly identify it in a request to produce and shall include, without limitation, the following information with respect to each such document:

1.        The date appearing on such document, and if it has no date, the answer shall so state and shall give the date or approximate date such document was prepared;

2.        The identity or descriptive code number, file number, title or label of such document;

3.        The general nature and description of such document, and if it was not signed, the answer shall so state and shall give the name of the person or persons who prepared it;

4.        The names of the person(s) to whom such document was addressed and the name of each person other than such addressee to whom such document or copies of it, were given or sent;

5.        The name(s) of the person(s) having present possession, custody, or control of such document(s); and

6.        Whether or not any draft, copy or reproduction of such document contains any postscripts, notations, changes or addendum not appearing on the

document itself, and if so, the answer shall give the description of each such draft, copy or reproduction.

1.    All documents, emails, and communications submitted by James Millikin with respect to his application for the GS-0301-14 position under Announcement RB-06-221-AJS.

2.    All documents, emails, and communications submitted by Tracy Haynes with respect to his application for the GS-0301-15 position under Announcement RB-06-228-AJS.

Respectfully Submitted,

_____/s/_____

Michael J. Snider, Esq.
Ari Taragin, Esq.
James L. Fuchs, Esq.
Allan Feldman, Esq.
Law Offices of Snider & Associates, LLC
104 Church Lane Suite 100
Baltimore, Maryland 21208
410-653-9060 Phone
410-653-9061 Fax

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2008, a copy of the foregoing Send Request for the Production of Documents was served by facsimile and U.S. Mail, upon

Claire Whitaker, D.C. Bar # 35453
Assistant United States Attorney
Special Ass't. United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-5134
Facsimile (202) 514-8780
*Attorneys for Defendant*


Date:  May 7, 2008

                                    _____/s/_____
                                    James L. Fuchs, Esq.
                                    Law Offices of Snider & Associates, LLC
                                    104 Church Lane Suite 100
                                    Baltimore, Maryland 21208
                                    410-653-9060 Phone
                                    410-653-9061 Fax
                                    thaigler@sniderlaw.com

# Exhibit 4

S&A  LAW OFFICES OF SNIDER & ASSOCIATES, LLC

May 19, 2008

**By Facsimile and U.S. Mail**

Claire Whitaker, Esq.
Assistant United States Attorney
United States Attorneys' Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, DC 20530

Re:  *Smith v. Paulison*, Civil Action No. 07-1045 (RMU)

Dear Ms. Whitaker:

Thank you for The Federal Emergency Management Agency's Response to Plaintiff's Interrogatories and FEMA's Response to Plaintiff's Request for Production of Documents. I am writing to document Plaintiff's objections to some of these Responses in an attempt to resolve any disputes without bringing a motion to compel. Plaintiff objects to the following responses:

**Interrogatory No. 7-Plaintiff's Work Duties**
Plaintiff has requested that Defendant provide in detail the criteria used for assigning the Complainant any of his work duties since February 1, 2003 and May 1, 2006. In responding, Defendant refers merely to the ROI "at F and F 4 pages 5-9." This is completely unresponsive, since this information is not provided in F and F4. Also, F4 does not have nine pages, so Defendant's response is confusing as well. Further, any answer that refers solely to the ROI is *per se* inadequate, in that the ROI contains no documents, and that the investigator apparently consulted no documents.

**Interrogatory No. 8-Individuals Recommending Plaintiff's Promotion**
Plaintiff has requested that Defendant identify all individuals recommending that he be promoted to the position of Acting Chief of the Programs and Standard Branch in the FEMA Preparedness Directorate; and identify all bases for that decision. Defendant's response is that the position in question was a temporary detail and not a promotion. This is unresponsive, in that Defendant merely identifies David Garratt, but provides no basis for the decision. The answer does not identify documents, emails, and/or communications, as required by the Interrogatory. Plaintiff requested that Defendant identify documents, emails, and/or communications pertaining to Plaintiff's assignment, including any documents, emails, and/or communications pertaining to any recommendations against Plaintiff's assignment. Further, Defendant's response does not say whether David Garratt was the only person who recommended Plaintiff. In addition, any answer that refers solely to the ROI is *per se* inadequate, in that the ROI contains no

32

documents, and that the investigator apparently consulted no documents. Also, F4 does not have nine pages, so Defendant's response is confusing as well.

**Interrogatory No. 9-Plaintiff's Work Duties as Acting Chief**
Plaintiff has requested that Defendant identify Plaintiff's work duties as Acting Branch Chief of the Programs and Standard Branch in the FEMA Preparedness Directorate, expired. Defendant provides only a vague response that refers to the ROI. As has been stated above, any answer that refers solely to the ROI is *per se* inadequate, in that the ROI contains no documents, and that the investigator apparently consulted no documents. Also, F4 does not have seven pages, so Defendant's response is confusing as well.

**Interrogatory No. 10-All Reasons for Plaintiff's Temporary Promotion**
Plaintiff has requested that Defendant all reasons for Plaintiff's promotion as Acting Branch Chief of the Programs and Standard Branch in the FEMA Preparedness Directorate, expired, as well as all documents, emails, and/or communications pertaining to the expiration of Plaintiff's temporary promotion. Defendant astonishingly maintains that this assignment was merely a "detail" and not a "promotion," even though Defendant admits that Plaintiff received wages at the GS-15 level in this "detail." Defendant refers to one exhibit, but it is difficult to believe that there are no other documents. In addition, any answer that refers only to the ROI, without providing additional documents, is *per se* inadequate, in that the ROI contains no documents, and that the investigator apparently consulted no documents. Also, F4 does not have nine pages, so Defendant's response is confusing as well.

**Interrogatory No. 11-Plaintiff's Rating against Supervisory Performance Standards**
Plaintiff has requested that Defendant identify the reasons that, although Plaintiff's temporary position expired, Plaintiff was rated against supervisory performance standards, as admitted in Items 23-24 of Defendant's answer. Defendant responded that the Branch Chief position is rated at the GS 14 and GS 15 level. This does not answer the question, since it does not explain why a supervisory position would be rated at both the GS 14 and GS 15 level.

**Interrogatory No. 12-Documents Pertaining to Defendant's Successful Performance of the Supervisory Activities of the GS-15 Position**
Plaintiff has requested that Defendant identify all documents pertaining to Defendant's admission that, despite the expiration of Plaintiff's temporary position, Plaintiff continued to perform successfully the supervisory activities of the GS-15 position, as demonstrated by his performance appraisals, as admitted in items 23-24 of Defendant's answer. In responding, Defendant refers merely to the ROI at F4 page 10. This is completely unresponsive, since this information is not provided in F and F4. Also, F4 does not have nine pages, so Defendant's response is confusing as well. Further, any answer that refers solely to the ROI is *per se* inadequate, in that the ROI contains no documents, and that the investigator apparently consulted no documents.

**Interrogatory No. 13-All Reasons for which Defendant Claims Not to Have Appraised Plaintiff at the GS-15 Level**
Plaintiff has requested that Defendant identify the reasons for which Defendant claims not to have appraised Plaintiff at the GS-15 level, even though Defendant admitted, in Items 23-24 of Defendant's answer, that Plaintiff successfully performed the supervisory activities of the GS-15 position, as demonstrated by Plaintiff's performance appraisals. Defendant merely answers that Branch Chiefs work at the GS 14 and GS 15 grade level, although Defendant fails to explain why, if this is in fact the case, Defendant could only find for Plaintiff an appraisal form for a GS-15, upon which Defendant or Defendant's agents scratched out the 15 and inserted a 14. Nor, even if Defendant's representation were truthful, does Defendant provide the reasons for the decision.

**Interrogatory No. 14-Individuals Who Decided Plaintiff's Work Assignments, the Bases for Said Assignments, the Compensation for Said Assignments, and the Bases for Said Compensation, along with All Pertinent Documents**
Plaintiff has requested that Defendant identify not simply individuals, but the bases for Plaintiff's assignments, the compensation for said assignments, and the bases for said compensation. Although Defendant states that Fluman did not provide Plaintiff with additional work assignments, Defendant does not identify the bases for Plaintiff's assignments, the compensation for said assignments, and the bases for said compensation. Defendant has also not identified pertinent documents, emails, and/or communications.

**Interrogatory No. 15-The Reasons that the Number 15 Was Crossed Out on Plaintiff's Appraisals**
Plaintiff has requested that Defendant identify all reasons that, from January, 2005, through March, 2006, on Plaintiff's appraisals, the number 15 was crossed out and replaced by a hand-written number 14, including all reasons that a 14 form was not used. Defendant has responded that "there is not [a] separate GS 15 and GS 14 appraisal form." This response does not explain why "GS 14" does not appear on a form that Defendant claims is a basis for appraising employees at the GS 14 level. Defendant also does not explain the reason that 14 was crossed out on this form and replaced by 15. Further, Defendant does not identify the Human Resources employee who allegedly crossed out 15. Nor does Defendant explain why Fluman would use a form with 15 crossed out and hand-written in when appraising Plaintiff. This answer also appears to be in conflict with Defendant's response to Defendant's Notice to Admit, in which Defendant denied that, on Plaintiff's appraisals, from January, 2005, through March, 2006, the number 15 was crossed out and the number 15 hand-written in.

**Interrogatory No. 19-Duties that Fluman Assigned to Plaintiff's Subordinates**
Plaintiff has requested that Defendant identify all duties that Fluman assigned to Plaintiff's subordinates from March, 2006 through March, 2007; and Fluman's reasons for assigning said duties and not informing Plaintiff, as admitted in items 31-37 of Plaintiff's answer. Defendant represents that Fluman does not remember the names of employees under Plaintiff's supervision or duties that he (Fluman) assigned to them. However, Defendant admitted to this in Defendant's answer. Also, Defendant does not

deny that Fluman remembers reasons for not having informed Plaintiff, but Defendant has not identified those reasons.

**Interrogatory No. 21-Reasons for Mullikin's Selection over Plaintiff**
Plaintiff has requested that Defendant identify all reasons for the selection of James Mullikan over Plaintiff for the position of Supervisory Program Specialist, GS-0301-14, under Announcement RB-06-221-AJS, including information pertaining to Mullikin's and Plaintiff's prior supervisory experience, systems experience, and experience in complex managerial and supervisory work. Defendant provides only the vague answer that Mullikin was selected "because he possessed the technical expertise to perform the duties of the position relative to grants and training and compliance and Plaintiff did not have such experience and expertise." This response does not even purport to answer the question. Defendant's also refers to the ROI, which does not include any documents, and which is not based upon the review of any documents.

**Interrogatory No. 24-Reasons for Haynes' Selection over Plaintiff**
Plaintiff has requested that Defendant identify all reasons for the selection of Tracy Haynes over Plaintiff for the position of Supervisory Program Specialist, GS-0301-14/15, under Announcement RB-06-228-AJS, including information pertaining to Haynes' and Plaintiff's prior supervisory experience, metrics experience, experience at the Agency, and experience in complex managerial and supervisory work. Defendant provides only the vague answer that Haynes was selected "because he has had broad based experience with FEMA and an extensive background in recovery operation during Hurricane Katrina" as well qualifications "to perform the technical duties which were required in NIMS following a reorganization" that "created an increased focus on the scientific and technical responsibilities in NIMS." This response does not even purport to answer the question, and refers to factors irrelevant to the advertised position. Defendant also refers to the ROI, which does not include any documents, and which is not based upon the review of any documents.

**Interrogatory No. 25-Bases for which Plaintiff Was Not Interviewed and/or Selected for the Position of Supervisory Program Specialist**
Plaintiff has requested that Defendant identify all bases for which Plaintiff was not interviewed and/or selected for the position of Supervisory Program Specialist, GS-0301-14/15, under Announcement RB-06-228-AJS, which had the same job description as the position that Plaintiff had been fulfilling as Acting Branch Chief. Plaintiff has also requested that Defendant identify all supporting documents, emails, and/or communications to corroborate, including the job descriptions for the advertised position and Plaintiff's position, respectively. Defendant provides only its previous, vague answer that Haynes was selected "because he has had broad based experience with FEMA and an extensive background in recovery operation during Hurricane Katrina" as well qualifications "to perform the technical duties which were required in NIMS following a reorganization" that "created an increased focus on the scientific and technical responsibilities in NIMS." This response does not even purport to answer the question, and refers to factors irrelevant to the advertised position. Defendant's also refers to the

ROI, which does not include any documents, and which is not based upon the review of any documents.

## Interrogatory No. 26-Bases for which Defendant Denies that the GS-0301-14 Position Had the Same Job Descripton and Duties as Those of the Position that Plaintiff Had Been Fulfilling as Acting Branch Chief

Plaintiff has requested that Defendant identify all bases for which Defendant denies that the GS-0301-14 position advertised under announcement RB-06-221 AJS had the same job description and duties as those of the position that Plaintiff had been fulfilling as Acting Branch Chief. Plaintiff has also requested that Defendant identify all supporting documents, emails, and/or communications to corroborate, including the job descriptions for the advertised position and Plaintiff's position, respectively. Defendant provides only its its previous, vague answer that Haynes was selected "because he has had broad based experience with FEMA and an extensive background in recovery operation during Hurricane Katrina" as well qualifications "to perform the technical duties which were required in NIMS following a reorganization" that "created an increased focus on the scientific and technical responsibilities in NIMS." This response does not even purport to answer the question, and refers to factors irrelevant to the advertised position. Defendant's also refers to the ROI, which does not include any documents, and which is not based upon the review of any documents.

## Interrogatory No. 27-Bases for which Defendant Denies that Mullikin and Haynes Were Unable to Perform All Facets of the Supervisory Position at the GS-15 Level

Plaintiff has requested that Defendant identify all bases for which Defendant denies that Mulikin and Haynes were unable to perform all facets of the supervisory position at the GS-15 level. Defendant merely states, generally and vaguely, that Mullikin and Haynes both "had prior supervisory experience and were able to perform all facets of their positions." This Response does not even purport to answer the question.

## Interrogatory No. 28-Persons Employed with Defendant during Plaintiff's Employment

Plaintiff has requested that Defendant identify persons employed with Defendant during Plaintiff's employment, including name, address, telephone number, job title, division, and current employment status. Defendant has provided names and some job titles, but Defendant has not identified addresses or telephone numbers, and Defendant has provided only partial information with respect to job titles, divisions, and current employment status.

## Interrogatory No. 29-Persons Employed with Defendant Who Have Made Age Discrimination Claims

Plaintiff has requested that Defendant identify persons employed with Defendant who have made age discrimination complaints. Defendant has said simply that there have been no age discrimination complaints against Fluman, which does not answer the question.

**Document Requests**
In responding to Document Requests, Defendant represents, incredibly, that Fluman contains no emails pertaining to Plaintiff despite all the years in which Fluman supervised Plaintiff. If that is indeed the case, Defendant must explain why such emails do not exist. Similarly, documents sent to, or received by, Plaintiff during his employment bear upon this case, because they necessarily concern his credentials for the positions he sought, his temporary promotion, and the purported reasons for his non-selection.

**Personnel Data**
Plaintiff has sought Defendant's PeopleSoft and other personnel data that identify and describe Defendant's workforce. Defendant claims that such data would be "privileged and/or protected by the Privacy Act." Defendant has failed to explain the relevance of the privileges that it is invoking.

**Documents Pertaining to Al Fluman**
In Request No. 9, Plaintiff has sought all documents, emails, and/or communications pertaining to any and all investigations or complaints relating to Al Fluman.

**Documents Pertaining to Plaintiff's Position as Acting Chief of the Programs and Standard Branch in the FEMA Preparedness Directorate Position**
In Request No. 19, Plaintiff has sought all documents, emails, and/or communications pertaining to the Plaintiff's position as Acting Chief of the Programs and Standard Branch in the FEMA Preparedness Directorate position at all times that Plaintiff held this position. Defendant claims that this Request is "vague and ambiguous." Defendant should therefore identify just what in this Request it does not understand. This is a position that Plaintiff claims is similar to positions for which Plaintiff applied and was rejected. The relevance is obvious, as is the nature of the Request. 26 Not answer the question.

**Documents, Emails, Interview Notes, and Communications Pertaining to the Selections**
In Request Nos. 20 and 21, Plaintiff has sought all documents, emails, and/or communications pertaining to the competition for job GS- 0301-14 and GS-0301-14/15. While the materials provided are a step in the right direction, Defendant has provided no interview notes, email notes, memoranda, or anything else that might shed any light on the actual selection process.

**Al Fluman's Personnel File**
In Request No. 24, Plaintiff has sought Al Fluman's personnel file. Mr. Fluman is the chief official charged with discrimination. As such, his personnel file is relevant to this action.

**Documents, Emails, and/or Communications Pertaining to Gil Jamison**

In Request Nos. 29, 30, and 31, Plaintiff has requested documents pertaining to Gil Jamison, who was aware of the selections and selection processes at issue. The basis of Defendant's general insistence that such documents are not relevant is therefore unclear.

**Documents Pertaining to Selections of James Mullikin and Tracy Haynes and Non-Selection of Plaintiff**

In Request Nos. 38-42, Plaintiff seeks further documents pertaining to the non-selection of Plaintiff and pertaining to reasons for not interviewing Plaintiff. Although Defendant has provided some documents pertaining to the positions and the selections, Defendant ha provided no emails or communications pertaining to the bases for the selections of Mullikin and Haynes and the non-selection of Plaintiff.

As always, we are available to discuss any of these issues with you. However, we are anxious to move forward with discovery, and we hope that it will not be necessary to file a motion to compel.

Very truly yours,

James L. Fuchs

# Exhibit 5

## S&A  LAW OFFICES OF SNIDER & ASSOCIATES, LLC

May 27, 2008

**By Facsimile and U.S. Mail**

Claire Whitaker, Esq.
Assistant United States Attorney
United States Attorneys' Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, DC  20530

      Re:   *Smith v. Paulison*, Civil Action No. 07-1045 (RMU)

Dear Ms. Whitaker:

As you are aware, I wrote to you on May 19, 2008, in which I noted significant deficiencies in The Federal Emergency Management Agency's Response to Plaintiff's Interrogatories and FEMA's Response to Plaintiff's Request for Production of Documents.  I also, in a separate letter, on May 19, 2008, requested authority for your proposition that our request for Gil Jamison's last known address somehow violates the Privacy Act.

To date, we have received nothing in writing, or even in our telephone conversations, in which we have, admittedly, discussed another case, you have failed to address these issues.

I request full and sufficient responses by 4:00 p.m. on June 3, 2008.  Otherwise, we will have no choice but to file a motion to compel.

      Very truly yours,

      James L. Fuchs

Exhibit 6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN TOM SMITH,             )
310 Ellsworth Drive           )
Silver Spring MD 20910     )

     Plaintiff,          )     **Civil Action No.** 07-1045 (RMU)

v.                 )     **JURY TRIAL DEMANDED**

J. DAVID PAULISON, ADMINISTRATOR, )
FEDERAL EMERGENCY MANAGEMENT )
AGENCY,              )
500 C Street SW          )
Washington, DC 20472      )

     Defendant.        )

## PLAINTIFF'S FOURTH REQUEST FOR PRODUCTION OF DOCUMENTS

The Plaintiff, through his undersigned counsel from Snider & Associates, LLC, requests that the Agency respond to the following request for production of documents, or make such documents available for inspection by the Complainant's counsel. You are required to respond to this request no later than thirty (30) calendar days after receipt of this Request for the Production of Documents. Your response(s) and the documents are to be sent to the undersigned at Snider & Associates, LLC, 100 Church Lane Suite 100, Baltimore, Maryland 21208.

## DEFINITIONS

A.    "Complainant" means John Tom Smith.

1

B.    "Agency," "you," "your," or "yourself," means the FEDERAL EMERGENCY
MANAGEMENT AGENCY ("FEMA"), the named Agency in this case, and any and all of
its supervisors, managers, agents, representatives, employees, servants, consultants,
contractors, subcontractors, investigators, attorneys, and any other persons or entities
acting or purporting to act on behalf of the agency.

C.    "Person", "persons," "people", and "individual" means any natural person,
together with all federal, state, county, municipal and other government units, agencies
or public bodies, as well as firms, companies, corporations, partnerships,
proprietorships, joint ventures, organizations, groups of natural persons or other
associations or entities separately identifiable whether or not such associations or
entities have a separate legal existence in their own right.

D.    "Document," "documents," and "writing" means all records, papers, and books,
transcriptions, pictures, drawings or diagrams or every nature, whether transcribed by
hand or by some mechanical, electronic, photographic or other means, as well as sound
reproductions of oral statements or conversations by whatever means made, whether in
your actual or constructive possession or under your control or not, relating to or
pertaining to or in any way to the subject matters in connection which it is used and
includes originals, all file copies, all other copies, no matter how prepared and all drafts
prepared in connection with such writing, whether used or not, including by way of
illustration and not by way of limitation, the following; books; records; reports; contracts;
agreements; expense accounts; canceled checks; catalogues; price lists; video, audio
and other electronic recordings; memoranda (including written memoranda of telephone
conversations, other conversations, discussions, agreements, acts and activities);

minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; correspondence; drafts; bulletins; electronic mail; facsimiles; circulars; forms; pamphlets; notice; statements; journals; postcards; letters; telegrams; publications; inter- and intra- office communications; photostats; photographs; microfilm; maps; drawings; diagrams; sketches; analyses; electromagnetic records; transcripts; and any other documents within defendant's possession, custody or control from which information can be obtained or translated, if necessary, by detection devices into reasonably usable form, i.e. typed in English prose.

E.    "Communication" or "communications" means any and all inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondence, notes telegrams, facsimiles, electronic mail, memoranda, or other forms of communications, including, but not limited to, both oral and written communications.

F.    "Produce" and "provide" mean to provide either a legible true copy of the original or any document and/or communication.

G.    "Relate to," "relating to," "concerning," "pertain," and "pertaining to," mean consisting of, referring to, reflecting or arising out of, evidencing or in any way legally, logically, or factually connected with the matter discussed, directly or indirectly.

H.    "Explain in detail" refers to any response to these Interrogatories that you may give which will serve to reasonably explain any relevant, genuine, and material factual issues or your understanding of any such evidence in this case, and that will also resolve any need for any further inquiry or determination into the requested factual issue or subject matter inquired about or requested by the Complainant. Your responses

should serve to prevent redundant, immaterial, or otherwise irrelevant facts or evidence in this case to be considered as a matter of law.

I.    "Identify," "identifying," and "identification" when used in reference to an Interrogatory means to specify or indicate any person, employee, or individual directly related to or otherwise responsive to the Interrogatory request. When used in reference to any writing or document, it means to give a sufficient characterization of such writing or document to properly identify it in a request to produce and shall include, without limitation, the following information with respect to each such document:

1.    The date appearing on such document, and if it has no date, the answer shall so state and shall give the date or approximate date such document was prepared;

2.    The identity or descriptive code number, file number, title or label of such document;

3.    The general nature and description of such document, and if it was not signed, the answer shall so state and shall give the name of the person or persons who prepared it;

4.    The names of the person(s) to whom such document was addressed and the name of each person other than such addressee to whom such document or copies of it, were given or sent;

5.    The name(s) of the person(s) having present possession, custody, or control of such document(s); and

6.    Whether or not any draft, copy or reproduction of such document contains any postscripts, notations, changes or addendum not appearing on the

document itself, and if so, the answer shall give the description of each

such draft, copy or reproduction.

1.      All KSAs of all applicants with respect to the GS-0301-14 position under Announcement RB-06-221-AJS.

2.      All KSAs of all applicants with respect the GS-0301-15 position under Announcement RB-06-228-AJS.

3.      All HR writings pertaining to all applicants with respect to the GS-0301-14 position under Announcement RB-06-221-AJS.

4.      All HR writings pertaining to all applicants with respect the GS-0301-15 position under Announcement RB-06-228-AJS.

5.      All interview notes pertaining to all applicants with respect to the GS-0301-14 position under Announcement RB-06-221-AJS.

6.      All interview notes pertaining to all applicants with respect the GS-0301-15 position under Announcement RB-06-228-AJS.

Respectfully Submitted,

_____/s/_____

Michael J. Snider, Esq.
Ari Taragin, Esq.
James L. Fuchs, Esq.
Allan Feldman, Esq.
Law Offices of Snider & Associates, LLC
104 Church Lane Suite 100
Baltimore, Maryland 21208
410-653-9060 Phone
410-653-9061 Fax

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2008, a copy of the foregoing Fourth  Request for the Production of Documents was served by facsimile on May 18, 2008, and by U.S. Mail, on May 29, 2008, upon

Claire Whitaker, D.C. Bar # 35453
Assistant United States Attorney
Special Ass't. United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-5134
Facsimile (202) 514-8780
*Attorneys for Defendant*


Date:  May 29, 2008

                                _____/s/_____
                                James L. Fuchs, Esq.
                                Law Offices of Snider & Associates, LLC
                                104 Church Lane Suite 100
                                Baltimore, Maryland 21208
                                410-653-9060 Phone
                                410-653-9061 Fax
                                jfuchs@sniderlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOHN TOM SMITH,<br>310 Ellsworth Drive<br>Silver Spring MD 20910 | ) ) ) ) ) | |
| Plaintiff, | ) ) | **Civil Action No.** 07-1045 (RMU) |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| J. DAVID PAULISON, ADMINISTRATOR,<br>FEDERAL EMERGENCY MANAGEMENT<br>AGENCY,<br>500 C Street SW<br>Washington, DC 20472 | ) ) ) ) ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFF'S FOURTH REQUEST FOR PRODUCTION OF DOCUMENTS

The Plaintiff, through his undersigned counsel from Snider & Associates, LLC, requests that the Agency respond to the following request for production of documents, or make such documents available for inspection by the Complainant's counsel. You are required to respond to this request no later than thirty (30) calendar days after receipt of this Request for the Production of Documents. Your response(s) and the documents are to be sent to the undersigned at Snider & Associates, LLC, 100 Church Lane Suite 100, Baltimore, Maryland 21208.

## DEFINITIONS

A.      "Complainant" means John Tom Smith.

B.      "Agency," "you," "your," or "yourself," means the FEDERAL EMERGENCY

MANAGEMENT AGENCY ("FEMA"), the named Agency in this case, and any and all of

its supervisors, managers, agents, representatives, employees, servants, consultants,

contractors, subcontractors, investigators, attorneys, and any other persons or entities

acting or purporting to act on behalf of the agency.

C.      "Person", "persons," "people", and "individual" means any natural person,

together with all federal, state, county, municipal and other government units, agencies

or public bodies, as well as firms, companies, corporations, partnerships,

proprietorships, joint ventures, organizations, groups of natural persons or other

associations or entities separately identifiable whether or not such associations or

entities have a separate legal existence in their own right.

D.      "Document," "documents," and "writing" means all records, papers, and books,

transcriptions, pictures, drawings or diagrams or every nature, whether transcribed by

hand or by some mechanical, electronic, photographic or other means, as well as sound

reproductions of oral statements or conversations by whatever means made, whether in

your actual or constructive possession or under your control or not, relating to or

pertaining to or in any way to the subject matters in connection which it is used and

includes originals, all file copies, all other copies, no matter how prepared and all drafts

prepared in connection with such writing, whether used or not, including by way of

illustration and not by way of limitation, the following; books; records; reports; contracts;

agreements; expense accounts; canceled checks; catalogues; price lists; video, audio

and other electronic recordings; memoranda (including written memoranda of telephone

conversations, other conversations, discussions, agreements, acts and activities);

minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; correspondence; drafts; bulletins; electronic mail; facsimiles; circulars; forms; pamphlets; notice; statements; journals; postcards; letters; telegrams; publications; inter- and intra- office communications; photostats; photographs; microfilm; maps; drawings; diagrams; sketches; analyses; electromagnetic records; transcripts; and any other documents within defendant's possession, custody or control from which information can be obtained or translated, if necessary, by detection devices into reasonably usable form, i.e. typed in English prose.

E.    "Communication" or "communications" means any and all inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondence, notes telegrams, facsimiles, electronic mail, memoranda, or other forms of communications, including, but not limited to, both oral and written communications.

F.    "Produce" and "provide" mean to provide either a legible true copy of the original or any document and/or communication.

G.    "Relate to," "relating to," "concerning," "pertain," and "pertaining to," mean consisting of, referring to, reflecting or arising out of, evidencing or in any way legally, logically, or factually connected with the matter discussed, directly or indirectly.

H.    "Explain in detail" refers to any response to these Interrogatories that you may give which will serve to reasonably explain any relevant, genuine, and material factual issues or your understanding of any such evidence in this case, and that will also resolve any need for any further inquiry or determination into the requested factual issue or subject matter inquired about or requested by the Complainant. Your responses

should serve to prevent redundant, immaterial, or otherwise irrelevant facts or evidence in this case to be considered as a matter of law.

I.      "Identify," "identifying," and "identification" when used in reference to an Interrogatory means to specify or indicate any person, employee, or individual directly related to or otherwise responsive to the Interrogatory request. When used in reference to any writing or document, it means to give a sufficient characterization of such writing or document to properly identify it in a request to produce and shall include, without limitation, the following information with respect to each such document:

1.      The date appearing on such document, and if it has no date, the answer shall so state and shall give the date or approximate date such document was prepared;

2.      The identity or descriptive code number, file number, title or label of such document;

3.      The general nature and description of such document, and if it was not signed, the answer shall so state and shall give the name of the person or persons who prepared it;

4.      The names of the person(s) to whom such document was addressed and the name of each person other than such addressee to whom such document or copies of it, were given or sent;

5.      The name(s) of the person(s) having present possession, custody, or control of such document(s); and

6.      Whether or not any draft, copy or reproduction of such document contains any postscripts, notations, changes or addendum not appearing on the

4

document itself, and if so, the answer shall give the description of each

such draft, copy or reproduction.

1.      All KSAs of all applicants with respect to the GS-0301-14 position under
        Announcement RB-06-221-AJS.

2.      All KSAs of all applicants with respect the GS-0301-15 position under
        Announcement RB-06-228-AJS.

3.      All HR writings pertaining to all applicants with respect to the GS-0301-14
        position under Announcement RB-06-221-AJS.

4.      All HR writings pertaining to all applicants with respect the GS-0301-15
        position under Announcement RB-06-228-AJS.

5.      All interview notes pertaining to all applicants with respect to the GS-0301-
        14 position under Announcement RB-06-221-AJS.

6.      All interview notes pertaining to all applicants with respect the GS-0301-15
        position under Announcement RB-06-228-AJS.

                                        Respectfully Submitted,


                                        _____/s/_____
                                                                          _
                                        Michael J. Snider, Esq.
                                        Ari Taragin, Esq.
                                        James L. Fuchs, Esq.
                                        Allan Feldman, Esq.
                                        Law Offices of Snider & Associates, LLC
                                        104 Church Lane Suite 100
                                        Baltimore, Maryland 21208
                                        410-653-9060 Phone
                                        410-653-9061 Fax

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2008, a copy of the foregoing Fourth  Request for the Production of Documents was served by facsimile on May 18, 2008, and by U.S. Mail, on May 29, 2008, upon

Claire Whitaker, D.C. Bar # 35453
Assistant United States Attorney
Special Ass't. United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-5134
Facsimile (202) 514-8780
*Attorneys for Defendant*


Date:  May 29, 2008

          _____/s/_____
          James L. Fuchs, Esq.
          Law Offices of Snider & Associates, LLC
          104 Church Lane Suite 100
          Baltimore, Maryland 21208
          410-653-9060 Phone
          410-653-9061 Fax
          jfuchs@sniderlaw.com

**Exhibit 7**



June 3, 2008

**By Facsimile, Email, and U.S. Mail**

Claire Whitaker, Esq.
Assistant United States Attorney
United States Attorneys' Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, DC 20530

      Re:   *Smith v. Paulison*, Civil Action No. 07-1045 (RMU)

Dear Ms. Whitaker:

Thank you for telephoning me today, along with your Agency attorney, in order to work together to resolve our discovery disputes. I am writing to memorialize the conversation and to prepare for the phone conference that we have set for June 19, 2008, at 10:00 a.m.

We have agreed that Defendant will attempt to produce all KSAs and HR writings, including ratings, for the GS-0-301-14 and GS-0501/14/15 positions for which James Mullikin and Tracy Haynes, respectively, were selected. If Defendant has no further documents, Defendant will make a representation to that effect. Defendant will also endeavor to produce documents pertaining to Plaintiff's position as Acting Chief of the Programs and Standards Branch in the FEMA Preparedness Directorate Position. If Defendant has no documents, other than a PD—which, Defendant has represented, may be outdated—Defendant will make a representation to that effect. Finally, Defendant will produce emails written by or to Mr. Fluman concerning the Plaintiff during the period of the Complaint. If Defendant has no such emails, Defendant will so represent.

With respect to Defendant's representations, Plaintiff will need to know (1) whether documents that Defendant claims no longer exist, ever existed; and (2) the circumstances under which, and reasons for which, and (3) when they were destroyed.

Defendant has also represented that Defendant considers some of Plaintiff's discovery responses insufficient. Defendant will inform Plaintiff concerning those responses that Defendant considers insufficient by email, and Plaintiff will respond.

On June 19, 2008, the parties will attempt to address the responses to Interrogatories that, thus far, Plaintiff considers insufficient.

Plaintiff will also address the issue of Mr. Jamison's last known address under separate cover.

If this letter does not convey Defendant's understanding of our conversation, please notify me at once.

Very truly yours,

James L. Fuchs

# Exhibit 8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN TOM SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | **Civil Action No.** 07-1045 (RMU) |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| J. DAVID PAULISON, ADMINISTRATOR, | ) | |
| FEDERAL EMERGENCY MANAGEMENT | ) | |
| AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT THE FEDERAL EMERGENCY MANAGEMENT AGENCY'S
SUPPLEMENTAL RESPONSE TO PLAINTIFF'S DISCOVERY**

SUPPLEMENTAL RESPONSE TO PLAINTIFF'S INTERROGATORIES

Defendant the Federal Emergency Management Agency ("FEMA"), by and through

undersigned counsel, propounds its Supplemental Response to Plaintiff's Interrogatories, subject

to the same objections previously made, as follows:

7.  List Complainant's work duties since from February 1, 2003, through February 1, 2006. Identify and explain in detail the criteria used for assigning the Complainant any of his work duties since between February 1, 2003 and May 1, 2006.

Response:  See ROI at F and F 4 pages 5-9. Answering further in supplemental response,

Defendant states that Plaintiff's duties consisted of overseeing funding to the regions from the

Comprehensive Environmental Response, Compensation, and Liability Act program

("CERCLA") at FEMA. In that capacity, Plaintiff attended conferences and participated in

conference calls with regional employees, submitted justification to the Environmental

Protection Agency for FEMA's continued  receipt of CERCLA funds and coordinated with the

EPA to facilitate the development of an interagency agreement between the EPA and FEMA. Plaintiff also attended meetings on behalf of FEMA's former Federal Response Plan. During Plaintiff's detail and temporary promotion, he served as Branch Chief in the Program & System Development Branch where his duties consisted of overseeing the Communication and Family Preparedness Program, the Hazardous Materials Program, coordinating with the National Response team and coordinating with the Emergency Support Function Leadership Group of the Federal Response Plan.

8. Identify all individuals who recommended that Plaintiff be promoted, on September 19, 2004, to the position of Acting Chief of the Programs and Standard Branch in the FEMA Preparedness Directorate; and identify all bases for that decision. Please identify all documents, emails, and/or communications pertaining to said promotion of Plaintiff on September 19, 2004; and pertaining to the bases of said Promotion, including any documents, emails, and/or communications pertaining to any recommendations against Plaintiff's promotion.

Response: FEMA objects to Interrogatory No. 8 on the basis that it mischaracterizes facts in the records because a temporary detail to an acting position is not a promotion. Subject to and without waiving this objection, David Garratt recommended Plaintiff for the position of Acting Chief of the Programs and Standards Branch in the FEMA Preparedness Directorate. Answering further in supplemental response, the bases of the decision to recommend Plaintiff for the detail to Acting Chief of the Programs and Standards Branch in the FEMA Preparedness Directorate was that Gil Jamieson the Branch Chief was on a detail to the position of Acting NIC Director and Mr. Garratt determined that the impact of not filling the position of Acting Chief of the Programs and Standards Branch would result in an over-extended span of control as well as a lack of authoritative day-to-day-management. See ROI at F 4 pages 5-9; see also e-mail from Plaintiff to David Garratt contained in Ex. 1 of FEMA's response to Plaintiff's discovery.

9.  Identify all of Plaintiff's work duties as Acting Branch Chief of the Programs and
    Standards Branch in the FEMA Preparedness Directorate.

Response:  See ROI F4 page 7 which indicates that Plaintiff oversaw the Community and Family

Preparedness Program and the Horrendous Materials Program, coordinated with the National

Response Team, and provided coordination for the Emergency Support Function Leadership

Group of the Federal Response Plan.  Answering further in supplemental response, see

supplemental response to Interrogatory No. 7.

10.  Identify all reasons that Plaintiff's temporary promotion, as Acting Branch Chief of the
     Programs and Standards Branch in the FEMA Preparedness Directorate, expired.
     Identify all documents, emails, and/or communications pertaining to the expiration of
     Plaintiff's temporary promotion as Acting Branch Chief of the Programs and Standard
     Branch in the FEMA Preparedness Directorate.

Response:  FEMA objects to Interrogatory No. 10 on the basis that it mischaracterizes facts in

the record because Plaintiff's detail to an acting position was not a promotion and the position

did not expire.  It was a temporary not to exceed 120 days position.  Subject to and without

waiving these objections, see ROI F4 at pages 4-9.  Plaintiff's detail to the position of Acting

Branch Chief of the Programs and Standard Branch position in FEMA's Preparedness

Directorate was for a period not to exceed 120 days. The detail began on September 19, 2004,

and was scheduled to expire on January 9, 2005.  However, Plaintiff continued to receive wages

at the GS-15 level after his detail had expired because a SF-52 (Change to Lower Grade form)

was not submitted to the Human Resources Division on time.  As a result, Plaintiff was paid

wages at the GS 15 level for a longer period than the scheduled 120 day detail.  See Ex. 2

attached to FEMA's Response to Plaintiff's Requests to Produce.  Answering further in

supplemental response, see Exs. 1 and 3.

3

11.     Identify the reasons that, although Plaintiff's temporary position expired, Plaintiff was rated against supervisory performance standards, as admitted in Items 23-24 of Defendant's Answer.

Response: Plaintiff continued to work in the position of Acting Branch Chief on a voluntary

basis after his temporary appointment had expired, as did Mr. Fluman who served as the Acting

Director of the NIMS Integration Center for 26 months without receiving any additional

compensation. The Branch Chief position is rated at the GS 14 and the GS 15 levels. Plaintiff

was rated at the GS 14 levels while he was voluntarily acting in the Branch Chief position.

Answering further, see Ex. 4 of FEMA's response to Plaintiff's discovery which provides for the

hiring of a Branch Chief at the GS 14 and/or GS 15 levels.

12.     Identify all documents pertaining to Defendant's admission that, despite the expiration of Plaintiff's temporary position, Plaintiff continued to perform successfully the supervisory activities of the GS-15 position, as demonstrated by his performance appraisals, as admitted in items 23-24 of Defendant's answer.

Response: See ROI at F4 page 10. Answering further and in supplemental response , see the

January 31, 2005, e-mail contained under Ex. 2 of FEMA's response to Plaintiff's discovery

indicating that Plaintiff's temporary detail/promotion had expired on January 9, 2005, and

Plaintiff was being overpaid. After Plaintiff's detail had expired and he was no longer being

paid at the GS 14 level, Plaintiff was not required to perform supervisory duties.

14.     Identify all individuals who decided Plaintiff's work assignments from January, 42005, though June, 2006, as well as the bases for said assignments, the compensation for said assignments, and the bases for said compensation. Please identify all pertinent documents, emails, and/or communications.

Response: FEMA objects to Interrogatory No. 14 to the extent that it seeks information that is

neither relevant, nor likely to lead to the discovery of admissible evidence. Subject to and

without waiving this objection, see responses to Interrogatory Nos. 8 – 10. Plaintiff was

supervised by Gilbert Jamison, Kyle Blackman, Albert Fluman and Carol Cameron for the

relevant time periods. However, Plaintiff continued to work on Comprehensive Environmental

Response, Compensation, and Liability Act ("CERCLA") and Hazardous Materials matters

while he was under Mr. Fluman's supervision and Mr. Fluman did not give Plaintiff additional

work assignments. Plaintiff was detailed to the position of Acting Branch Chief of the Programs

and Standard Branch position in FEMA's Preparedness Directorate for a period not to exceed

120 days by David Garratt. The detail began on September 19, 2004, and was scheduled to

expire on January 9, 2005. However, Plaintiff continued to receive wages at the GS-15 level

after his detail had expired because a SF-52 (Change to Lower Grade form) was not submitted to

the Human Resources Division on time. As a result, Plaintiff was paid wages at the GS 15 level

for a longer period than the scheduled 120 day detail. See Ex. 2 attached to FEMA's Response to

Plaintiff's Requests to for Production of Documents. Answering further and in supplemental

response, see supplemental response to Interrogatory No. 7 setting forth the basis for Plaintiff's

temporary detail to Acting Branch Chief at the GS 15 rate or pay. At all other times, Plaintiff

worked at and received pay at the GS 14 level.

    15.      Identify all reasons that, from January, 2005, through March, 2006, on Plaintiff's
               appraisals, the number 15 was crossed out and replaced by a hand-written number
               14, including all reasons that a 14 form was not used.

Response: FEMA objects to Interrogatory No. 15 on the basis that it seeks information that is

neither relevant nor likely to lead to the discovery of admissible evidence and is confusing and

vague since there are not separate GS 15 and GS 14 appraisal forms. Subject to and without

waiving these objections, on information and belief, a FEMA Human Resource person crossed

out the number 15 and replaced it with a handwritten 14 and then forwarded the document to Mr.

Fluman so he could complete Plaintiff's performance evaluation. Mr. Fluman then used the form

that had been sent to him by FEMA's Human Resource department to evaluate Plaintiff's

5

performance. Answering further and in supplemental response, the number 15 was crossed out

and replaced with a handwritten 14 because Plaintiff was returned to a GS-14 level position after

his 120 day temporary detail ended.

21. Identify all reasons for the selection of James Mullikin over Plaintiff for the position of Supervisory Program Specialist, GS-0301-14, under Announcement RB-06-221-AJS, including information pertaining to Mullikin's and Plaintiff's prior supervisory experience, systems experience, experience in complex managerial and supervisory work. Identify all supporting documents, emails, and/or communications, including interview notes and interview questions.

Response: Mr. Mullikin was selected for the Supervisory Program Specialist position because

he possessed the technical expertise to perform the duties of the position relative to grants and

training and compliance and Plaintiff did not have such experience and expertise. Answering

further and in supplemental response, Mr. Mullikin had expertise in grants, training and

compliance which Plaintiff did not have and Mr. Fluman was looking for such specialized

experience to fill the position of Supervisory Program Specialist, GS-0301-14, under

Announcement RB-06-221-AJ. See also, Ex. 6 attached to FEMA's response to Plaintiff's

discovery.

24. Identify all reasons for the selection of Tracey Haynes over Plaintiff for the position of Supervisory Program Specialist, GS-0301-14/15, under Announcement RB-06-228-AJS, including information pertaining to Haynes' and Plaintiff's supervisory experience, Haynes' and Plaintiff's metrics experience, Haynes' and Plaintiff's experience at the Agency, Haynes' and Plaintiff's experience in complex managerial and supervisory work, and Haynes' status, at the time of his selection, as an Agency employee. Identify all supporting documents, emails, and/or communications, including interview notes and interview questions.

Response: Mr. Fluman selected Mr. Haynes for the Supervisory Program Specialist, GS-0301-

14/15, under Announcement RB-06-228-AJS because Mr. Haynes was better qualified because

he has had broad based experience with FEMA and an extensive background in recovery

operations acquired while he was working in long term recovery operation during Hurricane

Katrina. In addition, Mr. Haynes was qualified to perform the technical duties which were

required in NIMS following a reorganization which transferred many of FEMA's preparedness

functions to DHS  and created an increased focus on the scientific and technical responsibilities

in NIMS.  See also, Ex. 7 attached to FEMA's response to plaintiff's discovery and FEMA's Ex.

1 attached to FEMA's supplemental response to plaintiff's discovery.

> 25.    Identify all bases for which Plaintiff was not interviewed and/or selected for the
>        position of Supervisory Program Specialist, GS-0301-14/15, under
>        Announcement RB-06-228-AJS.   Identify all backup data including documents,
>        emails, and/or communications, to corroborate.

Response:  See response to Interrogatory No. 24 and Exs. 6 and 7 attached to FEMA's response

to plaintiff's discovery. Answering further and in supplemental response, see response to Ex. 1

attached to FEMA's supplemental response to plaintiff's discovery. Mr. Fluman did not

interview plaintiff for the Supervisory Program Specialist Position, GS-0301-14/15, because he

believed that Mr. Haynes was more qualified for the position for the reasons described more

fully in response to FEMA's supplemental response to Interrogatory No. 24.  Further, Plaintiff

was not interviewed for the position because Mr. Fluman knew plaintiff did not possess the

technical and scientific skills that he was looking for to fill the position while Mr. Haynes had

those skills.

> 26.    Identify all bases for which Defendant denies that the GS-0301-14 position
>        advertised under announcement RB-06-221 AJS had the same job description and
>        duties as those of the position that Plaintiff had been fulfilling as Acting Branch
>        Chief for over a year-and-a-half.  Identify all supporting documents, emails,
>        and/or communications to corroborate, including the job description for the GS-
>        0301-14 position advertised under announcement RB-06-221-AJS as well as the
>        position description for the position that Plaintiff had been holding for over a
>        year-and-a-half.

Response:  See response to Interrogatory Nos. 21-24. Answering further and in supplemental

response, as previously stated in response to Interrogatory Nos. 21-24, following a

reorganization in NIMS many of FEMA's preparedness functions were transferred to DHS and

greater emphasis was placed on grants compliance, and scientific and technical expertise for the

Branch Chief position. Plaintiff's duties as Acting Branch Chief focused primarily on

preparedness and those duties were transferred to DHS before the promotions of Mullikin and

Haynes.

> 27.    Identify in detail all the bases on which Defendant denies that Millikan and
> Haynes were   unable to perform all facets of the supervisory position at the GS-
> 15 level, as denied in Items 51-54 of Defendant's Answer.

Response: FEMA objects to Interrogatory No. 27 on the grounds that it is vague and ambiguous.

Subject to and without waiving these objections, Mr. Mullikin and Mr. Haynes both had prior

supervisory experience and were able to perform all facets of their positions. Answering further

and in supplemental response, FEMA also objects to Interrogatory No. 27 because it

mischaracterizes FEMA's answer to Paragraphs Nos. 51-52 which do not relate, refer or concern

whether or not Mr. Mullikin and Mr. Haynes were able to perform the supervisory functions of

their positions. Subject to and without waiving this objection, Mr. Mullikin and Mr. Haynes

performed their respective supervisory duties satisfactorily and at a level that met Mr. Fluman's

expectations.

> 28.    Identify all persons who were employed with Defendant during Plaintiff's
> employment, including but not limited to the name, address, telephone number,
> job title, division, and current employment status of each.

Response: FEMA objects to Interrogatory No. 28 on the grounds that it is overly broad, unduly

burdensome and calls for information that is neither relevant nor reasonably calculated to lead to

the discovery of admissible evidence. Subject to and without waiving these objections, during

the time period giving rise to the allegations set forth in Plaintiff's complaint, Plaintiff's co-

workers or supervisors in the office included Gilbert Jameson- the Director of Preparedness-Gulf

Coast Recovery Director (not currently employed by FEMA); Stanley Wentz (retired); Shep

Willner (Program Specialist ), Mr. Fluman, Carol Cameron (the Director of International

Affairs), Kyle Blackman, Robinson Stevens, Michelle McQueeney (the Chief of Staff for the

Gulf Coast Recovery Office), David Larimer (Acting Branch Chief for Science and

Technology); Tracey Haynes, James Mullikin and Ralph Swisher (an 80-year-old male who still

works for FEMA in community preparedness). Answering further and in supplemental response,

FEMA objects to providing the addresses of the individuals identified in response to

Interrogatory No. 28 on the grounds that such disclosure would violate the Privacy Act. Subject

to and without waiving this objection, Kyle Blackman, Tracey Haynes and James Mullikin are

still employed by FEMA in the position of Branch Chief; Ralph Swisher, a Policy Specialist and

Carol Cameron are also still employed by FEMA, as is David Larimer. Albert Fluman is

employed by FEMA in the position of Supervisory Exercise Training Specialist. Robinson

Stevens is no longer employed by FEMA.

      29.    Identify all persons employed by Defendant who have made complaints and/or
             allegations regarding age discrimination by Defendant during the last ten years.

Response: FEMA objects to Interrogatory No. 29 on the grounds that it is overly broad, unduly

burdensome and seeks information that protected by the Privacy Act and is not relevant or likely

to lead to the discovery of admissible evidence. Subject to and without waiving this objection, no

age discrimination complaints have been filed against Mr. Fluman.

                  As to Objections:

                  JEFFREY A. TAYLOR , D.C. Bar # 498610
                  United States Attorney

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the foregoing is true

and correct. Executed on this **23rd** day of June, 2008.

_____

Albert Fluman

**FEMA'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S
REQUEST FOR PRODUCTION OF DOCUMENTS**

9.    All documents, emails, and/or communications pertaining to any and all investigations or complaints relating to Al Fluman.

Response:  FEMA objects to Document Request No. 9 on the grounds that it is overly broad,

unduly burdensome and seeks information which is not relevant or likely to lead to the discovery

of admissible evidence. Answering further and in supplemental response, subject to and without

waiving these objections, there are no documents which pertain to an investigation or complaints

relating to Al Fluman which allege discrimination other than the documents contained in

Plaintiff's Report of Investigation ("ROI").

20.    All documents, emails, and/or communications pertaining to the competition for job GS-0301-14 identified in job announcement RB-06-221-AJS, and selection of Mullikin, including interview notes, questions, etc.

Response:  See ROI and Ex. 4.

21.    All documents, emails, and/or communications pertaining to the competition for job GS-0301-14/15 identified in job announcement RB-06-228-AJS and selection of Tracy Haynes, including interview notes, questions, etc.

Response:  See ROI and Ex. 5. Answering further and in supplemental response, see attached

Knowledge, Skills and Abilities for Tracey Haynes.

JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney

11

Tracy Haynes: ▬▬▬▬▬▬

Position/Series/Grade: Supervisory Program Specialist, GS-0301-14/15

Announcement:        RB-06-228-AJS

---

**KSA #1: Demonstrated ability to develop a national system of metrics, guidelines, protocols, and standards to support the National Incident Management System.**

In 1999, I was responsible for the establishment of a Resource Management Committee (RMC) whose sole purpose was to develop and implement a National system of NPSC metrics, guidelines, protocols and standards designed to measure the performance and production of approximately 1,200 employees providing aid to disaster applicants. Prior to this virtual integration, each NPSC administered their programs independently and no common measurement standard was available. Standardization enabled management to measure individual and NPSC-wide production and performance daily and make staffing adjustments based on workload requirements.

The measurement tools and business rules in the National Emergency Management System (NEMIS), where the information's collected, enable the RMC to segregate cases based on complexity and identify the time required to complete type of case based on a standardized set of criteria. A standardized training curriculum and credentialing program was developed to improve employee performance.

In addition, daily reports, developed by the RMC, enable management to reallocate staff based on workload requirements and identify critical areas requiring support. This NPSC-wide measurement system has expedited aid to applicants and ensured that resources are used more effectively.

As the Operations Officer at the MD-NPSC, on of my primary duties and assigned "Areas of Expertise" was oversight of the RMC to ensure that applicants receive assistance in a timely manner. Much of my work was accomplished through delegation. The RMC is currently developing tools which will help management define staffing requirements and determine future NPSC budget requirements based on historical data.

In addition, in 1995, the Recovery Division Director assigned me to a Government Performance and Results Act (GPRA) pilot project entitled, Fiscal Year (FY) 1995 Program Performance, Emergency Management Information Systems. Based upon this experience, and others, I learned that government programs and information systems are intricately linked, and must be managed in an integrated fashion.

I have achieved success by understanding the agencies' mission, program requirements, intergovernmental and non-governmental relationships, business practices, human resource issues and technology requirements, including the need for measurement standards and tools, associated with the delivery of aid to applicants and our customers.

Tracy Haynes:

Position/Series/Grade: Supervisory Program Specialist, GS-0301-14/15

Announcement: RB-06-228-AJS

---

**KSA #2: Demonstrated ability to effectively supervise and manage employees.**

I served as the Deputy Facility Manager and senior on-site Operations Officer at FEMA's disaster support and National Processing Services Center (NPSC) from October 1996 to May 2005 in Hyattsville, Maryland. I was tasked by the Recovery Division Director to bring this 93,000 square foot facility fully on-line by hurricane season 1997 and was the first employee hired.

I was tasked to develop the organizational structure, strategic and operational plans, operational guidance, employee position descriptions (with Human Resource support), staff the facility, train new hires, establish program implementation guidance for employees, develop standards and metrics to assess performance, formulate the budget, implement policy and develop operational and field support capability. On a national level, the NPSC provides assistance to disaster applicants (individuals and families) and supports headquarters, regional offices and Joint Field Office requirements. From October 1996 through September 2005, the MD-NPSC staff provided support to more than 200 Presidentially Declared Disasters and distributed over $1 billion dollars in aid.

As the Operations Officer, I was responsible for the recruitment and training of personnel, new hire orientations, development and implementation of policy, preparation of correspondence to disaster applicants, mail operations, development of quality assurance procedures to measure performance and monitor production, implementation of the first on-line registration intake activity, establishment of on-line processing (determination of applicant eligibility for grants or loans), training of regional personnel on FEMA's National Emergency Management Information System (NEMIS), participation in the development of NEMIS and establishment of an exemplary facility supporting disaster field operations, headquarters and others.

One of my former supervisors at FEMA headquarters, in a written performance evaluation, stated the following as I was bringing the MD-NPSC on-line, "I firmly believe that he (Mr. Haynes) has one of the most difficult assignments in the agency during this performance period." Later, comments by this same supervisor stated that the "MDNPSC is a model and success story for the entire agency." The comments also infer that management was pleased with our evolving disaster response capability. Needless to say, significant planning and work was required to bring the facility on-line. In addition, former Directors Mike Brown, Joe Allbaugh and James Lee Witt each noted the professionalism and esprit de corps at the MD-NPSC during their respective visits and commented on the team spirit and can do attitude.

Tracy Haynes:        

Position/Series/Grade:  Supervisory Program Specialist, GS-0301-14/15

Announcement:        RB-06-228-AJS

---

**KSA #3: Demonstrated ability to analyze organizational and operational problems and develop timely and effective solutions.**

I currently serve as a Special Assistant to the Recovery Division Director and participate in critical policy and operational discussions on a daily basis. To ensure FEMA's prepared for the upcoming hurricane season, I was tasked by senior Recovery management to identify key "Retooling" actions required to improve the Agency's ability to respond to disasters and ensure the timely and efficient delivery of services. Weekly meetings on this Retooling project are currently being held with the Secretary of DHS and are some of the most visible and sensitive issues facing FEMA. The Retooling effort includes revision to several key policy issues linked to registering and housing disaster applicants.

I'm very good at analyzing organizational and operational problems and developing timely and effective solutions.

In September 1999, Hurricane Floyd wrecked havoc on the eastern seaboard of the United States resulting in 10 presidential disaster declarations and a significant response by FEMA. Based upon the anticipated workload, FEMA deployed hundreds of personnel and assigned practically every available employee to either a disaster field office or disaster recovery center to manage on-site activity.

During this period, I was directed by the Recovery Division Director to establish a centralized command and control center at the MD-NPSC on behalf of headquarters to streamline the flow of information between the field and headquarters and ensure standardization and continuity of operations.

I established the Inter-NPSC Coordination Team (NCT) and established a single phone number and web-site address to streamline the receipt and dissemination of information in all the declared areas. The web-site posting of information was so effective that Recovery management adopted its use at all NPSC facilities. The NCT, made up of 15-20 employees, ultimately responded to thousands of phone calls and e-mails via the centralized phone number and web-site.

In addition, the NCT created a database to track operational and programmatic issues, coordinate and clarify policy, ensure the appropriate application of policy, document call traffic, track trends, ensure operational consistency, streamline the flow of information and distribute workload requirements. Our efforts ultimately resulted in expedited aid to thousands of disaster applicants. In addition, there were many precedent-setting

decisions (e.g. lump sum payments, fast track, buy-outs) applicable to the on-going efforts associated with Hurricane Katrina.

Also, due to NEMIS software deficiencies at the time, the NCT monitored system issues, collected information on software deficiencies and worked actively with IT. A few of the critical issues monitored by the NCT were reports, server deficiencies, replication issues, inspection contract problems, manpower deficiencies, user right constraints and mail generation problems. Our efforts ultimately resulted in expedited aid to thousands of disaster applicants.

Based upon the NCT's success, I received a cash award that stated that "his (Mr. Haynes) actions directly contributed to the reduction of human suffering, improved recovery actions and response, increased agency productivity through reducing customer/partner burdens and contributed to a rise in overall customer satisfaction with FEMA services".

Tracy Haynes: ████████
Supervisory Program Specialist: GS-0301-14/15
Vacancy #: RB-06-228-AJS

Tracy Haynes:

Position/Series/Grade:  Supervisory Program Specialist, GS-0301-14/15

Announcement:           RB-06-228-AJS

**KSA #4: Demonstrated ability to facilitate meetings, present and defend concepts in public forums, and represent top management to a variety of groups.**

One of my greatest strengths is an ability to lead others and represent top management to a variety of groups. I've been successful because I've learned to communicate frequently, listen (always), encourage an exchange of ideas and create buy-in through inclusion. Frequent communication, and inclusion, when possible, is key.

I've worked effectively with senior level officials and their staff to elicit cooperation and support and obtain results for the last fifteen years. Eight months after Hurricane Andrew, during a dark period of severe criticism, I was tasked by the Federal Coordinating Officer (FCO) to establish a Federal, State and local government Hurricane Andrew Housing Task Force. I served as the deputy to the task force chair and was deployed in the field four months on this assignment. The initiative was politically sensitive, highly visible, potentially volatile and required close coordination with FEMA's governmental and non-governmental partner's.

The task force, comprised of local government and private sector organizations, was established to identify the long-term housing issues in South Florida and recommend where $1 billion of Federal and State aid should be allocated. Over 180,000 homes were damaged or destroyed and reconstruction was necessary to stimulate the economy and energize the business and agricultural community. I worked with State and local government officials, the private sector, and city and community planners during the reconstruction process. No long-term redevelopment plan existed prior to this effort.

The initial task force report, which I co-authored, entitled "The Hurricane Andrew Housing Task Force, South Dade County Housing: Preliminary Status Report", summarized the pre-Hurricane Andrew housing status (Census Bureau), reported the post-hurricane housing damages (information from FEMA, Dade County Building and Zoning and American Red Cross), and reported the Federal and State aid provided to these areas. This report was the first step in a multi-phase operation designed to provide planners, policy makers and developers with damage assessment information and other data for strategic planning purposes. The report was well received by State and local officials. Frequent meetings were held to gather information, discuss options and incorporate the input of local officials.

I currently serve as a Special Assistant to the Recovery Division Director and am the Recovery Division Liaison to the former Office of Plans and Programs. In my Recovery Division capacity, I participate in senior management meetings and represent Recovery

when required. I'm currently working with DHS and FEMA Acquisition Management officials on Recovery's critical Retooling initiatives and procurement requirements for the upcoming hurricane season. These activities are some of the most pressing issues facing FEMA. I'm also working with the Office of the CFO on Recovery's Over Target Requests for FY 2008-20012, submission of Recovery's Quarterly Performance Measures and Milestones and the Resource Allocation Plan.

Tracy Haynes 

Position/Series/Grade:  Supervisory Program Specialist, GS-0301-14/15

Announcement:          RB-06-228-AJS

---

**KSA #5:  Demonstrated knowledge of budgetary, contractual and financial processes.**

Budgetary, contractual and financial processes are intricately linked.  My demonstrated knowledge, experience and relevant background for these processes are noted below.

**Operations Officer – MD-NPSC**

I served as the Deputy Facility Manager and senior on-site Operations Officer at FEMA's MD-NPSC from October 1996 to May 2005 in Hyattsville, Maryland, and was tasked by the Recovery Division Director to bring this 93,000 square foot facility fully on-line by hurricane season 1997.  As the Operations Officer, and first employee hired, I was responsible for the development of the budget, establishment of on-site contracts (excluding build-out), and development, implementation and oversight of the financial processes at the facility.

In addition, I was tasked to develop the organizational structure, strategic and operational plans, operational guidance, employee position descriptions (with Human Resource support), staff the facility, train new hires, establish program implementation guidance for employees, develop standards and metrics to assess performance, implement policy and develop operational and field support capability.  Each of these actions is directly linked to the annual budget, financial processes and contracts established at the MD-NPSC.

On a national level, the NPSC provides assistance to disaster applicants (individuals and families) and supports headquarters, regional offices and Joint Field Office requirements.  From October 1996 through September 2005, the MD-NPSC staff provided support to more than 200 Presidentially Declared Disasters and distributed over $1 billion dollars in aid.

**Project Officer – Housing Inspection Services Contract**

As Project Officer for the Housing Inspection Services (HIS) Contract from 1994 through 1996, I was responsible for the development and implementation of the entire range of requirements associated with this contract, including the statement of work, development of the budget, establishment of review panels and technical committees, meetings and collaboration with Acquisition Management and Finance, procurement of services and monitoring of the contract.  I was Project Officer during one of the most progressive periods for this contract and was instrumental in leveraging technology to expedite the

delivery of aid to applicants through the implementation of the Automated Construction Estimating (ACE) System.

ACE was designed to improve the speed and quality of disaster assistance to individuals and families by expediting housing inspections. While a central component of ACE was to develop a paperless Housing Inspection Services process and automate decision making for disaster housing awards, the process also reduced costs and personnel requirements. As Project Officer, I was responsible for the development of this system.

By streamlining the business processes and leveraging technology, it was estimated that the agency saved approximately $5 million annually in administrative expenses alone (during average disaster years). In addition, ACE also improved the accuracy of the awards by approximately 20 % and improved the timeliness of assistance by 50 %. In 1995, a senior official at FEMA headquarters stated that the "ACE system is the most substantial and innovative improvement in the Federal Government's service to disaster victims ever accomplished".

Based on my efforts, and others, FEMA received a National level award from the Ford Foundation and the John F. Kennedy School of Government at Harvard University for "Innovations in Government" in 1995. I was involved with ACE from 1993 through 1996 and was deployed on several long-term assignments during the testing and implementation phase, along with other personnel. Today, ACE is still the vehicle through which housing inspection information is transferred to NEMIS for applicant eligibility determinations.

**Special Assistant to the Recovery Division Director/Program Analyst**

I currently serve as a Special Assistant to the Recovery Division Director and Recovery Division Liaison to the Director of Strategic Planning and Evaluation and the Office of the Chief Financial Officer (CFO) and am responsible for some of the following activities: 1) Coordination of Recovery Division's Budget Narrative Justification with the Program Analysis and Evaluation (PA&E) Branch in the Office of the CFO, 2) Coordination with Acquisition Management for some of the key DHS Retooling and Disaster Support Initiatives, 3) Oversight of Recovery's Disaster Closeout activity in coordination with PA&E, 4) Oversight of Recovery's Over Target Requests submission for FY 2008-20012 in coordination with PA&E, 5) Coordination and Submission of Recovery's Quarterly Performance Measures and Milestones, and 6) Development of Recovery's Resource Allocation Plan for FY 2007-2011 in coordination with PA&E.

Each of these activities is also coordinated internally within the Recovery Division.

Tracy Haynes:
Supervisory Program Specialist: GS-0301-14/15
Vacancy #: RB-06-228-AJS

## CERTIFICATE OF SERVICE

I hereby certify that Defendant's supplemental Response to Plaintiff's Discovery were served this 23rd day of June, 2008, on plaintiff, addressed to:

James Fuchs, Esq.
SNIDER & ASSOCIATES, LLC
104 Church Lane, Suite 201
Baltimore, MD 21208

CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

13

# Exhibit 9



U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

June 27, 2008

James Fuchs, Esq.
SNIDER & ASSOCIATES, LLC
104 Church Lane, Suite 201
Baltimore, MD 21208

     Re:    <u>Smith v. Paulsion, C.A. No. 07-1045 (RMU)- Discovery Matters</u>

Dear Mr. Fuchs:

     In response to your letter of June 26, 2008, this is to inform you that Plaintiff should <u>not</u> consider, as you suggest, that Defendant's Responses to Plaintiff's written discovery constitutes an admission that Defendant has no interview notes, rankings, ratings, or other HR documents pertaining to the selections at issue, other than what it has already produced. As you are aware, FEMA continues to search for responsive records and, as you have been previously informed, its Human Resources' department has located some potentially responsive documents in its archives. These documents have been requested and will be delivered to agency counsel for review in between 7 and 10 business days from June 19, 2008 (the date such documents were requested). Accordingly, the documents will be received at the earliest on June 30, 2008. As agency counsel will be on vacation until July 7, 2006, I do not anticipate that I will have the documents in my possession until after that date. I will contact you about the status of the documents during the week of July 7, 2008.

     With regard to Plaintiff's Discovery Responses, per you request, Defendant is formally providing you with the following list of deficiencies that have been noted in Plaintiff's Responses to the Defendant's First Set of Interrogatories and ask that Plaintiff's responses be supplemented on or before July 15, 2008. In addition to the concerns listed below, Plaintiff has failed to provide his verification of the interrogatory responses.

<u>**Deficiencies in Plaintiff's Responses to Interrogatories.**</u>

Interrogatory Response No.1 is deficient because it fails to identify the policy or policies that plaintiff promulgated for the National Incident Management System as requested in Interrogatory No.1.

Interrogatory Response No. 2 is deficient because it fails to give the name, job title, address and telephone number of individuals that "mis-assigned " plaintiff as requested in Interrogatory No.2.

Interrogatory Response No.7 is deficient because it does not state facts to support the claim that the CERCLA program was dissolved as requested in Interrogatory No.7.

Interrogatory Response No. 8 is deficient because plaintiff is asked to provide facts to show that Mullikin had no prior supervisory experience and not his belief as requested in Interrogatory No. 8. If plaintiff has no such facts, plaintiff should state this.

Interrogatory Response No. 10 is deficient because plaintiff is asked to provide facts to show that Haynes had no prior supervisory experience and not his belief as requested in Interrogatory No. 10. If plaintiff has no such facts, plaintiff should state this.

Interrogatory Response No. 11 is deficient because plaintiff did not alleged facts to show that Haynes and Mullikin did not have complex supervisory experience as requested in Interrogatory No. 11. If plaintiff has no such facts, plaintiff should state this.

Interrogatory Response No. 12 is deficient because plaintiff did not alleged **facts** to show that Haynes and Mullikin did not have supervisory experience as requested in Interrogatory No. 12 in Plaintiff's Responses to Interrogatories Nos.8, 10, and 11. If plaintiff has no such facts, plaintiff should state this.

Interrogatory Response No. 13 is deficient because interrogatories Nos.1, 2 and 3 do not address the plaintiffs' metrics experience as requested in Interrogatory No.13.

Interrogatory Response No. 17 is deficient because plaintiff failed to identify the names of the "others" whom he claims discriminated against him as requested in Interrogatory No.17.

Interrogatory Response No. 18 is deficient because plaintiff failed to identify the names of the "others" whom he claims discriminated against him and did not identify the dates of the alleged discrimination as requested in Interrogatory No.18.

Interrogatory Response No. 19 is deficient because plaintiff failed to identify the names of the "others" whom he claims retaliated against him as requested in Interrogatory No.19.

Interrogatory Response No. 20 is deficient because plaintiff failed to identify the names of the "others" whom he claims retaliated against him and did not identify the dates of the alleged discrimination as requested in Interrogatory No.20.

Interrogatory Response No. 21 is deficient because plaintiff failed to state whether he filed a previous EEO complaint, administrative complaint, or lawsuit as requested in Interrogatory No.21

Interrogatory Response No. 24 is deficient because plaintiff failed to identify the substance of the information that persons with knowledge would provide about his case as requested in Interrogatory No.24.

I hope that you will be in contact with me in an effort to resolve these ongoing issues. My telephone number is 202-514-7137.

Sincerely yours,

JAMES A. TAYLOR
United States Attorney

BY:

CLAIRE M. WHITAKER
Assistant U.S. Attorney

3
3

# Exhibit 10



LAW OFFICES OF
S&A SNIDER & ASSOCIATES, LLC

June 30, 2008

**By Facsimile and U.S. Mail**

Claire Whitaker, Esq.
Assistant United States Attorney
United States Attorneys' Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, DC 20530

      Re:   *Smith v. Paulison*, Civil Action No. 07-1045 (RMU)

Dear Ms. Whitaker:

I have your letter of June 27, 2008.

Your position concerning the documents is, of course, incorrect in fact and in law. We should have had those documents—if they exist—in response to our first requests.

Your statement that Mr. Smith had not verified his Responses to Interrogatories and Supplemental Responses to Interrogatories is also incorrect. It would be helpful if you were to review his Responses before commenting upon them.

While I will present Mr. Smith with the Agency's purported "deficiencies" concerning Mr. Smith's Responses, you surely realize that his Responses are far more thorough than anything I have seen from the Agency.

That having been said, I will present your letter to my client for his comments, even though your letter is something less than an exercise in good faith.

Very truly yours,

James L. Fuchs

# Exhibit 11



July 8, 2008

**By Facsimile, Email, and U.S. Mail**

Claire Whitaker, Esq.
Assistant United States Attorney
United States Attorneys' Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, DC 20530

Re:     *Smith v. Paulison*, Civil Action No. 07-1045 (RMU)

Dear Ms. Whitaker:

I am writing to memorialize our conversation today, and, in order to avoid all ambiguity, to elucidate my expectations.

We had tentatively set July 30, 2008, for Mr. Fluman's deposition. We had decided on this date on June 27, 2008, 11 days ago. For reasons that I do not understand, you have represented that Mr. Fluman has not "gotten back" to the Agency's counsel. You had also represented that the Agency's counsel returned from vacation on July 7, 2008. **I will expect that you will have Mr. Fluman's deposition confirmed by Thursday, July 10, 2008.**

We have also agreed that since, according to your representations, Ms. Cameron cannot begin her deposition, initially scheduled for August 1, 2008, until 11:00 a.m., we will, *at your suggestion*, reschedule that deposition for August 4, 2008. I also expect that you will be able to confirm this deposition by July 10, 2008.

We had also tentatively scheduled Robert Stevens' deposition for August 6, 2008. You have yet to confirm that deposition. I expect that you will also inform me about that deposition on July 10, 2008.

We had also scheduled an HR deposition on August 8, 2008. You have yet to confirm the date, and you also are "checking" on whether more than one HR representative will be needed to answer our questions. I trust that you be able to answer these questions, and confirm these depositions, on July 10, 2008.

You had further agreed to check on August 14, 2008, and August 15, 2008, the two dates that you had stated that David Garrett had advised you that he might be available. As I had advised you, I am holding both dates open, notwithstanding a potential conflict involving a hearing in another case, currently scheduled for August 13, 2008. If I will not be available for that case on August 14, 2008, I must know, so that I can advise the Administrative Judge.

You also advised me, in your email dated July 7, 2008, that you had not yet located a former address for Mr. Jamison. Mr. Jamison was a highly placed official in the Agency. It strikes me as inconceivable that the Agency would not have his last address, and I would like to know the status of this as well on July 10, 2008.

In addition, in your later, dated June 27, 2008, you had represented that you "will contact [me] about the status of the [other] documents during the week of July 7, 2008." We are now in that week. I thus expect those documents, if such documents exist, by July 11, 2008, which is Friday of that week. If there are additional documents, and you are unable to produce them by that time, I expect that you will inform me just what those documents are, and why you cannot produce them.

I expect that you will attend to these matters, or I will have no choice but to make a motion to compel. Please consider this fair warning, since I am not prepared to have you make any misrepresentation that you have not been advised and forewarned concerning the possibility of a motion to compel.

Finally, as I had suggested in our telephone conversation, I believe that we will need to discuss these matters by phone, even though we are scheduled to meet, for another case, on July 10, 2008. On that subject, I thought that it was remarkably unprofessional for you to discuss this case, while we were in court on another case, in front of my client. However, given the various misrepresentations that you made before the court, I suppose I should not be surprised by this behavior, although, for an attorney who drops the phrases "courtesy" and "collegiality" with some frequency, I found your conduct to be highly discourteous, in addition to being thoroughly unprofessional.

Very truly yours,

James L. Fuchs

**Exhibit 12**



U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

<u>VIA FACSIMILE (410-653-9061) AND FIRST CLASS MAIL</u>

July 18, 2008

James Fuchs, Esq.
SNIDER & ASSOCIATES, LLC
104 Church Lane, Suite 201
Baltimore, MD 21208

        Re:    <u>Smith v. Paulsion, C.A. No. 07-1045 (RMU)- Discovery Matters</u>

Dear Mr. Fuchs:

        Thank you for your several letters and/or emails since my letter of July 10, 2008, attempting to confirm the deposition schedule in this case. This letter again attempts to set forth the deposition schedule. This letter also requests, again, that Mr. Garrett's deposition be held at FEMA Headquarters; and responds to your demand, under threat of a motion to compel, that Defendant produce documents it has requested from storage possible to Plaintiff's Fourth Request for Production of Documents.

        The deposition schedule, as I understand it, is as follows:

        Smith deposition - July 29, 2008, 10:30 am, USAO-DC 501 3rd St., N.W. 4th floor,
        Fluman deposition - July 30, 2008, 10:30 am, Snyder & Ass ("SA"). offices, Baltimore,
        Cameron deposition - August 1, 2008, 10:30 am, SA,
        Stevens deposition - scheduled for August 8, cancelled by plaintiff,
        Blackman deposition - August 11, 2008, 10:30 am, SA,
        Garrett deposition - August 14, 2008, 10:30 am,
        Rule 30(b)(6) deposition - Brenda Edmonds - August 18, 2008, 10:30 am, SA pending,
        Jamison deposition - pending.

As I have previously noted, Mr. Jamison is not an employee of FEMA. In this regard, the parties need to execute a Privacy Act Consent Order, so we may release his address to you. However, should you not wish to execute a PA order, there is a Gilbert Jamison listed in publicly available sources at 5117 Kenwood Drive, Annandale, VA., (703) 941-8193.

FEMA again requests that the deposition of David Garrett be conducted at FEMA Headquarters in Washington, D.C., where Mr. Garrett is employed, and to the extent possible, be limited to no more than three hours. As you may know, Mr. Garrett is the Deputy Assistant Administrator for FEMA's Disaster Assistance Directorate. In this capacity, he is intimately involved in daily decisions relating to FEMA's disaster operations and response. Mr. Garrett is presently overseeing FEMA's response to the several disasters nationwide including the Big Sur California wildfires and the Midwest flooding. Needless to say, these disasters are of great concern to the U.S. Government and the people of this country. He simply cannot be away from his office for such as extended period. For this reason, it is again requested that you hold Mr. Garrett's deposition in Washington. Moreover, given his limited role in this litigation, the Agency also requests that you limit the deposition to no more than three hours, if possible.

With regard to your demand that Defendant produce documents that have been requested from records storage by July 18, 2008, Defendant supplements its Production of Documents Response Exhibit 8 with the attached documents received to date. Defendant reserves the right to supplement this response when additional documents are received. Should you determine that you will file a motion to compel on Monday, July 21, 2008, because not all records have been received by Plaintiff, Defendant is prepared to submit a declaration to the Court with regard to the good faith efforts made to obtain and provide documents.

Sincerely yours,

JEFFREY A. TAYLOR
United States Attorney

BY

CLAIRE M. WHITAKER
Assistant U.S. Attorney

Attachment

# Exhibit 13



U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

<u>VIA FACSIMILE (410-653-9061) AND FIRST CLASS MAIL</u>

July 23, 2008

James Fuchs, Esq.
SNIDER & ASSOCIATES, LLC
104 Church Lane, Suite 201
Baltimore, MD 21208

     Re:    <u>Smith v. Paulson, C.A. No. 07-1045 (RMU)- VA 221 KSAs, etc.</u>

Dear Mr. Fuchs:

       This is in response to your letter of July 22, 2008. In your letter, you demand the production of certain documents by July 25, 2008, that Defendant has not yet located, a fact of which you have been aware for some time. Should Defendant be unable to produce the documents by July 25, 2008, you indicate Plaintiff will file a motion to compel.

       The documents at issue are HR documents relating to VA Announcement RB-06-221-AJS (the Mulllikin selection) and specifically, Mr. Mullikin's KSAs. As the attached declaration evidences, these documents were not located in the agency's archived records department, although other documents relating to VA Announcement RB-06-228-AJS (the Haynes selection) were found there and have been provided to Plaintiff. As also noted in the declaration, the agency is continuing to search the files that are still maintained at Headquarters to locate the information. However, there is no guarantee that the documents will be found in two days. If they are found by July 25, 2008, they will be forwarded to you by facsimile mail on that day. In any event, Defendant will not oppose the rescheduling of the three depositions set for July 29, 30, and August 1, 2008, should Plaintiff believe he is prejudiced. In addition, Defendant will not object to Plaintiff deposing Mr. Mulllikin, and, in that same vein, attaches Mr. Mullikin's KSAs for RB-06-228-AJS (the Haynes' selection) to this letter. Although not specifically relevant to the Mullikin selection, they provide guidance to Plaintiff as to Mr. Mullikin's skills and experience level at the time of the selection.

       Defendant is, of course, disturbed by the gratuitous comments in your July 22, 2008, that imply that the agency is recalcitrant, has purposely destroyed documents, or has been involved in some other nefarious activity to hide the records from Plaintiff. Rest assured that that is not the

case. As is obvious, any imminent prejudice to Plaintiff from the absence of these records can be quickly remedied by postponing the three depositions. That is Plaintiff's choice.

Clearly, a postponement of the depositions set for the week of July 28, 2008, is the prudent course of action, should Plaintiff believe he is prejudiced. The next deposition in this case is not scheduled until August 11, 2008; it is anticipated that this matter will be resolved by that date. Moreover, discovery does not close until September 10, 2008. Should your schedule be such that you cannot reschedule the depositions in August or early September, without hardship, Defendant is willing to agree to an extension of the discovery period.

With regard to the deposition of Mr. Jamison, Mr. Jamison is not an employee of FEMA and the agency will not accept service on his behalf. As you have previously been informed, the agency cannot release personal information in the absence of a Privacy Act Consent Order. In any event, since you already have his home address and have the power to subpoena him under Fed. R. Civ. R. 45, the only matter for the parties to resolve is the date of his deposition.

With regard to the deposition of Mr. Garrett, it is unfortunate that you must insist that his deposition take place Baltimore. Indeed, the witness, the government attorneys, and the Plaintiff himself, work in Washington, D.C.  Only you are in Baltimore. Should the reasoning for insisting that this deposition be held in Baltimore relates to the costs of attorney travel and fees, perhaps the parties can agree to take Mr. Garrett's deposition after the previously set mediation session with Magistrate Judge Facciola on August 20, 2008, with the understanding that it will continue until you have concluded your questioning.

It is my understanding that Ms. Edmonds will serve as the Fed. R. Civ. P. 30(b)(6) witness for the agency. I will inquiry as to your concerns regarding Ms. Edmonds' deposition and provide an answer to your question by August 1, 2008.

Sincerely yours,

JEFFREY A. TAYLOR
United States Attorney

BY:  CLAIRE M. WHITAKER
Assistant U.S. Attorney

Attachments

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN TOM SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07-cv-01045-RMU |
| v. | ) | |
| | ) | |
| MICHAEL CHERTOFF, SECRETARY, | ) | |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF ALLISON FALCONE

I, Allison Falcone, state and declare as follows:

1. I am employed by the Federal Emergency Management Agency (FEMA), a component agency of the Department of Homeland Security (DHS). From 12/16/02 until present, I served as a Human Resources Specialist. In this position, I provide staffing, classification and other HR functions.

2. At the request of FEMA's Office of Chief Counsel, I made a request to an HR POC to request from FEMA's archived records department on June 17, 2008 for all documents pertaining to Supervisory Program Specialist positions RB06221AJS and RB06228AJS. I was advised that documents responsive to the request would be sent to me in 7 to 10 business days. However, I did not receive the documents within that time period. I was also advised that the case file RB06221AJS was not on file with the archives department.

3. At the request of FEMA's Office of Chief Counsel, I made two status checks with FEMA's archived records department to obtain an approximate delivery date for the requested documents.

4. On July 17, 2008, I received documents from FEMA's archive department for Supervisory Program Specialist position RB06228AJS.

5. HR Records indicate that case file RB06221AJS is not on file with the FEMA archives department. HR is continuing to search the files that are still maintained at HQ to locate the case file.

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 22nd day of July, 2008.

ALLISON FALCONE
FEMA/DHS



# James Michael Mullikin

(202) 646-4692 (Work) · U.S. Citizen

USOPM Clearance · Secret

APR 2 6 2006

## DHS FEDERAL EMERGENCY MANAGEMENT AGENCY
### -Supervisory Program Specialist, - GS-301-14
### Vacancy Announcement Number: RB-06-228-AJS

### Qualififcations

- Successful, progressive manager with 10 years experience providing leadership, service, supervision, management and administration in high stress environments,
- Mastery of the ability to analyze and evaluate the effectiveness of an organization and its compliance programs, and provide feedback based on national policy,
- Mastery in the development of National level policy on compliance,
- Exceptional Communication Skills, writing, editing and speaking on Behalf of Director level leadership (GS-15 / SES) to varied audiences of senior leadership in Federal, State and local government and members of the public,
- 20 years experience in effective, analytical problem solving and decision making in highly complex, high stress regulatory environments,
- Team Builder, compassionate, safety conscious and works well under stressful situations,
- Exceptional ability to work independently or within teams to accomplish and establish national level goals, objectives and  establish national level policy,
- Certified Federal Acquisition Professional, Program Manager-Level II; demonstrated mastery of budgetary, contractual and financial processes in the Federal government.

### Education

**Master of Science, Environmental Health Engineering.** Temple University, College of Engineering, Philadelphia, PA.

**Bachelor of Science, Chemistry Concentration,** Regents College, Albany, N.Y.

### Certifications

**Certified Acquisition Professional,** Program Manager-Level II. Department of Homeland Security, August 2005

## DHS FEDERAL EMERGENCY MANAGEMENT AGENCY
### -Supervisory Program Specialist, - GS-301-14
### Vacancy Announcement Number: RB-06-228-AJS

1

## James Michael Mullikin



· (202) 646-4692 (Work) · U.S. Citizen

USOPM Clearance · Secret

---

### DHS FEDERAL EMERGENCY MANAGEMENT AGENCY
**-Supervisory Program Specialist, - GS-301-14**
**Vacancy Announcement Number: RB-06-228-AJS**

| Awards & Recognition |
|---|

**Exceptional Service** to SMART-PM in Response to the Terrorist Attack on the Pentagon on 11 September, 2001. U.S. Army Center for Health Promotion and Preventive Medicine, February 2002.

**Commendation for Exceptional Performance** as Department of the Army Liaison to the Agency for Toxic Substances and Disease Registry, U.S. Health and Human Services. Department of the Army, August 2004.

**Superior Performance** Award as Program Manager. Department of Homeland Security, February, 2006.

**Performance Award** for presenting Ethical Implications of Emergency Response to the United States Office of Government Ethics, on behalf of the FEMA Office of General Counsel. DHS FEMA Office of General Counsel, March, 2006.

| Employment |
|---|

**Program Manager**
**Department of Homeland Security**
**January 23, 2005 - Current,**
**GS-0340-13/4 with Status**   Present Salary  $85,086

**1. Acting Chief, System Evaluation and Compliance Branch,**   40 Hours per week
**FEMA NIMS Integration Center (NIC):** Detailed from Office of Grants and Training:
500 C Street, SW Washington D.C.
4 September 2005- current,
**Supervisor:**   Al Fluman, (NIC Director)  Tel. No. (301) 447-1299
              Carole Cameron, (NIC Deputy Director) Tel. No. (202) 646-4554

- Reports to Director, NIMS Integration Center,
- Serves as the NIMS Integration Center's technical authority in the formation of the National NIMS Peer review Compliance Programs,

---

**DHS FEDERAL EMERGENCY MANAGEMENT AGENCY**
**-Supervisory Program Specialist, - GS-301-14**
**Vacancy Announcement Number: RB-06-228-AJS**

2



# James Michael Mullikin

(202) 646-4692 (Work) · U.S. Citizen

USOPM Clearance · Secret

- Personally Liaisons with senior emergency management leadership (Directors, SES/GS-15) in Federal Agencies, Senior Contracting Officials (Vice President SAIC), and senior level decision makers in Non-Governmental Organizations (Operations Director AmeriCorps),
- Responsible for developing NIMS National Compliance guidelines, policies, plans and procedures for All Federal agencies and all States and Territories,
- Provide effective implementation of all NIMS Compliance programs to ensure compliance with the NIMS and the National Response Plan (NRP).
- I have negotiated and established specific mechanisms to coordinate with DHS leadership (SES) to develop a Memorandum of Understanding for NIMS compliance monitoring of States, local and tribal governments,
- I have negotiated and established specific mechanisms to coordinate with other Federal agencies (SES/GS-15), and non governmental organizations and other stakeholders by developing a Federal partners meeting to be held on May 29-June 2, 2006 which will allow the NIC and Federal agencies to effectively and efficiently define, develop, adopt, evaluate, and promulgate NIMS related compliance requirements and to develop a Federal Peer Review Compliance Program,
- Supports the Department of Homeland Security, Office of Grants and Training, in conjunction with other Federal, State or local governments and non governmental organizations to ensure that NIMS implementation nationwide is coordinated in an efficient and effective manner.
- Acts as NIMS Integration Center authority in the resolution of complex problems or issues and leads analysis of NIMS Compliance projects, issues, policies, guidelines and programs impacting all or most agency organizations with respect to NIMS.
- Serves as the Agency's initial contact person and liaison with persons and groups inside and outside the Agency on NIMS Compliance matters
- Provides guidance and direction to all activities associated with the development of performance measures and metrics for the NIMS Support Center.
- COTR for $1.4 Million Dollar contract for the Homeland Security Institute to develop compliance metrics,
- Created Intra-Agency agreement between the NIMS integration Center and the DHS Science and technology Directorate,
- Responsible for supervising and managing the work of the System Evaluation and Compliance Branch and serving as an advisor to the Director,
- Defined, developed and evaluated Data Gap Analysis and specific performance measures and metrics for NIMS compliance.

2. **Program Manager and Preparedness Officer, 40 Hours per week**

---

**DHS FEDERAL EMERGENCY MANAGEMENT AGENCY**
-Supervisory Program Specialist, - GS-301-14
Vacancy Announcement Number: RB-06-228-AJS

3



## James Michael Mullikin

· (202) 646-4692 (Work) · U.S. Citizen

USOPM Clearance · Secret

**2. Office of Grants and Training**
Eastern Division
810 7th street, NW
Washington D.C.
January 23 2005 - 4 September 2005,
Supervisor/Rater: Judy Hampton, (Division Director) Telephone No. (202) 786-9720

- Lead for 4 teams of Subject Matter Experts in: Emergency Management (Team Leader, Contractor, Attorney, GS-14 equiv.), Public Health and Medical response (Team Leader, USPHS, Captain, 0-6), Recovery and Prevention (GS-13 Preparedness Officer) and Protection (GS-13 Preparedness Officer) on the development of content, performance measures and metrics for the Pilot National Capabilities Assessment developed in response to HSPD-8,
- Evaluated the state of Preparedness in Maine, New Hampshire and Vermont and published three reports illustrating strengths, weaknesses and recommendations to the States,
- Provided overview of the State of Maine's Homeland Security Strategy to Senior Staff and Counsel of the Committee on Homeland Security and Governmental Affairs, United States Senate,
- Grant Manager for State Homeland Security Grant program Grants with awards in excess of $100 Million to Maine, New Hampshire and Vermont,
- Serve as a primary liaison between the Office of Domestic Preparedness and State grantees on matters of grants compliance,
- Work with senior leadership (Governors appointed Advisors/Directors on Homeland Security) in the states of Maine, New Hampshire and Vermont to resolve matters of non-compliance for state preparedness programs in terms of equipment acquisition, training, exercises,
- Evaluation and approval of all financial reporting of State Homeland Security Grants and compliance,
- Advises State Administrative agencies on the development of state and local homeland security plans,
- Assists jurisdictions with equipment acquisition, training and exercise development, technical assistance and program development.
- Facilitates State and local inter and intra-jurisdiction coordination and collaboration,
- Coordinates, administers and manages a variety of complex and typically long term State Homeland Security Grant programs.

---

**DHS FEDERAL EMERGENCY MANAGEMENT AGENCY**
-Supervisory Program Specialist, - GS-301-14
Vacancy Announcement Number: RB-06-228-AJS

4

# James Michael Mullikin

~~████████████████████~~
~~████████████~~ (202) 646-4692 (Work) · U.S. Citizen
~~████████████████~~
USOPM Clearance · Secret

Physical Scientist GS-1301-13/2,    $79,000
40 Hours per week
U.S. Army Center for Health Promotion and Preventive Medicine (USACHPPM)
Environmental Health Risk Assessment Program.
December 29, 2002 – January 23, 2005
Supervisor: Bonnie Gaborek, Telephone No. (410) 436-3560

**Department of the Army Liaison to the US Health and Human Services (HHS)
Agency for Toxic Substances and Disease Registry (ATSDR).**
- Provided oversight and coordination of ATSDR cooperative agreements and
  oversight of work on U.S. Army controlled or owned properties being assessed
  for human exposures to hazardous materials.
- Review, evaluate and approve ATSDR technical documents and budgets.
- Serve as project team leader, scientific/technical expert and consultant on all
  aspects of large scope, multi-disciplinary risk assessment projects associated with
  complex toxic and hazardous substances and military operations,
- Emergency response to military installations where hazardous materials were
  detected that may pose a health threat to members of the general public,
- Interpret Federal, State and Local regulations and guidance documents and where
  guidance does not exist, negotiate with regulatory agencies to create novel
  approaches and solutions to compliance impasses.
- On behalf of the Army Surgeon General, perform critical appraisals and reviews
  of reports, decision documents, proposals and federal agency policy and
  methodological guidance documents regarding environmental health issues.
- Plans and conducts studies and consultations involving risk assessments.
- Conducted Health Risk Assessments for deployed force health protection during
  Operation Iraqi Freedom as a member of the USACHPPM Global Threat
  Assessment Team.

**Risk Assessment Research Scientist,** 40 Hours per week    $65,000
U.S. Army Center for Health Promotion and Preventive Medicine (USACHPPM)
Environmental Health Risk Assessment Program.
**Henry M Jackson Foundation Participant,** August 1, 2001 – December 29, 2002.
Supervisor: Bonnie Gaborek, Telephone No. (410) 436-3560

- Planned and conducted studies and consultations involving indirect exposure
  health risk assessments,
- Established methodology and technical standards to perform indirect and direct
  exposure risk assessments,
- Applied USEPA methodologies to the demilitarization of chemical warfare agents
  using complex models and algorithms,

**DHS FEDERAL EMERGENCY MANAGEMENT AGENCY**
-Supervisory Program Specialist, - GS-301-14
Vacancy Announcement Number: RB-06-228-AJS

5

## James Michael Mullikin

~~████████████████~~
~~████████████~~ (202) 646-4692 (Work) · U.S. Citizen
~~USOPM Clearance · Secret~~

- Wrote reports and technical journal articles on health risk assessment topics.

**Program Liaison,**    40 Hours per week    $58,000
U.S. Army Center for Health Promotion and Preventive Medicine (USACHPPM)
Health Physics Program
Deployment Environmental Surveillance Program
**Henry M Jackson Foundation Participant,** October 1, 1999 – August 1, 2001

- Program Liaison between the USACHPPM Health Physics Program, Deployment Environmental Surveillance Program and to members of the Health Risk Assessment Program.
- Provided training to preventive medicine officers/graduate students from the Uniformed University of the Health Sciences in complex risk assessment methods.
- Worked as a matrix health and safety program consultant for deployed forces providing health physics consultation in conjunction with entomological, biological and chemical hygiene subject matter experts.
- Have been trained in and used the following dispersion RESRAD and RESRAD BUILD with the RESRAD BASELINE add on, and the CAPP88PC/AIRDOS, Industrial Source Complex Model, and Crystal Ball for Monte Carlo Analyses.
- Contributing technical author on guides on risk assessment strategies.
- Direct support for Human Health Risk Assessments conducted on U.S. Army Properties being transferred or realigned under the Base Re-alignment and Closure (BRAC) act.

**Project Manager,**    40 Hours per week    $52,000
U.S. Army Center for Health Promotion and Preventive Medicine (USACHPPM)
Industrial and Environmental Health Physics Program
**Henry M Jackson Foundation Participant,** July 29, 1996 - October 1, 1999
Supervisor: Harris Edge    Telephone No. (410) 436-3560

- Project Management of personnel and resources for site remedial investigations, and site clean-ups.
- Responsible for draft through final versions of site work plans, site sampling plans, site health and safety plans and final reports.
- Responsible for the supervision and rating of personnel at the GS-12/GS-13 equivalent level engaged in all phases of environmental site investigation and site assessments,
- Developed and maintained customer contact and provided cost estimates for this work,

**DHS FEDERAL EMERGENCY MANAGEMENT AGENCY**
-Supervisory Program Specialist, - GS-301-14
**Vacancy Announcement Number: RB-06-228-AJS**

6

# James Michael Mullikin



· (202) 646-4692 (Work) · U.S. Citizen

USOPM Clearance · Secret

- Developed and managed mobile and fixed laboratory chemistry services to support rapid response site investigations,
- Developed a Memorandum of Agreement with the U.S. Air Force Brooks Laboratory for chemistry support,
- Interacted and negotiated with local, State and Federal environmental regulators, as well as Air force and Army organizations in support of Base Realignment and Closure (BRAC) environmental restoration and the Installation Restoration Program compliance,
- Managed subcontractor technical services and reviewed and advised on subcontractor budgets,
- Review and comment on health risk data and health risk assessment models as a peer reviewer for outside organizations,
- Provides technical expertise and guidance to US Army activity and installation commanders and their representatives on radiation health and safety issues for compliance to Federal, State and Army regulations.
- Performs NRC license and program reviews and compliance audits to MACOMS and their MSCs. Prepared technical compliance reports on findings and recommendations for submittal to MACOMs.
- Provided in-briefings and out-briefings to local commanders on findings of non-compliance and provided recommendations for improvement with regard to programs under their command,
- Panel Chair for all contractor hiring actions,
- Published annual and quarterly progress reports for the assessment of sites.

**Field Operations Supervisor** Health Physics,        40 Hours per week
U.S. ARMY Communications-Electronics Command Safety Office
Fort Monmouth, NJ
March 9, 1995 - August 29, 1995

Day to day management of field investigation operations. Development of site sampling work plans. Developed environmental sampling protocols. Equipment and supply procurement and budgeting. Oversight of contractors removing underground storage tanks.

**Contract Chemist/Special Projects Chemist,**        40 Hours per week
Various Nuclear Plants Nationwide
1986-1995. Nuclear Regulatory Commission, Regulatory Compliance measurement.

**Formal Training:**

---

**DHS FEDERAL EMERGENCY MANAGEMENT AGENCY**
-Supervisory Program Specialist, - GS-301-14
Vacancy Announcement Number: RB-06-228-AJS

# James Michael Mullikin

(202) 646-4692 (Work) · U.S. Citizen

USOPM Clearance · Secret

## College Level Degrees

### University Level Degrees (Chronological Order)

**BS Chemistry Concentration,** Regents College, Albany, N.Y. Degree

**MS Environmental Health Engineering.** Temple University, College of Engineering, Philadelphia, PA.

## College Level Training

### University Level Courses (Chronological Order)

**Temple University, Fox School of Business:**
Managing Risk, 20 January-14 May 2004
Globalization, 20 January-14 May 2004

**Johns Hopkins University:**
Quantitative Methods and Case Studies in Risk Assessment: Exposure Assessment, 22 January-16 March 01, Academic Quarter.

Quantitative Methods and Case Studies in Risk Assessment: Dose Response, 26 March-16 May 01, Academic Quarter.

Introduction to the Risk Sciences and Public Policy, 5 September-22 October 2001, Academic Quarter.

## Professional Training (Chronological Order)

**Department of Homeland Security**
Regional Financial Management Training Seminar, U.S. Department of Justice, Office of Justice Programs, 9-10 February, 2005

**Evaluating Federal Funds, Management of Recipients and Sub-Recipients,** Management Concepts, July, 2005, 40 Hours

**IS-700, National Incident Management System:** Online.  FEMA, Emergency management institute, February, 2005

---

**DHS FEDERAL EMERGENCY MANAGEMENT AGENCY**
**-Supervisory Program Specialist, - GS-301-14**
**Vacancy Announcement Number:  RB-06-228-AJS**

8



## James Michael Mullikin

(202) 646-4692 (Work) · U.S. Citizen

USOPM Clearance · Secret

**IS-800, National Response Plan:** Online EMI, February, 2005

**Incident Response to Terrorist Bombings,** New Mexico State Technical University, Energetic Materials Research Center, May 2005, 40 hours.

**Senior Officials Weapons of Mass Destruction Preparedness** Seminar, March 2005, 8 Hours.

**Weapons of Mass Destruction Incident Management** and Unified Command, National Emergency response and Rescue training Center, Maryland fire and Rescue Institute, March, 2005, 40 hours.

**Department of the Army:**
LEAD (Leadership and Development) Center for Army Leadership and the US Army Command and General Staff College, 20-24 September, 2004, 40 Hours.

US Army Greening course for Scientists and Engineers, Army Material Command, APG MD, 24-26 August 2004, 24 Hours.

ACQ101, Fundamentals of Systems Acquisition Management, Defense Acquisition University, Online. Completed on 17 August, 2004, 60 Hours.

Personnel Management for Executives (PME), U.S. Army Management Staff College, 17-27 May, 2004, 80 hours.

Contracting Officers Representative Course (ALMC-CL), U.S. Army Logistics Management College, completed 2 April, 2004, 40 hours.

Supervisor Development Course: US Army Training Center, completed 11 Jan 2004, online/Self Paced.

**United States Army Center for Health Promotion and Preventive Medicine at Harford Community College:**
United States Army Center for Health Promotion and Preventive Medicine Leadership Development Program, Spring 2004,

**Decisioneering Inc.:**
Introduction to Probabilistic Modeling using Crystal Ball. 12 November, 2003
Advanced Probabilistic Modeling using Crystal Ball. 13 November, 2003, 16 hours.

---

**DHS FEDERAL EMERGENCY MANAGEMENT AGENCY**
**-Supervisory Program Specialist, - GS-301-14**
**Vacancy Announcement Number: RB-06-228-AJS**

9

# James Michael Mullikin

~~████████████████████~~
~~████████~~ (202) 646-4692 (Work) · U.S. Citizen
USOPM Clearance · Secret

**Department of the Army:**
Decision Analysis (ALMC-RD), U.S. Army Logistics Management College, 6-10 October, 2003, 40 hours.

**Army Distance Learning:**
Managing and Leading (ST5001) completed 8 August, 2003, Online/Self Paced.

**Lausanne Institute:**
Report and Technical Writing, 14-17 July, 2003, 32 hours.

**Agency for Toxic Substances and Disease Registry:**
Basic Course for Health Assessment and Consultation, 2-6 June, 2003, 40 hours.

**Harvard University School of Public Health:**
Probabilistic Risk Analysis: Assessment, Management, and Communication 1-4 October, 2002, 40 hours.

**Department of the Army:**
Hazardous Waste Transportation. April 2001, 40 hours. (Certified: Hazardous waste transportation)

**Risk Assessment Corporation:**
Calculating and Understanding Risk from Radionuclides Released to the Environment, 15-19 November, 1999, 40 hours.

**Department of Energy:**
RESRAD Computer Risk Assessment Model, 1-2, 1998, 16 hours.
RESBUILD Computer Risk Assessment Model, 3 September 1998, 8 hours.

**US Army Center for Health Promotion and Preventive Medicine:**
Project Management Principals, 16-30 June 1997, 40 hours. (Essex Community College)
Risk Communication, 18-20 June 1997, 20 hours.
Advanced Health Physics Concepts and Problem Solving. September 1997 to June 1998. VTC Course, about 60 hours.

**Rutgers University:**
Radioisotope Laboratory Safety, 19 June, 1995, 8 hours.
Biological Effects of Radiation, 20 June 1995, 8 hours.
Basic Radioisotope Theory, 21 June 1995, 8 hours.
Radiation Detection Instrumentation, 22 June 1995, 8 hours.
Radiation Protection Program Management, 23 June 1995, 8 hours.

---

**DHS FEDERAL EMERGENCY MANAGEMENT AGENCY**
**-Supervisory Program Specialist, - GS-301-14**
**Vacancy Announcement Number: RB-06-228-AJS**

10



**James Michael Mullikin**

~~(8.1).020-5293 (Home) ·~~ (202) 646-4692 (Work) · U.S. Citizen
USOPM Clearance · Secret

Decommissioning Radiological Sites, 17-20 November 1997, 24 Hours.

**USEPA:**
HAZWOPR 165.5, 27-31 March 1995, 40 hours. Subsequent annual 8 hour refresher training current.

| Publications |
| --- |

Pentagon Surface Wipe sampling Health Risk Assessment, Toxicology and Industrial Health, 2001; 17:254-261. Contributing Author.

Technical Guide 248, Guide for Deployed Preventive Medicine Personnel on Health Risk Management, US Army Center for Health Promotion and Preventive Medicine, August 2001. Technical Author.

Technical Guide 251, Environmental Surveillance Sampling Guide, 17th Annual Soils Sediments and Water Conference, Poster and Presentation Session, Amherst Massachusetts, US Army Center for Health Promotion and Preventive Medicine, 22-25 October 2001. Primary Presenter.

A Level 1 Assessment – An excerpt of Technical Guide TG 236 field Guide for Unit Radiological Dose Estimation. 45th Meeting of the Health Physics Society, Poster and Presentation Session, Denver Colorado, June 2000. Primary Presenter.

Evaluation of Currently Fielded Army RADIAC Instrumentation for the Effective Detection and Measurement of Radiation Levels. 68th Military operations Research Society (MORS) Colorado Springs Colorado, 20-22 June 2000. Contributing Author.

BRAC: Radiological Assessment and Reutilization of US Army Facilities which Historically used Radioactive Materials, 38th Navy Occupational Health and Preventive Medicine Workshop, Norfolk VA 1997. Primary Author.

**DHS FEDERAL EMERGENCY MANAGEMENT AGENCY**
-Supervisory Program Specialist, - GS-301-14
Vacancy Announcement Number:  RB-06-228-AJS

11

## James Michael Mullikin

~~████████████~~ (202) 646-4692 (Work) · U.S. Citizen
~~████████~~
USOPM Clearance · Secret

---

### KNOWLEDGE, SKILLS, & ABILITIES (KSAs) 1-5

---

**KSA 1:  Demonstrated ability to develop a national system of compliance activities to include metrics, guidelines, protocols, and standards to support the National Incident Management System.**

- Primary point of contact and lead expert on matters of NIMS Compliance for the Federal Agencies and State and local government,
- Liaison with all Federal agencies and all State and local governments on NIMS implementation and NIMS compliance standards,
- Agency expert on adapting credentials, typed resources and standards for use as performance measures and compliance metrics,
- Specifying requirements to both the Eastern Kentucky University and the Homeland Security Institute to both identify and or develop possible metrics and standards for compliance to NIMS,
- Developing, procedures and  fact sheets and white papers that both illuminate, and set in place, NIMS compliance policy for emergency responders from State, Local and Federal government,
- Establishing a filing system/data archival system for sensitive NIMS compliance documents of National Importance,
- Defining requirements and adopting commercial of the shelf tools to direct the development of web based tools that will allow users to develop NIMS compliant programs (Emergency Operations Plan's, Standard Operating Procedure's, exercises and training…) online,
- Directing the development of a measurable NIMS compliance baseline for all 56 States and territories based on qualitative and quantitative data acquired through several Federal data bases of State and local compliance data, which will be used as the basis for evaluating future years performance improvement,
- Directing the development of State and local compliance metrics that ensure all Federal, State and local and tribal levels of first responders receive the appropriate tools and training required to implement NIMS,
- Defining, requirements for evaluative tools that Measure the progress of NIMS implementation annually using complex quality and performance measurement systems,
- Directing the improvement of NIMS implementation and compliance measurement processes based on feedback from our Federal agency partners and our partners in the 56 States and Territories and local government through structured workshops,
- Directing and overseeing the establishment Federal and State and local stakeholder National workshops on NIMS compliance,

---

**DHS FEDERAL EMERGENCY MANAGEMENT AGENCY**
-Supervisory Program Specialist, - GS-301-14
Vacancy Announcement Number:  RB-06-228-AJS

12

## James Michael Mullikin



(202) 646-4692 (Work) · U.S. Citizen
USOPM Clearance · Secret

- Developing tracking systems to evaluate how effectively the NIC is supporting NIMS implementation through the cooperative agreement with Eastern Kentucky University,
- Directing the development of Data/Gap Analysis to assess NIMS implementation activities by leveraging existing Federal tools and data sources to formulate a NIMS implementation progressive baseline,
- Developing compliance activity metrics to track Federal, State, local, territorial, and tribal NIMS implementation,
- Directing the Development of Dashboard computer technology (an interactive, visual display) to portray status of the NIMS implementation progressive baseline
- The NIMS SC will assess State implementation activities by leveraging existing tools such as NIMCAST
- Evaluating complex data sources from other Federal partners such as the Office of Grants and Trainings (OGT), National Plan Review, State-wide Program and Capability Enhancement Plan, Capabilities Assessment Pilot (CAP), 2005 State and Urban Area Homeland Security Strategies, Grants Tracking, Investment Justification, Preparedness Office Monitoring, Others as identified for NIMS compliance,
- Implementing Lessons Learned generated by numerous groups as well as the Homeland Security Council, into National Level policy on NIMS Compliance,
- Given total latitude to define compliance requirements for National Level NIMS implementation Policy,
- Developing compliance requirements for Federal agencies for Fiscal Year 2007 and out years,
- Developing compliance requirements for State, local and tribal governments for Fiscal Year 2007 and out years,
- Evaluating and adopting NIMS and NRP standards, credentials, typed resources as compliance requirements as appropriate,
- Promulgating NIMS implementation compliance requirements through other Federal agencies and State and local responder stakeholder groups,
- Directing, reviewing and approving the assessment of data that will formulate a NIMS implementation progressive baseline,
- Defined, developed, adopted, evaluated, and promulgated NIMS related compliance requirements to establish a compliance baseline that will identify areas of success and shortfalls/gaps of NIMS implementation,
- Directing the Development of NIMS Implementation Metrics that will result in key benefits to all Federal agency and State and local first responders to include:
  - Identification of trends, shortfalls, gaps, and best practices in NIMS implementation,
  - Direct support to the NIMS Integration Center with NIMS implementation,
  - Communication of the status of NIMS implementation throughout the Nation,

---

**DHS FEDERAL EMERGENCY MANAGEMENT AGENCY**
-Supervisory Program Specialist, - GS-301-14
Vacancy Announcement Number: RB-06-228-AJS

13

**James Michael Mullikin**

~~(Home)~~ (202) 646-4692 (Work) · U.S. Citizen
~~USOPM Clearance · Secret~~

- Establishment of a Repeatable, performance-based system for communicating status of NIMS implementation.

---

**DHS FEDERAL EMERGENCY MANAGEMENT AGENCY**
-Supervisory Program Specialist, - GS-301-14
Vacancy Announcement Number: RB-06-228-AJS

14



## James Michael Mullikin

(202) 646-4692 (Work) · U.S. Citizen

USOPM Clearance · Secret

---

**KSA 2: Demonstrated ability to effectively supervise and manage employees.**

- **Certified Acquisition Professional**, Program Manager-Level II. Department of Homeland Security, August 2005,
- Provide direction to the System Evaluation and Compliance Branch, NIMS Integration Center, one that performs highly complex analyses to develop national level compliance metrics, compliance policy, technical manuals, and administrative procedures for NIMS Compliance,
- Direct the NIMS Integration Center, System Evaluation and Compliance Branch in application of NIMS Compliance systems and processes Nationwide through Liaison activities with all 56 States and territories and the 32 Federal agencies that are signatories on the National Response Plan,
- Plan and adjust schedules of deliverables with the Branch employees, the Homeland Security Institute contract labor force, the Eastern Kentucky University, Center for Justice Sub contract labor force to meet changing or emerging needs of Congress and state and local government,
- Successfully manage and lead senior contractors through complex organizational and programmatic change, establish program objectives or performance goals and assess progress weekly for PhD and Vice president level employees through a cooperative agreement with the Eastern Kentucky University, Center for Justice and their contractor SAIC,
- Coordinated and integrated the work activities and resources of the DHS Office of Grants and Training with the Eastern Kentucky University, NIMS Support Center on the synthesis of complex assessments to establish a NIMS compliance baseline for Fiscal Year 2005,
- Manage Senior level Emergency Managers; an Attorney, a past Advisor on Homeland Security to the Governor of North Dakota and a retired US Navy Captain, through a contract with Homeland Security Institute under an intra-agency agreement so that NIMS Compliance support program objectives and performance goals, are clear and the expectations for progress for deliverable products as established in the original scope of work, are delivered in a timely manner,
- Established expectations, short term and long term goals with the contractor managers from the Eastern Kentucky University and the Homeland Security Institute for the period of performance of the cooperative agreement with Eastern Kentucky University and the intra-agency agreement and subsequent contract with the Homeland Security Institute,

---

**DHS FEDERAL EMERGENCY MANAGEMENT AGENCY**
-Supervisory Program Specialist, - GS-301-14
**Vacancy Announcement Number: RB-06-228-AJS**

15

## James Michael Mullikin

~~████████████████████~~
~~████████~~ (202) 646-4692 (Work) · U.S. Citizen
~~████████████████~~

USOPM Clearance · Secret

- Accepted for reviewed employment applications for hiring actions for the Henry M. Jackson Foundation at the United States Army Center for Health Promotion and Preventive Medicine and past Chairperson for all hiring actions,
- Recruited and hired FEMA Core employees for the System Evaluation and Compliance Branch, NIMS Integration Center,
- Coordinating with the Resource Management and Credentialing Branch, Training and Exercise Branch, and Standards and Technology Branch of the NIMS Integration Center to leverage the development of credentials, typed resources, exercise evaluation reports into compliance policy and specific compliance metrics,
- Final approval of SAIC employees, under contract to Eastern Kentucky University, for direct support to the System Evaluation and Compliance Branch, NIMS Integration Center for the development of compliance metrics,
- Direct supervision of FEMA GS-12 Core employees and SAIC contractor employees,
- Past Project Management of personnel and resources for emergency site remedial assessments, and site restoration,
- Was Responsible for the supervision and rating of more than 20 personnel at the GS-12/GS-13 equivalent level engaged in all phases of environmental site assessments, through 5 subordinate project managers,
- Responsible for the oversight and production of complex technical reports and studies on site contamination on U.S. Army Facilities Nationwide through subordinate project managers,
- Provide leadership to NIMS Compliance and Technical Assistance specialists (GS-12/13 level) in the 10 FEMA Regions,
- Recognized as a strong leader. I have been recommended to Advanced Leadership Programs both at the Department of Homeland Security and the U.S. Army,
- I have taken many courses on management and supervision of employees through the Department of the Army and the Fox School of Business at Temple University,



## James Michael Mullikin

(202) 646-4692 (Work) · U.S. Citizen

USOPM Clearance · Secret

---

**KSA 3. Demonstrated ability to analyze organizational and operational problems and develop timely and effective solutions.**

- Exercised considerable imagination in developing and executing the work of the System Evaluation and Compliance Branch, NIMS Integration Center, with no full time employees, by: outsourcing NIMS compliance monitoring to the DHS Office of Grants and Training, Preparedness Division, outsourcing Federal NIMS compliance policy development to the Homeland Security Institute, outsourcing State and local NIMS Compliance policy development to the Eastern Kentucky University, Center for Justice, the hiring of FEMA Core employees and otherwise persuading Federal, State and local emergency management professionals to assist as much as possible in the development of the System Evaluation and Compliance Branch until staff could be hired.
- Planning, organizing, and completing analytical studies involving the implementation of NIMS at the Federal Agency level to evaluate the content of their mandated NIMS Implementation Plans, and to provide recommendations for improvement of the plans.
- Developing NIMS compliance policy that may impact all departments or agencies listed on the National Response Plan, and may result in substantial redirection of policy related to the Implementation of NIMS,
- Developed Mission, Vision, Goals and Objectives for the System Evaluation and Compliance Branch, NIMS Integration Center for Directors (SES/GS-15) approval,
- Developed the organization for the System Evaluation and Compliance Branch, NIMS Integration Center for Directors (SES/GS-15) concurrence,
- Meeting with senior leadership (SES/GS-15) in emergency management and incident management for most of the federal agencies listed as signatories on the National Response Plan, to discuss programs and policy formulation for the implementation of NIMS into Federal agency Emergency Operations and Response Plans,
- Creating Stakeholder working groups and advisory committee's made up of State and local first responders and federal agency first responders and other subject matter experts, as appropriate, to provide input and assistance in the development of NIMS and NRP compliance policy,
- Served as team leader of four teams for the assessment of capabilities nationwide to prevent, prepare, respond and recover from an incident of national significance

---

**DHS FEDERAL EMERGENCY MANAGEMENT AGENCY**
**-Supervisory Program Specialist, - GS-301-14**
**Vacancy Announcement Number: RB-06-228-AJS**

17



### James Michael Mullikin

(202) 646-4692 (Work) · U.S. Citizen

USOPM Clearance · Secret

in response to the Homeland Security Presidential Directive-8. The leadership of these teams required me to assign and apportion work that was here-to-for little understood capability assessment of state and local first responders and jurisdictions to create the content for the assessment.

- Continually responding to questions and directives from congress on NIMS implementation policy and implementing comments into National level policy on NIMS compliance,
- Developed sections and requirements for the Homeland Security Grant Program application kit where NIMS implementation and Compliance policy were concerned,
- Designing studies and requirements for software programs and computer technology that will be used nationally in the development of Emergency Operations Plans at the Federal, State and local level that will allow Federal, State and local government to develop Emergency Operations Plans online, and assess performance of all jurisdictions in implementing the NIMS and NIMS compliance,
- Developing a computer Dashboard and database populated by NIMS compliance data that will provide a user with real time performance measures and trends for NIMS compliance at the State, FEMA Region and National levels for all 56 States and Territories,



# James Michael Mullikin

████████████ (Home) ▪ (202) 646-4692 (Work) ▪ U.S. Citizen
████████████
USOPM Clearance ▪ Secret

> **KSA 4 Demonstrated ability to facilitate meetings, present and defend concepts in public forums, and represent top management to a variety of groups.**

- Presented the NIMS Compliance Priorities in Omaha Nebraska on behalf of the Deputy Director of the NIMS Integration Center with the Lieutenant Governor of Nebraska in Attendance,
- Frequently speak at professional National level conferences on NIMS compliance matters that have been extremely controversial,
- Presented and defended State Homeland Security Strategies to senior staffers and counsel of the Senate Committee on Homeland Security and Governmental Affairs,
- Primary NIMS Compliance Liaison with other DHS organizations, the Federal agencies listed on the National Response Plan, and all 56 States and Territories on NIMS Compliance, and as such frequently defend NIMS compliance policy and procedures,
- Frequently present NIMS compliance and NIMS implementation to elected officials,
- Presented the National Response Plan on behalf of FEMA Office of General Counsel, to Deputy Director, United States Office of Government Ethics. Was presented an award for this presentation,
- Presented NIMS Compliance concepts and policy to a very large contingent of Massachusetts State Legislators,
- Frequently present the NRP and the NIMS compliance programs at National level meetings on behalf of the NIMS Integration Center Director (SES/GS-15 level) to gain support for the centers program goals,
- Hosted planning meetings, which included extensive inter-agency coordination and work, with senior Federal agency officials in incident and emergency management (SES/GS-15) for upcoming Federal partners meeting on NIMS Implementation and Compliance to be held at the Emergency Management Institute with Director level employees (SES/GS-15) of the US Postal Service, U.S. Department of Justice, U.S. Department of Defense and others,
- Served as team leader of four teams for the assessment of capabilities nationwide to prevent, prepare, respond and recover from an incident of national significance in response to the Homeland Security Presidential Directive-8. The leadership of these teams required me to assign and apportion work that was not well understood and controversial on the capabilities of state and local first responders and jurisdictions.

---

**DHS FEDERAL EMERGENCY MANAGEMENT AGENCY**
**-Supervisory Program Specialist, - GS-301-14**
**Vacancy Announcement Number: RB-06-228-AJS**

19



## James Michael Mullikin

· (202) 646-4692 (Work) · U.S. Citizen

USOPM Clearance · Secret

**KSA 5. Demonstrated knowledge of budgetary, contractual and financial processes.**

- **Certified Acquisition Professional,** Program Manager-Level II. Department of Homeland Security, August 2005,
- Developed Procurement Plan, Scope of Work , completed contract package and COTR for $1.4 Million Dollar contract for the Homeland Security Institute to develop NIMS compliance metrics,
- Manage $1.4 Million for Compliance Branch project execution independent of human resource costs,
- developed Intra-agency agreement with the DHS Science and Technology Directorate to employ the Homeland Security Institute to Update the NIMS Document and facilitate stakeholders meeting to develop NIMS compliance policy,
- Developed and presently work under a Memorandum of Understanding with the DHS Office of Grants and Training, Preparedness Programs Division,
- Administer metrics portion of a cooperative agreement with the Justice and Safety Center, Eastern Kentucky University, to develop NIMS Compliance Policy and products within the NIMS Integration Support Center in Somerset Kentucky,
- for contract for NIMS Compliance policy development,
- Review monthly travel budget for the NIMS Integration Center, System Evaluation and Compliance Branch,
- Trained in and frequently refer to Federal Acquisition Regulations,
- Completed following financial and management training;
    - Regional Financial Management Training Seminar, U.S. Department of Justice, Office of Justice Programs, 9-10 February, 2005,
    - Evaluating Federal Funds, Management of Recipients and Sub-Recipients, Management Concepts, July, 2005, 40 Hours,
    - Department of the Army: LEAD (Leadership and Development) Center for Army Leadership and the US Army Command and General Staff College, 20-24 September, 2004, 40 Hours,
    - ACQ101, Fundamentals of Systems Acquisition Management, Defense Acquisition University. Completed on 17 August, 2004, 60 Hours.
    - ACQ201, Intermediate Systems Acquisition, Defense Acquisition University. Completed on 11 November, 2004, 60 Hours.
    - Personnel Management for Executives (PME), U.S. Army Management Staff College, 17-27 May, 2004, 80 hours,
    - Contracting Officers Representative Course (ALMC-CL), U.S. Army Logistics Management College, completed 2 April, 2004, 40 hours,
    - Supervisor Development Course:  US Army Training Center, completed 11 Jan 2004,

**DHS FEDERAL EMERGENCY MANAGEMENT AGENCY**
**-Supervisory Program Specialist, - GS-301-14**
**Vacancy Announcement Number:  RB-06-228-AJS**

## James Michael Mullikin

~~████████████████████████████~~
~~████████~~ (202) 646-4692 (Work) · U.S. Citizen
~~████████~~
USOPM Clearance · Secret

- United States Army Center for Health Promotion and Preventive Medicine Leadership Development Program, Spring 2004,

---

**DHS FEDERAL EMERGENCY MANAGEMENT AGENCY**
**-Supervisory Program Specialist, - GS-301-14**
**Vacancy Announcement Number:  RB-06-228-AJS**

21



EXCEPTION TO SF-50 -- APPROVED FOR FILING IN OFFICIAL PERSONNEL FOLDER

PAGE: 1

DEPT. OF HOMELAND SECURITY

AGENCY: OFFICE OF THE SECRETARY

POI: 5500

PLOYEE NAME: MULLIKIN, JAMES MICHAEL

=====================================================================
CHRONOLOGICAL LISTING OF PERSONNEL ACTIONS
=====================================================================

:CTIVE DATE: 01/23/2005        ACTION: 101 CAREER COND APPT        LEGAL AUTH: BWA OPM DEL AGR TRES 1

TIREMENT PLAN: FERS AND FICA
LI: BASIC-STANDARD-5X ADDITIONAL-5X FAM

ANNUITANT INDICATOR: NOT APPLICABLE        SCD LEAVE:        12/29/2002
VETERANS PREFERENCE: NONE                  TENURE: CONDITIONAL
VETERANS PREFERENCE (RIF): NO

:ITION OCCUPIED: COMPETITIVE SERVICE
'PLAN/SERIES/GRADE/STEP: GS-0301-13 -03
:ITION NUMBER: HS007638
ANIZATION: 10113000010000000
  IMMEDIATE OFFICE OF THE SECRETARY
  DHS HEADQUARTERS
  CFC OF STATE & LOCAL GOVMT CO
  OFF FOR DOMESTIC PREPAREDNESS

FLSA: EXEMPT
PART TIME HRS (BIWEEKLY):
DUTY STATION: WASHINGTON    DIST OF COLUMBIA · DC
POSITION TITLE: PROGRAM MANAGER
BARGAINING UNIT STATUS: INELIGIBLE
PAY RATE DETERMINANT: REGULAR RATE

PAY BASIS: PER ANNUM
TOTAL SALARY/AWARD:        79,766.00
  BASIC PAY:               68,776.00
  LOCALITY ADJ:            10,990.00
  OTHER PAY:                    0.00
ADJ BASIC PAY              79,766.00

'i5
APPOINTMENT AFFIDAVIT EXECUTED 01/24/2005.
CREDITABLE MILITARY SERVICE: 00 YRS. 00 MOS.
PREVIOUS RETIREMENT COVERAGE: PREVIOUSLY COVERED.
EMPLOYEE IS COVERED UNDER FERS BECAUSE OF PREVIOUS ELECTION.
POSITION IS AT THE FULL PERFORMANCE LEVEL.
SERVICE COUNTING TOWARD CAREER TENURE FROM 12/29/02.
APPOINTMENT IS SUBJECT TO COMPLETION OF ONE YEAR INITIAL PROBATIONARY
PERIOD BEGINNING 01/23/05.
HEALTH BENEFITS COVERAGE CONTINUES.
SELECTED FROM OPM DEL AGR# TRES 1, CERT # DEO 0357
APPOINTMENT IS SUBJECT TO COMPLETION OF ONE YEAR INITIAL PROBATIONARY
PERIOD BEGINNING 01/23/05.
SERVICE COUNTING TOWARD CAREER TENURE FROM 12/29/02.

:ESSING PAY PERIOD  02 2005

: IS AN OFFICIAL DOCUMENT APPROVED BY OPM WHICH CONSTITUTES PERSONNEL ACTIONS BEGINNING

SEPTEMBER 28, 1997 TO PRESENT

EXCEPTION TO SF-50 -- APPROVED FOR FILING IN OFFICIAL PERSONNEL FOLDER

PAGE: 2

EMPLOYEE NAME: MULLIKIN, JAMES MICHAEL

IS INFORMATION IS DETERMINED TO BE TRUE AND CORRECT

BERT M. SMITH    ASST COMMISSIONER, HUMAN RES MGMT

CERTIFICATION DATE: 02/13/2005

# Exhibit 15



June 26, 2008

**By Facsimile, Email, and U.S. Mail**

Claire Whitaker, Esq.
Assistant United States Attorney
United States Attorneys' Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, DC 20530

     Re:   *Smith v. Paulison*, Civil Action No. 07-1045 (RMU)

Dear Ms. Whitaker:

     Thank you for the Defendant the Federal Emergency Management Agency's Supplemental Response to Plaintiff's Discovery, which I received yesterday, and which I have now reviewed. While I still consider Defendant's Responses woefully inadequate, the fault would appear to be with the Agency officials themselves, who have either not preserved documents or who have not maintained them in the first place. In other words, *we understand, from Defendant's Responses, that these Responses constitute an admission that Defendant has no interview notes, rankings, ratings, or other HR documents pertaining to the selections at issue, other than what it has already produced.* If this is not your understanding, and if Defendant is not making that admission, please notify me at once.

     Very truly yours,

James L. Fuchs

# Exhibit 16

Edmond, Brenda                                    August 18, 2008

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA


- - - - - - - - - - - - - - x

JOHN TOM SMITH                    :          COPY

310 Ellsworth Drive               :

Silver Spring, Maryland 20910 :

                                  :

          Plaintiff               :

            vs                    : CIVIL ACTION NO.:

DAVID PAULISON, SECRETARY,        : 07-1045 (RMU)

U.S. DEPARTMENT OF HOMELAND       :

SECURITY AGENCY,                  :

425 Murray Lane, Building 410 :

Washington, D.C. 20528            :

          Defendant               :

- - - - - - - - - - - - - - x

                              August 18, 2008

**Edmond, Brenda**

**August 18, 2008**

2 (Pages 2 to 5)

| Page 2 |
|---|
| 1       PURSUANT TO NOTICE, the following |
| 2   deposition of BRENDA ELISABETH EDMOND was taken |
| 3   before me, Kathleen S. Wilson, Notary Public, in |
| 4   and for the State of Maryland, at the offices of |
| 5   Snider and Associates, 104 Church Lane, Suite 100, |
| 6   Baltimore, Maryland 21208, commencing at 10:30 |
| 7   a.m., when were present on behalf of the |
| 8   respective parties: |
| 9 |
| 10   APPEARANCES |
| 11 |
| 12     JAMES FUCHS, ESQUIRE |
| 13     Snider and Associates, LLC |
| 14     104 Church Lane |
| 15     Suite 100 |
| 16     Baltimore, Maryland 21208 |
| 17     (410) 653-9060 |
| 18       On Behalf Of The Plaintiff |
| 19 |
| 20 |
| 21 |

| Page 3 |
|---|
| 1     CLAIRE M. WHITAKER, ESQUIRE |
| 2     U.S. Department of Justice |
| 3     Judiciary Center Building |
| 4     555 Fourth Street, N.W. |
| 5     Room E-4204 |
| 6     Washington, D.C. 20530 |
| 7     (202) 514-7137 |
| 8 |
| 9       and |
| 10 |
| 11     JANICE WILLIAM-JONES, ESQUIRE |
| 12     FEMA |
| 13     U.S. Department of Homeland Security |
| 14     500 C Street, S.W. |
| 15     Washington, D.C. 20472 |
| 16     (202) 646-4168 |
| 17       On Behalf of the Defendant, FEMA |
| 18 |
| 19 |
| 20 |
| 21 |

| Page 4 |
|---|
| 1          I-N-D-E-X |
| 2 |
| 3   WITNESS |
| 4   BRENDA ELISABETH EDMOND |
| 5   Examination by Mr. Fuchs     Page 10 |
| 6   Examination by Ms. Whitaker     Page 200 |
| 7   Examination Resumed by Mr. Fuchs     Page 236 |
| 8 |
| 9 |
| 10         E-X-H-I-B-I-T-S |
| 11   No. 1   Excerpts from FEMA Manual     Page 7 |
| 12   No. 2   Position Description     Page 7 |
| 13   No. 3   Position Description     Page 7 |
| 14   No. 4   Position Description     Page 7 |
| 15   No. 5   Position Description     Page 7 |
| 16   No. 6   Vacancy Announcement     Page 7 |
| 17   No. 7   Crediting Plan     Page 7 |
| 18   No. 8   Crediting Plan     Page 7 |
| 19   No. 9   Resume     Page 7 |
| 20   No. 10   Resume - Tracy Haynes     Page 7 |
| 21 |

| Page 5 |
|---|
| 1         E-X-H-I-B-I-T-S |
| 2       (Continued) |
| 3   No. 11   Responses by Tracy Haynes     Page 7 |
| 4   No. 12   Resume - John Smith     Page 7 |
| 5   No. 13   Responses to KSA's by John Smith     Page 7 |
| 6   No. 14   Handwritten Document     Page 7 |
| 7   No. 15   Rating Sheet     Page 7 |
| 8   No. 16   Handwritten Document     Page 7 |
| 9   No. 17   Rating Sheet     Page 7 |
| 10   No. 18   Notification of Personnel Action     Page 7 |
| 11   No. 19   Notification of Personnel Action     Page 7 |
| 12   No. 20   Letter to J. Smith, 4/28/06     Page 7 |
| 13   No. 21   Exception to SF-50     Page 7 |
| 14   No. 22   Memo, 6/9/06     Page 7 |
| 15   No. 23   Memo, 7/11/06     Page 7 |
| 16   No. 24   Merit Promotion Certificate -     Page 7 |
| 17     Amended |
| 18   No. 25   FEMA Merit Promotion Certificate     Page 7 |
| 19   No. 26   Interview Questions     Page 7 |
| 20   No. 27   FEMA Merit Promotion Certificate     Page 7 |
| 21 |

Edmond, Brenda                                      August 18, 2008

3 (Pages 6 to 9)

Page 6

| | |
|---|---|
| 1 | E-X-H-I-B-I-T-S |
| 2 | (Continued) |
| 3 | No. 28   E-Mail from Melinda BarnHouse       Page 7 |
| 4 | No. 29   Declaration of Allison Falcone       Page 7 |
| 5 | No. 30   Responses to KSA's       Page 7 |
| 6 | No. 31   Resume for James Michael Mullikin       Page 7 |
| 7 | No. 32   Supplemental Performance Plan       Page 7 |
| 8 | No. 33   Employee Performance Rating       Page 200 |
| 9 | No. 34   Employee Performance Rating       Page 200 |
| 10 | No. 35   Notice of Deposition       Page 200 |
| 11 | (Attached) |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |

Page 7

1    (Whereupon, Deposition Exhibits
2         Numbers 1 through 32 were
3         premarked for identification.)
4         MR. FUCHS: My process server has told me
5    that he has made six efforts to reach Mr. Jamison
6    at the address that we've had. Now, if the agency
7    is going to -- I had asked the agency to look again
8    to find an address, but if the agency will certify
9    that that's the only address it has, then I'm
10   certainly -- unless my client instructs me
11   otherwise, not going to take further action. But I
12   would like some, at least, effort to see if there
13   is any other address. And if there is not any
14   other address, we will simply accept it at that,
15   most likely.
16        So, if I can begin the deposition. Is
17   there anything else?
18        MS. WHITAKER: (No response.)
19        MR. FUCHS: All right.
20             EXAMINATION
21   BY MR. FUCHS:

Page 8

1    Q.  Good morning, Ms. Edmond.
2    A.  Good morning.
3    Q.  My name is James Fuchs.  And as you
4    probably now realize, I'm representing Mr. John
5    Thomas Smith in his case against FEMA.  I'm going
6    to ask you a series of questions.
7         First of all, have you ever been deposed
8    before?
9         THE REPORTER:  I haven't sworn her.
10        MR. FUCHS:  Oh, you have to swear her for
11   the record.  I'm sorry.
12        THE REPORTER:  I just wanted to make sure
13   before you started asking questions.  Would you
14   raise your right hand, please?
15   Whereupon,
16             BRENDA ELISABETH EDMOND,
17   was called as a witness by counsel for the
18   Plaintiff, John Tom Smith, and after having first
19   been duly sworn by the Notary Reporter, was
20   examined and testified as follows:
21        THE REPORTER:  Would you state your full

Page 9

1    name and address for the record, please?
2         THE WITNESS:  Brenda Elisabeth Edmond.
3         THE REPORTER:  Is it E-d-m-o-n-d?
4         THE WITNESS:  That is correct.
5         THE REPORTER:  And your address.  You can
6    give me your business address, if you'd like.
7         THE WITNESS:  500 C Street, S.W.
8         THE REPORTER:  Is that Washington?
9         THE WITNESS:  Yes.  And the middle initial
10   -- middle name is with an "s".
11        THE REPORTER:  Middle name?
12        THE WITNESS:  I'm sorry.  You wrote a "z".
13   Never mind.
14        THE REPORTER:  No.  I want to get your
15   middle name correct.  I thought you said Elizabeth.
16        THE WITNESS:  With an "s".  Substitute the
17   "z" with an "s".
18        THE REPORTER:  Oh, I see.  Okay.  I
19   understand now.  And your ZIP Code?
20        THE WITNESS:  20 -- is it 774.
21        MS. WILLIAMS-JONES:  472.

Edmond, Brenda                                          **August 18, 2008**

Page 190

1    promotion. So if it's not submitted timely, then
2    it could have been taken care of prior to.
3        Q. Okay. Anything else?
4        A. No.
5        Q. And then it says they have been overpaid.
6    "They will continue to be overpaid until the CTLG
7    is completed." Is that right?
8        A. That is correct.
9        Q. And what is a CTLG?
10       A. Change to a lower grade.
11       Q. Okay. I'd like to direct your attention
12   to what has been marked as Exhibit 29. And do you
13   recognize this document?
14       A. I saw it briefly.
15       Q. Can you tell me what it is?
16       A. It appears to be a declaration from
17   Allison Falcone.
18       Q. Okay. Now, in paragraph two, it states
19   that she made a request to HR POC; is that right?
20       A. Correct.
21       Q. What is POC?

Page 191

1        A. Point of contact.
2        Q. To request from FEMA's Archives Records
3    Department on June 17, 2008 for all documents
4    pertaining to supervisory program specialist
5    positions RB-06-221-AJS and RB-06-228-AJS; is that
6    right?
7        A. That is correct.
8        Q. And it states that, "I was advised that
9    documents responsive to the request would be sent
10   to me in seven to ten business days." Is that
11   correct?
12       A. That is correct.
13       Q. "However, I did not receive the documents
14   within that time period." Is that right?
15       MS. WHITAKER: Objection. This document
16   speaks for itself.
17       MS. WILLIAMS-JONES: That's the best
18   evidence rule, by the way.
19       MR. FUCHS: Okay. You can answer.
20       THE WITNESS: It states that she did not
21   receive the documents within the time frame.

Page 192

1    BY MR. FUCHS:
2        Q. And does it state also that she was
3    advised that Case File RB-06-221-AJS was not on
4    file with the Archives Department? Is that
5    correct?
6        MS. WHITAKER: We'll stipulate to what it
7    says.
8        MR. FUCHS: I'm asking the witness.
9        MS. WHITAKER: This is not her document.
10       MR. FUCHS: I'm asking what it says.
11       THE WITNESS: It states that.
12   BY MR. FUCHS:
13       Q. Now, in your experience, Ms. Edmond, you
14   testified that generally a specialist keeps control
15   of a file; is that -- a case file; is that
16   correct?
17       A. When it is active. That is correct.
18       Q. And if an EEOC file -- if an EEOC case has
19   been made, one keeps control of the file; is that
20   correct?
21       A. The control of the file becomes a matter

Page 193

1    of record in the Human Capital Division, not
2    specifically to the individual.
3        Q. So the individual would then relinquish
4    control of the file?
5        A. The individual had no control of the file
6    if it was sent to records center. It would be
7    returned.
8        If it was pulled prior to, it becomes a
9    file that's maintained in the organization in a
10   central location.
11       Q. What if an EEOC complaint is filed?
12       MS. WHITAKER: Excuse me?
13       MR. FUCHS: Let's go back.
14   BY MR. FUCHS:
15       Q. Now, when the position is filled, the
16   specialist then returns the file to central
17   records?
18       A. The specialist will pass the file along to
19   an HR assistant to close the case file out.
20       Q. And is there some documentation when
21   that's done?

**Elite Reporting Company, Inc.**          **800-734-3337**
67 Saint Andrews Road          Severna Park,          Maryland 21146

Edmond, Brenda

Page 194

1    **A.**  A notification will be sent to the non-
2  selects.
3    **Q.**  Is there any other written documentation
4  that the file is being sent back?
5    **A.**  No.  The file is handed off and inside the
6  file the certificate of eligibles will be there and
7  a request to close out the case file will be made.
8    **Q.**  And then what happens if an EEO case is
9  filed involving that selection?
10    **A.**  We'll retrieve it and place it in the
11  central location.
12    **Q.**  And is there a record made of the
13  retrieving of the file?
14    **A.**  The record would be either via e-mail or
15  it would be a memo and it would be maintained with
16  the HR specialist.
17    **Q.**  Who in this case would be Ms. Falcone --
18  Ms. Sgro?
19    **A.**  Yes.
20    **Q.**  Did you ever misplace a file, Ms. Edmond?
21    **A.**  No, sir.

Page 195

1    **Q.**  Okay.  I'd like to draw your attention to
2  what has been marked as Exhibit Number 30.
3    MS. WHITAKER:  How many more exhibits do
4  we have?
5    MR. FUCHS:  Thirty-one.  Thirty-two.  I'm
6  sorry.
7    BY MR. FUCHS:
8    **Q.**  Okay.  I just want to make sure, if you
9  look at Exhibit Number 31, is this different from
10  the KSA's for Mr. Smith that you looked at before,
11  which are, I believe, Exhibit 14?
12    **A.**  The KSA's are identical.
13    **Q.**  Okay.
14    MS. WHITAKER:  Is this a document that has
15  not been produced prior to today --
16    MR. FUCHS:  These are all documents I --
17    MS. WHITAKER:  -- by Ms. Smith?
18    MR. FUCHS:  -- got from the agency.
19    MS. WHITAKER:  This particular one?
20    MR. FUCHS:  Yeah.
21    BY MR. FUCHS:

Page 196

1    **Q.**  I'd like to draw your attention to Exhibit
2  Number 31.  Would you be able to identify this
3  document?
4    **A.**  Which one?
5    **Q.**  Exhibit Number 31.
6    **A.**  It's a resume for Mr. James Michael
7  Mullikin.
8    **Q.**  Okay.  And is it anything more than a
9  resume?
10    **A.**  Mr. Mullikin's packet includes responses
11  to KSA's.
12    **Q.**  KSA's for which position?  Can you tell?
13    **A.**  He submitted application for RB-06-228-
14  AJS.
15    **Q.**  Then I'd like to draw your attention to
16  what has been marked as Exhibit 32.  Are you able
17  to identify this document, Ms. Edmond?
18    **A.**  This is a supplemental performance plan
19  for supervisors and managers.
20    **Q.**  Okay.  Can you tell me anything about this
21  document?

Page 197

1    MS. WHITAKER:  Wait a second.
2    THE WITNESS:  Huh?
3    MS. WHITAKER:  As my co-counsel has just
4  indicated, this is only a partial document.  It
5  says three of five and it's only one page.
6    MR. FUCHS:  Okay.  Well, I just want to
7  draw the witness' attention to one aspect of this
8  page and that is where it says "Title, Series,
9  Grade."
10    BY MR. FUCHS:
11    **Q.**  Do you see that?
12    **A.**  Yes.
13    **Q.**  And you see that it says both a 15 and a
14  14?
15    **A.**  Yes.
16    **Q.**  Do you know why there would be both a 15
17  and a 14?
18    **A.**  At the time the performance plan was
19  generated, and based on my recollecting the
20  individual's position at that time, it was a GS-15.
21    **Q.**  So would it appear to you that it was

# Exhibit 17

*Tracy Haynes*

*Bill Plut,*
*Secretary*
*6/8/06*

# Interview Questions
## National Incident Management System Integration Center
## (NIC)
## Branch Chief – Standards and Technology

Why do you want this position?  What special skills do you feel you have that distinguish you from other candidates for this position?

1     2     3     (4)     5     *• technology development, standards development*
*• plus experience*
*• time for a change*

Describe any special experience and education (including continuing education) do you feel you have that distinguish you from other candidates for this position?

1     2     3     (4)     5     *• emergency preparedness, intern*
*• NIC background*
*• large experience FEMA*
*• coordination awards, retired awards*
*• NIMS managed technology hardware, credibility DE HQ*

Tell us about your management style and your philosophy in managing people.  Give us some examples of how you have been successful in using your interpersonal skills in solving both personnel problems and program area problems.

1     2     3     (4)     5     *• professional decisive style*
*• consensus*

How do you see the role of the National Incident Management System Integration Center and how it relates to the other Directorates within the Department of Homeland Security and the overall mission of DHS?

1     2     (3)     4     5     *• role of interrelationship*
*• integrated make them aware*
*• the more broader agenda coordinate*

The NIC is responsible for several major initiatives, including resource typing, credentialing, mutual aid and setting performance-based compliance metrics for NIMS compliance.  Describe your experience

and knowledge of these programs and how they might relate to the work that would be accomplished in the Standards and Technology Branch.

1     2     3     4     5

Several of the technology initiatives being undertaken by the NIC are through the use of a cooperative agreement. Please describe your experience with this type of contracting mechanism, and your thoughts on how to manage a university cooperative agreement.

1     2     ③     4     5     • *has done large project management,*
• *would like to see this be performance based.*

The technology initiatives noted in the last question involve many different areas of technology integration, such as training and simulation with super computers, data ontology for the NIMS, and standards research. Please describe your experience with managing technology and standards programs outside of your sphere of expertise.

1     2     3     ④     5     • *has learned from doing IT.*

If you were selected for this position, you would likely be working with one or more people who applied for this job and were not selected. How will you deal with this situation?

1     2     ③     4     5     • *make people feel part of the team...*
• *involvement helps smooth over hurt*
*feelings.*
• *other opportunities.*

What would you do in the first 60 to 90 days if you were selected for this position?

1     2     ③     4     5     • *get to know staff, current and requirements*
• *find out get in what want, retain*
• *confident in growing people.*
• *budget.*
• *develop CAT EHti'*

As you are probably aware, the NIC is responsible for promulgating standards requirements and guidance for the NIMS. Please describe

your experience with promulgation of requirements and guidance. Also, please describe how you would "market" standards to the end-user community.

1     2     ③     4     5     - Similar to NISE world, had to determine best approach.

- get state and local buy-in, difficult to dictate, through HSPA, notice mys key people

Summary —

- solid candidate
- good FEMA experience, management experience
- very polished, professional

**James Fuchs**

| | |
|---|---|
| **From:** | James Fuchs |
| **Sent:** | Wednesday, September 03, 2008 12:44 PM |
| **To:** | 'Whitaker, Claire (USADC)' |
| **Subject:** | Smith/KSAs |

Ms. Whitaker:

As you are aware, discovery is set to close one week from today.  You have still not produced the file for the Mullikin selection.  This has been an ongoing issue, as you are also aware.  Thus, should we not receive those KSAs by the end of the business day today or an admission that there is an adverse inference, we will make a motion to compel and or motion for a finding of an inverse inference sometime today.  This is the notice and consultation.  Obviously, we both believe that we must reduce everything to writing in any event, so regard this as your notice and consultation.

Very truly yours,


James L. Fuchs

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTICT OF COLUMBIA

---

JOHN TOM SMITH                                    )
                                                  )
310 Ellsworth Drive                               )
Silver Spring, MD 20910                           )
                                                  )  **Civil Action. No**. 07-1045 (RMU)
                                                  )
**Plaintiff,**                                    )
                                                  )
     v.                  )
                                                  )
                                                  )
**MICHAEL CHERTOFF, SECRETARY,**                  )
**U.S. DEPARTMENT OF HOMELAND**                   )
**SECURITY**                                      )
                                                  )
                                                  )
425 Murray Lane, Building 410                     )
Washington, DC  20528                             )
                                                  )
                                                  )
**Defendant.**                                    )
                                                  )

---

### <u>ORDER</u>

It is hereby ordered that Plaintiff's Motion to Compel or to be Granted an Adverse Inference in View of Defendant's Failure to Produce Documents, is granted.

_____          _____

    Hon. Ricardo M. Urbino                 Dated

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTICT OF COLUMBIA

_____

| | |
|---|---|
| **JOHN TOM SMITH** | ) |
| | ) |
| 310 Ellsworth Drive | ) |
| Silver Spring, MD 20910 | ) |
| | ) **Civil Action. No**. 07-1045 (RMU) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| **MICHAEL CHERTOFF, SECRETARY,** | ) |
| **U.S. DEPARTMENT OF HOMELAND** | ) |
| **SECURITY** | ) |
| | ) |
| | ) |
| 425 Murray Lane, Building 410 | ) |
| Washington, DC  20528 | ) |
| | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

_____


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of Plaintiff's Motion to Compel  or in the Alternative

to Grant an Adverse Inference, Exhibits 1-18, and an Attched Order, was served on

Defendant's counsel by electronic filing, or this means should fail, by mail, postage

prepaid, and addressed as follows:

Claire Whitaker, Esq.
Assistant United States Attorney
Judiciary Center Building, Rm. E-4-4
555 Fourth Street, N.W.
Washington, D.C.  20530

_____/s/_____

James L. Fuchs, Esq.
Law Offices of Snider & Associates, LLC
104 Church Lane Suite 100
Baltimore, Maryland 21208
410-653-9060 Phone
410-653-9061 Fax
jfuchs@sniderlaw.com